IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO
96 OCT 29 PM 1:32
[signature]
CLERK-SANTA FE

JIMMY (aka BILLY) McCLENDON, et al.,

    Plaintiffs,

vs.                                                  CIV. NO. 95-24 MV/RLP

CITY OF ALBUQUERQUE, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came on for consideration of Defendants' Motion for Immediate Termination of Prospective Relief Regarding Overpopulation Granted or Approved by the Court's Orders Dated August 23, September 7, 1995 and March 22 and March 25, 1996 (filed September 13, 1996). A hearing on the constitutionality of the Prison Reform Litigation Act ("PLRA" or "Act"), 28 U.S.C. 3626, upon which Defendants' motion is based was held on October 11, 1996, after which the Court took the matter under advisement. After consideration of the relevant facts, authorities, and arguments of counsel, the Court finds that the Section 3626(e) of the Act is unconstitutional and accordingly the prospective relief granted by the Court and agreed to by the parties will not be stayed pending this Court's consideration of Defendants' motion.



## BACKGROUND

On April 26, 1996 the PLRA was signed into law. Pursuant to 18 U.S.C. § 3626(b)(2) of the PLRA, "[i]n any civil action with respect to prison conditions, a defendant or intervener shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." The prospective relief granted by the Court will not terminate, however, "if the Court makes written findings based on the record that prospective relief remains necessary to correct a current or ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation." 18 U.S.C. § 3626(b)(3). If the required findings are not made within 30 days from the date Defendants file their motion to terminate, the prospective relief granted by the Court is stayed automatically until the Court enters a final ruling on the motion. 18 U.S.C. § 3626(e).

In the instant case, Plaintiffs filed this suit on January 10, 1995, alleging that the conditions at the Bernalillo County Detention Center ("BCDC") are unlawful and unconstitutional. In particular, Plaintiffs alleged that the overcrowding at BCDC had led and continues to lead to violations of their constitutional rights. From the inception of this suit, Defendants conceded that BCDC was overpopulated and offered the Court their proposal for reducing the inmate population. The Court adopted Defendants' proposal to a large extent in its August 23, 1995 Order granting Plaintiffs preliminary injunctive relief. Part I of the Order directs BCDC to reduce the inmate

population according to a schedule of progressively decreasing population caps. The Court retained jurisdiction to review and modify its Order.

Admittedly, the Court's August 23, 1995 Order does not contain a finding that the extent of overcrowding at BCDC resulted in a violation of the residents' federal rights or a finding that the relief granted was narrowly drawn or extended no further than necessary to correct the violation of a federal right as required by the PLRA. However, the standard for issuing a preliminary injunction does not require the Court to find that Plaintiffs have sustained their ultimate burden of proving that Defendants violated Plaintiffs' federal rights. Instead, the Court was only required to find that Plaintiffs demonstrated a substantial likelihood of success on the merits. See Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir. 1980). The Court made that finding. See Order, p. 10, ¶ 5, filed August 23, 1995.[1]

On September 7, 1995, Plaintiffs and Defendants entered into a settlement agreement which was approved by Court Order the same date.[2] Defendants made no admission that Plaintiffs' federal rights had been violated, but agreed that the Court's August 23, 1995 Order be converted to a permanent injunction and that the Court retain jurisdiction to enforce and/or modify

---

[1] The Court pauses to note that it hesitated making a finding that the overcrowding at BCDC led to a violation of Plaintiffs' federal rights at that point in the litigation because Defendants had already begun to implement numerous plans to improve jail conditions. In addition, Defendants advised the Court that a ruling that the conditions at BCDC resulted in a violation of the residents' constitutional rights would most certainly preclude the Defendants from obtaining a renewal of BCDC's former accreditation by the American Corrections Association. Accreditation would make BCDC eligible for additional funding which would be used to further improve the facility.

[2] As the motion to intervene was pending on September 7, 1995, Plaintiff Intervenors' claims are not covered by the settlement agreement entered into between Plaintiffs and Defendants. To date, Plaintiff Intervenors have not settled any of their claims with Defendants.

3

the permanent injunction. In return, Plaintiffs agreed to dismiss with prejudice Parts I and II of their Complaint which alleged that Defendants had systematically violated the United States and/or New Mexico Constitutions. See Settlement Agreement, p. 2, ¶ 5. Shortly thereafter, Plaintiffs settled their individual claims against Defendants.

On March 22, 1996, the Court entered an Order which, in pertinent part, limits the number of residents which may be housed in BCDC's alternative detention facilities, including military tents, the basement of the Second Judicial District's Courthouse and the Montessa Park warehouse. The Court's March 25, 1996 Order directs the Defendants, in pertinent part, to comply with the population caps set forth in the Court's August 23, 1996 Order.

Prior to the instant motion being filed on September 13, 1996, the status of this case was that all of Plaintiffs' claims had been dismissed pursuant to settlement agreements and only Plaintiff Intervenors' claims remained to be litigated. Now, however, Defendants assert that the passage of the PLRA and the Supreme Court's opinion in Lewis v. Casey, 116 S.Ct. 2174 (June 24, 1996) relieve them of the obligation to comply with portions of the above mentioned orders and the September 7 settlement agreement. In addition, Defendants assert that Plaintiffs' claims for injunctive relief which were dismissed pursuant to the settlement agreement are now moot as all of the named Plaintiffs are no longer incarcerated at BCDC.[3]

Specifically, Defendants assert that they are no longer bound by the population caps

---

[3]Defendants' motion is limited in scope in that it only seeks relief from the portions of the Court's orders and the September 7 settlement agreement which directs BCDC to reduce its inmate population. Defendants do not seeks relief from the Court's orders regarding classification, physical examinations, medical requests, or basic accommodations which are set forth in the Court's August 23, 1995 Order.

recommended by them and adopted by the Court. Currently, Defendants are enjoined from housing more than 649 residents. That number will be reduced to 592 residents on November 22, 1996. Defendants admit that they filed the instant motion because they are finding it increasingly difficult to comply with the current population cap and will most likely be unable to comply with the November 22, 1996 benchmark. Defendants remain steadfast in their refusal to implement the Matrix Release System.

Pursuant to Section 3626(e)(2) of the Act, prospective relief shall be automatically stayed beginning the 30th day after a motion for immediate termination is filed. In this case that date is October 14, 1996. On October 11, 1996, the date the hearing on the constitutionality of the Act was held, the parties entered into a stipulation approved by the Court which provides that Defendants will waive the automatic stay provision and continue to comply with the population caps for at least an additional 30 days. Defendants are unwilling to waive the automatic stay provision for more than thrity days because they concede that they will be unable to comply with that population cap.

At the status conference following the October 11, 1996 hearing, the Court scheduled a week long hearing to commence on November 4, 1996. Even with the thirty day extension provided by the stipulation, all parties agree that the additional time is insufficient to conduct discovery which will enable them to competently make an evidentiary presentation which attempts to satisfy the onerous requirements of the PLRA and Lewis v. Casey.[4] Both Plaintiffs and

---

[4] In Lewis v. Casey, 135 L.Ed.2d 2174, 2184 (June 24, 1996), the Supreme Court stated that courts may only impose system wide relief if the inadequate conditions have a system-wide impact. In a class action suit, each inmates who makes up the class must demonstrate that he has been injured by the allegedly inadequate aspect of the prison. Id. at

Plaintiff Intervenors believe that their clients will be severely prejudiced if they are forced to make an evidentiary presentation of the magnitude required by Lewis v. Casey beginning on November 4, 1996.[5] Plaintiffs and Plaintiff Intervenors indicated that they need to conduct various depositions, make requests for admissions, propound interrogatories and possibly file motions to compel. Plaintiffs' counsel also indicated that she must attempt to make contact with the approximately seventy-three Plaintiffs, most of whom are no longer incarcerated and have left counsel no forwarding address. The thirty day time limit also conflicts with the time provided for discovery by the Federal Rules of Civil Procedure and usual discovery plans approved by the Magistrate Judges.

Requiring Plaintiffs and Plaintiff Intervenors to proceed without sufficient time to conduct adequate discovery will also needlessly waste judicial resources. Plaintiffs' counsel indicated that she would be forced to call many witnesses to the stand for whom she would have no prior opportunity to interview or depose prior to eliciting their testimony in court. Some of these witnesses will not have relevant information, but making that determination will be a time consuming process the Court will have to endure in order to give the parties an opportunity to competently represent their clients and to have an opportunity to meet their burden.

## DISCUSSION

Several district courts have addressed nonconstitutional and constitutional challenges to the

---

2183.

[5] Plaintiffs are in a particularly difficult situation as they indicate that all discovery on the constitutional claims asserted in Parts I and II of their Complaint ceased after the September 7, 1996 settlement agreement was signed by the parties.

automatic stay and immediate termination provisions of the PLRA. See e.g., Gavin v. Ray, Civ. 78-70062 (S.D. Iowa Sept. 18, 1996); Benjamin v. Jacobson, 1996 WL 413772 (S.D.N.Y. July 24, 1996); Gates v. Gomez, Civ. 87-1636 (E.D. Cal. July 22, 1996); Hadix v. Johnson, 1996 WL 393735 (E.D. Mich. July 5, 1996) (hereinafter referred to as Hadix II); Hadix v. Johnson, 1996 WL 393737 (W.D. Mich. July 3, 1996) (hereinafter referred to as Hadix I). These courts have reached conflicting conclusions regarding the constitutionality of the immediate termination and automatic stay provisions and these issues are currently before at least two circuit courts of appeal.

Although the Court agrees that the immediate termination provision of the Act is unconstitutional as applied to final judgments, in this case, the parties disagree and the Court questions whether the September 7 agreement and order consititute a final judgment. Because the Court is not, at this time, addressing the constitutionality of the immediate termination provision as applied to this case, I need not determine whether the September 7 agreement and order constitute a final judgment. As discussed below, the Court's constitutional analysis of the automatic stay provision does not depend on a final judgment having been entered in a case.

Regardless of the constitutionality of the immediate termination provision as applied to this case, the Court finds that the automatic stay provision found at Section 3626(e) impermissibly encroaches upon the power of the judiciary. Accord Hadix I, at *3. To ensure against tyranny, the Framers of the Constitution established three coordinate Branches to comprise the federal government. Northern Pipeline Constr. V. Marathon Pipe Line Co., 485 U.S. 50, 57-58 (1982). Each Branch exercises a distinct governmental power. Id. at 57.

> The division among the Branches is preserved by our system of checks and balances. Where Congress passes a provision of law assigning power to one Branch, such that the authority and independence of another Branch is undermined,

7

the provision should be struck down as contrary to the Constitution.

Hadix I, at *3 (citing Mistretta v. United States, 488 U.S. 361, 382 (1989)).

It is exclusively a function of the Judiciary to interpret and apply the law and ultimately decide the cases and controversies pending before it. Hadix I at *3 (citing Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803)). In determining whether Congress has impermissibly encroached on the power of the Judiciary, courts should not take a formalistic approach, but must, instead, focus on the extent to which congressional action prevents the Judicial Branch from accomplishing its constitutionally assigned functions. Commodity Futures Trading Commission v. Schor, 478 U.S. 833, 851 (1986); Mistretta, 488 U.S. at 383. Applying this standard, the Hadix I court reasoned that

> it is clear that through the stay provision of the PLRA, Congress has usurped a role that is exclusively judicial. The power to decide substantive issues of law, such as a motion to terminate the case, is a most basic attribute of the Judiciary's power under Article III. Through the stay provision, Congress automatically grants the movants relief, albeit temporarily, with no provision for a case-by-case determination. This is akin to the issuance of a preliminary injunction, which even a court can not do without making findings on the facts. (citation omitted). * * *
> Furthermore, the rights that are at issue in the instant case derive from the most sacred of sources, the Constitution. * * * Unlike statutorily created rights, which Congress can create, modify, define, and terminate, Constitutionally created rights can not be abridged by an act of Congress. Northern Pipeline, 458 U.S. at 83, 102 S.Ct. at 2877-78.

Hadix I at * 4. The facts in the instant case further demonstrate the extent to which the automatic stay provision interefers with the proper functioning of the courts and the ability of counsel to competently represent their clients. The thirty day time limit does not allow the parties to complete the briefing schedule that is set forth in the Rules. Most importantly, however, even though the parties diligently prepared and the Court scheduled time for a hearing within thirty

days of the filing of Defendants motion, neither party was adequately prepared to make an evidentiary presentation of the magnitude and complexity required by the PLRA and <u>Lewis v. Casey</u>. That counsel was not adequately prepared to proceed on October 11, 1996 should not come as a surprise. As would be expected, discovery ceased with regard to Plaintiffs' class-based claims after Plaintiffs and Defendants entered into the September 7, 1995 settlement agreement. Even with the additional thirty days provided by the October 11, 1996 stipulation and with their full attention devoted solely to this case, the parties agree that they will not be adequately prepared to proceed with what essentially amounts to a trial on the mertis on November 4, 1996. Counsel and the Court believe that without adequate discovery, counsel will be unable to competently represent their clients. Thus, for the reasons set forth in <u>Hadix I</u> and the compelling facts of the instant case, the Court finds that the automatic stay provision of the PLRA encroaches upon a role that exclusively judicial and therefore violates the separation of powers doctrine.

**WHEREFORE,**

**IT IS HEREBY ORDERED** that 18 U.S.C. § 3626(e) is unconstitutional in that it violates the separation of powers doctrine. For that reason the prospective relief ordered by the Court will not be stayed pending the Court's consideration of Defendants' Motion for Immediate Termination of Prospective Relief Regarding Overpopulation Granted or Approved by the Court's Orders

9

Dated August 23, September 7, 1995 and March 22 and March 25, 1996 (filed September 13, 1996).

**IT IS FURTHER ORDERED** that the November 4, 1996 hearing is **VACATED** until such time as adequate discovery is completed.

_____
UNITED STATES DISTRICT JUDGE