IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO
96 NOV -5 PM 2: 00
[signature]
CLERK-SANTA FE

JIMMY (BILLY) MCCLENDON, et al.,

Plaintiffs,

vs.                                                              No. CV 95-24 MV/DJS

CITY OF ALBUQUERQUE, et al.,

Defendants

vs.

E.M., R.L., W.A., D.J., P.S., and N.W., on behalf
of themselves and all others similarly situated,

Plaintiff Intervenors.

## ORDER REGARDING THE PRISON LITIGATION REFORM ACT

THIS MATTER comes before the Court by agreement of the parties pursuant to 18 U.S.C. 3626 (a)(1), and, being fully advised in the premises;

THE COURT FINDS, based on the Court's inspections of the jail on August 10, 1995 and January 19, 1996; the evidence presented at the hearing on August 11, 1995; the Court's findings of March 22, 1996 and March 25, 1996; other information obtained by the court in status conferences and from defendants' formal reports to the court; the stipulations of the parties and the entire record of this case, that violations of one or more federal rights of BCDC residents have occurred at BCDC.

THE COURT FURTHER FINDS that defendants have already undertaken some steps to remedy the problems at BCDC and that it is in the best interests of the defendants, the plaintiffs,

the plaintiff intervenors, and of the public for this settlement agreement to be entered at this time, without the expense and distraction of further litigation.

THE COURT ALSO FINDS that the settlement agreement regarding the Prison Litigation Reform Act is proper and that the relief set forth in the settlement agreement:

(1) is narrowly drawn;

(2) extends no further than necessary to correct the violations of the federal rights of subclass members;

(4) is the least intrusive means necessary to correct the violations of the federal rights of subclass members; and

(5) will have no adverse impact on the public safety or the operation of the criminal justice system.

WHEREFORE, IT IS HEREBY ORDERED that the parties shall implement the following settlement agreement forthwith. The parties shall also provide notice to subclass members as required by Rule 23 of the Federal Rules of Civil Procedure and assist the Court in the scheduling of a fairness hearing as soon as is practicable.

## SETTLEMENT AGREEMENT
## REGARDING THE PRISON LITIGATION REFORM ACT

On April 26, 1996, Congress passed, and the President signed, the Prison Litigation Reform Act of 1995 (PLRA), 18 U.S.C. §3626. By its terms, the Act applies to all claims for "prospective relief" (as the term is defined in the Act), including relief granted prior to enactment of the Act. On September 13, 1996, defendants filed a Motion for Immediate Termination of Prospective Relief Regarding Overpopulation Granted or Approved By the Court's Orders Dated

August 23, 1995, September 7, 1995, March 22, 1996 and March 25, 1996. On September 30, 1996, plaintiff intervenors filed a Motion for Further Remedial Relief. The parties do not waive their respective positions regarding the applicability or constitutionality of the PLRA. However, this Settlement Agreement resolves both Motions.

## GENERAL PROVISIONS

In recognition of the limited financial resources of the Defendants, the unpredictability of the population at the detention facilities operated by Defendants, the unpredictability of the numbers of residents with mental and/or developmental disabilities and the uncertainty of the impact of reduction in population at the BCDC main facility and the opening and expansion of additional facilities, the parties are adopting a flexible approach to addressing the concerns raised by the two motions. All parties recognize that this agreement may require tailoring in the future to address unanticipated circumstances. However, it is expressly agreed that no modifications or amendments to this Settlement Agreement may reduce the benefits to BCDC residents which are provided for in this Settlement Agreement unless agreed to in writing by the parties or unless ordered by the Court.

## POPULATION CONTROL

1. For the seven months beginning November 1, 1996, BCDC shall have an average daily population of 700 residents. This figure includes all residents in the main facility, including the north tower, south tower, annex, detox program and R & D (the booking area). To determine the daily population residents shall be counted at 4:00 a.m., 7:00 a.m., and 9:00 p.m. each day. Those counts shall be added and divided by three to determine the daily population. Each daily population for a calendar month shall be added and divided by the number of days in that month to determine the average daily population for the month. This number shall not exceed 700.

2. The monthly average daily population cap of 700 shall be in effect until May 31, 1997, or until the parties mutually agree in writing to modify the cap number, or until the Court orders otherwise, whichever occurs first. Beginning June 1, 1997, the average daily population shall be no greater than 643 and beginning August 1, 1997, the average daily population shall be no greater than 586.

3. No residents shall be housed overnight in the holding cells under the district courthouse. Those cells shall only be used as holding cells for individuals awaiting court proceedings.

4. During 1996, officials from the City of Albuquerque will meet with officials from Bernalillo County to develop solutions to the continuing resident population pressures at BCDC, including the reduction of 114 residents at the main facility required by paragraph 2. Such discussions will include at least possible expansion of the interim Westside facility, possible renovations to Montessa Park, and possible development of additional drug treatment and/or mental health treatment facilities.

5. The City of Albuquerque will seek additional sources of funding for pre-trial services at BCDC.

6. The defendants shall open a 25 bed medical detox facility at BCDC, and a 100 bed alcohol treatment facility at the Westside facility as soon as possible and no later than 90 days from the signing of this Settlement Agreement.

7. By the end of 1996 BCDC will contract with a licensed psychologist to provide written competency evaluations to BCDC residents charged with misdemeanors who are ordered by the Courts to undergo such evaluations.

8. Alternatives to Secure Detention Program (ASDP) staff will be added in response to increases in ASDP referrals. Counsel for plaintiffs and plaintiff intervenors and for defendants will meet with officials of the Public Defender Department, the District Attorneys' Office, and the Metropolitan and District Courts to encourage them to use ASDP more often.

## OTHER MATTERS

9. The parties, through their counsel, shall meet at least once each month to discuss:

   a. the defendants' efforts to reduce overcrowding;

   b. improved procedures for attorneys to meet safely and privately with their clients;

   c. improving medical care;

   d. improving access to the judicial system;

   e. improving transportation to court;

   f. improving staff training;

   g. defendants' compliance with the court's orders; and

   h. other matters of mutual concern.

These monthly meetings do not preclude the parties from obtaining information through formal discovery and shall continue at least until August 1, 1997.

10. The parties stipulate that, due, in part, to overcrowding, one or more federal rights of some BCDC residents are violated. The parties also stipulate that this Settlement Agreement and the Court's Orders of August 23, 1995 and September 7, 1995:

   a. are narrowly drawn;

    b.  extend no further than necessary to correct the violations of the federal rights of BCDC residents;

    c.  are the least intrusive means necessary to correct the violations of the federal rights of BCDC residents; and

    d.  will have no adverse impact on the public safety or the operation of the criminal justice system.

  11.  In the event Plaintiffs, Plaintiff-Intervenors, or Defendants wish to invoke mediation regarding any issue within the scope of this litigation a mediation among the parties shall ensue as soon as practicable and within 30 days. The parties agree to ask Ms. Kathryn Monaco to be the mediator.

  12.  The parties agree that, absent an emergency, they will mediate any dispute before resorting to Court.

  13.  Defendants agree to file no motion in the future asserting that this Settlement Agreement should be terminated based upon the provisions of the PLRA.

  14.  The parties agree that it is in their mutual interest for the Court's Orders of August 23 and September 7, 1995 to remain in effect except insofar as this agreement modifies the methodology for counting the population at the BCDC main facility and delays for seven months time the imposition of the final two stages of population reduction.

  15.  Plaintiffs and for Plaintiff Intervenors are entitled to attorneys' fees, expenses and costs reasonably and necessarily incurred with respect to these motions in amounts to be determined by the Court. The Court shall retain continuing jurisdiction to review, modify and enforce this Settlement Agreement.

_____
Jeffrey L. Baker
Attorney for Defendants
20 First Plaza, Suite 402
Albuquerque, NM  87102
(505) 247-1855


_____
HONORABLE MARTHA VAZQUEZ
U.S. DISTRICT COURT JUDGE

8

16.     Plaintiffs and Plaintiffs Intervenors withdraw their March 1996 Motions for an Order to Show Cause.

_____
Peter Cubra
Nancy Koenigsberg
Lisa Simpson
Attorneys for Plaintiff-Intervenors
122 Tulane SE
Albuquerque, New Mexico 87106

_____
Mary Y.C. Han, Esq.
Shannon Oliver, Esq.
Joseph P. Kennedy, Esq.
Attorneys for Plaintiffs
1122 Central Avenue SW
Albuquerque, NM 87102

_____
Lawrence Rael
Chief Administrative Officer
City of Albuquerque
11th Floor, Room 11103
One Civic Plaza
Albuquerque, NM  87102