IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JIMMY (BILLY) MCCLENDON, et al.,

    Plaintiffs,

vs.                                                                                       No. CIV 95-24 MV/DJS

CITY OF ALBUQUERQUE, et al.,

    Defendants,

vs.

E.M, R.L., W.A., D.J., P.S., AND N.W.
on behalf of themselves and
all others similarly situated

    Plaintiff-Intervenors.

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Plaintiff-Intervenors' Application for Attorney's Fees **[Doc No. 307]**. The Court having considered the application, briefs, relevant law and being otherwise fully informed finds that the application is well-taken and will be **GRANTED**.

### FACTUAL BACKGROUND

On January 10, 1995, a class action lawsuit was filed in this Court on behalf of all present and future residents of the Bernalillo County Detention Center (BCDC), alleging, *inter alia,* that severe prison overcrowding violated the constitutional rights of the residents. On October 26, 1995, this Court granted Plaintiff-Intervenors limited intervention on behalf of a subclass of

1

BCDC residents with mental and developmental disabilities.  On November 22, 1995, Plaintiff-Intervenors filed an Amended Complaint-in-Intervention alleging, *inter alia,* discrimination by Defendants against people with mental or developmental disabilities in violation of the Americans with Disabilities Act (ADA).  On November 5, 1996, the Court approved the settlement agreement reached between Plaintiff-Intervenors and Defendants in the form of two Orders entitled "Order" and "Order Regarding the Prison Litigation Reform Act" respectively.  In the "Order" the Court found a violation of the ADA in that "some residents are not afforded reasonable accommodations for their disabilities."  The Court ordered at least eighteen prospective measures designed to address the needs of BCDC residents with mental and developmental disabilities.  The Court also held that "Plaintiff-Intervenors are entitled to attorney's fees, expenses and costs reasonably and necessarily incurred with respect to this litigation in the amounts to be determined by the Court."

   On April 4, 1997, Defendants entered into an agreement regarding Plaintiff-Intervenors' attorney's fees as follows:  Peter Cobra - $145/hr.; Elizabeth Simpson - $135/hr.; Nancy Koenigsberg - $100/hr.  The term of the agreement was for a period of two and a half years, ending November 1, 1999.  In April of 1999, Defendants informed Plaintiff-Intervenors that they were no longer willing to pay the rates they had previously negotiated, and thus, as of April 1, 1999, counsel for Plaintiff-Intervenors were to be paid at the rate of $112.50 per hour - the rate allowed under the Prison Litigation Reform Act (PLRA).  Lisa Schatz, an attorney employed by the Protection and Advocacy System entered her appearance, substituting for Nancy Koenigsberg of the same organization on March 24, 1999.  Prior to Ms. Schatz's substitution, Defendants had agreed to pay Protection and Advocacy for attorney's fees and costs incurred in the prosecution

of this litigation and subsequent compliance monitoring services.  On August 2, 1999, counsel for Defendants sent a letter to Mr. Robert White indicating that because Ms. Schatz is paid by Protection and Advocacy, "we have not agreed to pay her."  Counsel for Plaintiff-Intervenors continued to negotiate the hourly rate, but when negotiations reached an impasse, counsel for Plaintiff-Intervenors informed Defendants on October 25, 1999, that the hourly rate of $112.50 was unacceptable.  Counsel for Plaintiff-Intervenors took the position that under the ADA they are entitled to reasonable attorney fees and are not limited to the attorney fee caps pursuant to the PLRA, while Defendants reiterated their position that only the PLRA attorney fee rate was applicable.

## DISCUSSION

The two issues in dispute between the parties are (1) whether Lisa Schatz should receive attorney fees notwithstanding her employment with Protection and Advocacy and (2) whether Plaintiff-Intervenors are entitled to reasonable attorney fees under the ADA or limited attorney fees under the PLRA.  At the outset, however, Defendants argue that pursuant to the settlement agreement, the parties are required to submit all disputes for mediation prior to resorting to the court.  The Court finds, however, that the parties have demonstrated an inability to reconcile this issue through prior negotiation, and that mediation would be of little use at this juncture.  Moreover, the Court believes it is more incumbent upon the parties to spend the little time allocated to mediation resolving the more pressing issues of prison overcrowding and the needs of mentally impaired residents, rather than arguing over attorneys fees.

A.   **Attorney's Fees For Lisa Schatz**

Defendants argue that Lisa Schatz is not entitled to attorney fees, first because she is

3

already paid by Protection and Advocacy, and second because neither Defendants nor the Court have approved her participation in the case.  The Court is not persuaded by either argument.  As an initial matter, both the United States Supreme Court and the Tenth Circuit have definitively stated that equal fees are to be awarded to plaintiffs' counsels whether they are members of the private bar or employed by non-profit civil rights organizations.  *See Blanchard v. Bergeron*, 489 U.S.87, 92 (1989); *Blum v. Stenson*, 466 U.S. 886, 894 (1984); *Ramos v. Lamm*, 713 F.3d 546, 551 (10th Cir. 1983) (plaintiffs' counsel's employment by a public interest firm is "legally irrelevant" for purposes of awarding fees). Thus, Lisa Schatz's status an employee of the public interest firm of Protection and Advocacy does not preclude her from entitlement to attorney's fees.  The Court likewise finds that it is unnecessary to require a Court order every time Protection and Advocacy substitutes an attorney to work on behalf of the Plaintiff-Intervenors.  In a class action lawsuit, the Court has a fiduciary obligation to select counsel after "careful consideration of the demonstrated ability to consider the litigation efficaciously and efficiently." *Gottleib v. Wiles*, 150 F.R.D. 174 (D. Colo. 1993).  Pursuant to this fiduciary obligation, the Court exercised such careful consideration in selecting Protection and Advocacy as the appointed representative for the Plaintiff-Intervenors.  The Court is confident that Protection and Advocacy exercises due diligence in hiring competent and able counsel, and indeed, the opposite has never been argued.  Ms. Schatz is simply the substituted representative of Protection and Advocacy, the organization which has committed to providing an attorney to pursue the lawsuit on behalf of Plaintiff-Intervenors.  Any attorney employed for Protection and Advocacy would similarly have the approval of the Court, unless grounds were shown otherwise.

Defendants next argue that Plaintiff-Intervenors comprise a small subclass and do not need

4

three attorneys, as compared to the larger main class which has only two attorneys. When the Court approved the settlement agreement it determined that the three attorney representing the Plaintiff-Intervenor subclass were reasonable and necessary. Such is still true today. Moreover, Defendants realize a financial benefit in the participation of Lisa Schatz because she is paid at a lower rate than the other two attorneys for the subclass. If Ms. Schatz were no longer authorized to work on this lawsuit, either the remaining attorneys would be required to perform her work at a higher rate, or the advocacy on behalf of the Plaintiff-Intervenors would suffer. On these grounds the Court finds that Lisa Schatz, as an employee of Protection and Advocacy, is performing work that is reasonable and necessary to this matter and is entitled to attorney's fees for the work performed.

**B.     Applicability of the Prison Litigation Reform Act to the Americans With Disabilities Act**

Defendants argue that counsel for Plaintiff-Intervenors are only entitled to attorney fees pursuant to the limited attorney fee provisions of the PLRA, rather than the ADA. Under the PLRA the present amount of allowable attorney fees is $112.50 per hour, while under the ADA the Court "in its discretion, may allow the prevailing party a reasonable attorney's fee, including litigation expenses and costs." 42 U.S.C. § 12205.

Defendants initially argue that the Court never made a finding that Defendants had violated the ADA. This contention is in direct contradiction with the explicit language of the Court's "Order" which states "some residents are not afforded reasonable accommodations for their disabilities." The portions of Plaintiff-Intervenors' Amended Complaint-In-Intervention alleging failure to accommodate the residents' disabilities claims violations of the ADA. In

5

concurring that indeed reasonable accommodations were not provided, the Court was finding a violation of the ADA.  Moreover, the Court instructed Defendants to implement at least eighteen measures designed to provide reasonable accommodations for the residents with disabilities. Among these findings were that Defendants must improve mental health evaluation and treatment procedures, increase the staffing of mental heath professionals, and increase the number of beds available to residents in mental health crisis.  The Court's findings and recommendations were made plainly in the context of the ADA.  Furthermore, the Court purposefully issued a separate order to address the needs of Plaintiff-Intervenors precisely because these claims were being brought under the ADA rather than the PLRA.  As such there is no merit to Defendants' assertion that the Court did not find any violations of the ADA.

The remaining issue before the Court is whether the PLRA attorney's fees provisions preempt the ADA attorney's fees provisions when the violations occur in a prison setting.  The Court finds that the PLRA does not limit the ADA in this manner.   The PLRA imposes limitations on the award of attorney's fees authorized  under 42 U.S.C. § 1988.  42 U.S.C. § 1997e(d)(1).  However, § 1997e(d)(1) only applies to "any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees *are authorized under section 2 of... 42 U.S.C. 1988. Id.*  (emphasis added) The plain meaning of the PLRA places a cap on the amount of attorney's fees only when the fees are awarded in civil rights actions brought under 42 U.S.C. § 1988.  The ADA, in contrast, provides an independent statutory authority for the provision of attorney's fees at 42 U.S.C. § 12205.  Plaintiff-Intervenors' claims arose first and foremost under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* rather than under 42 U.S.C. § 1988, are supported by an entirely separate fee

provision, and thus are not limited by the attorney's fees caps of the PLRA.

The only published case on point reaches precisely this conclusion. In *Beckford v. Irvin*, 60 F. Supp. 2d 85 (W.D.N.Y. 1999), the plaintiff filed an action pursuant to 42 U.S.C. §1983 and the ADA, alleging a violation of his Eighth Amendment right against cruel and unusual punishment. The *Beckford* court, relying on the plain meaning of the PLRA § 1997e(d) held that "[t]he PLRA does not limit the award of attorney's fees to a prevailing Plaintiff whose award is authorized under a statute separate from §1988." *Id.* at 88. As was the case in *Beckford*, Plaintiff-Intervenors' case is based primarily on violations of the ADA, and therefore attorney's fees are authorized as set forth in §12205 of the ADA.

Other courts have held more generally that the fact that a claim involves prisoners in some manner does not trigger all provisions of the PLRA in all respects. In *Kerr v. Pucket*, 138 F.3d 321 (7th Cir. 1998), for example, the district court applied the PLRA to an Eighth Amendment claim alleging "brainwashing" of prisoners as part of a substance-abuse control program, where the plaintiff was no longer incarcerated, based on the notion that if a prisoner is involved all aspects of the PLRA apply. *Id.* at 322. The Seventh Circuit rejected this approach, finding instead that the PLRA, strictly construed, is limited only to current prisoners by its terms:

> Instead of relying on "common sense," which is an invitation to treat the law as if one side or the other had its way, a Court should implement the language actually enacted --provided that the statute is not internally inconsistent to otherwise absurd. *Id.*

Similarly, in *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998), the Ninth Circuit refused to apply the PLRA emotional distress limitation on prisoner litigation to an action claiming a First Amendment violation brought pursuant to 42 U.S.C. § 1983 because the court

7

did not consider the plaintiff's damages arising from the First Amendment to be emotional distress damages. Rather than applying the rule that "a prisoner is a prisoner," the Ninth Circuit analyzed the nature of the action, not the identity of the litigant, and found the action not to fall within the purview of the PLRA.

Defendants cite to *Cassidy v. Indiana Department of Corrections*, 199 F.3d 374 (7th Cir. 2000) in which the Seventh Circuit found that the PLRA applies to all prisoner litigation claiming relief for emotional and mental damages, regardless of alternative statutory bases of relief. In *Cassidy*, plaintiff alleged that the defendant (IDOC) intentionally discriminated against him in violation of the ADA and Rehabilitation Act by denying him access to various programs, facilities, services, activities and benefits enjoyed by the non-disabled. The district court found that the plaintiff's claims of emotional and mental damages brought pursuant to the ADA were void because the plaintiff could not allege a physical injury in violation of 42 U.S.C. § 1997e(e) of the PLRA. On appeal, the Seventh Circuit affirmed, finding that the emotional and mental damages provision of the PLRA applies to actions for emotional and mental distress brought under the ADA by virtue of the plain language of the PLRA. Although this Court respectfully disagrees with the Seventh Circuit's ultimate conclusion, the *Cassidy* case is quite distinguishable from the case at bar. In *Cassidy*, the Plaintiff was seeking redress for emotional and mental injuries, damages which were clearly within the scope of the PLRA. Here, in contrast, Plaintiff-Intervenors sought reasonable accommodation for their disabilities, a cause of action not at all contemplated by the PLRA. Furthermore, the *Cassidy* court only found that the emotional and mental damages claims brought pursuant to the ADA were in fact governed by the PLRA because the PLRA specifically provides limitations of such a cause of action. The court said nothing of

whether a prisoner's claims for reasonable accommodations would be similarly limited by the PLRA, or whether other portions of the ADA, including the attorney's fees provisions, were similarly limited.

The plain language and legislative history of the ADA, 42 U.S.C.§ 12205, provides further support for the Court's conclusion that the ADA attorney's fees provision is not limited by the PLRA. Section 12205 provides in pertinent part that "the Court in its discretion, may allow the prevailing party a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. The statute does not carve out any exceptions from the attorney's fees provision. The legislative history of the ADA indicates that the drafters clearly contemplated that the ADA was the comprehensive legislation for disability claims. Specifically, the legislative history embraces the "comprehensive character of the Act." H. Rep. No. 101-485(II), 1990 U.S.C.C.A.N. at 330. Congress rejected "piecemeal" enactment of provisions for the protection of persons with disabilities. Such a piecemeal approach would, as stated in the legislative history, leave "holes in the fabric, serious gaps in coverage that leave persons with disabilities without adequate civil rights protections." *Id*. Carving out an implicit exception to the ADA for cases brought on behalf of prisoners does not comply with this legislative intent. The ADA defines and encompasses Plaintiff-Intervenors because they possess a qualifying disability. Grafting a "prisoner exception" onto the ADA would create just the sort of gap in coverage rejected by Congress, without any support in either the ADA or the PLRA for such an exception to the ADA's comprehensive coverage.

After an analysis of the plain meaning of both the ADA and the PLRA, the legislative history of the ADA and supporting case law, the Court concludes that the PLRA attorney's fees

provision does not supplant the attorney's fees provision under the ADA.

**C.     Appropriate Attorney's Fees**

The ADA contemplates that attorney's fees be calculated by multiplying reasonable hours by a reasonable hourly rate as determined by the prevailing market rate in the community.  H.R. Rep. No. 101-485(II), 1990 U.S.C.C.A.N. at 73.  The prevailing market rate is determined based on similar services provided in the community by attorneys of reasonable comparable skills, experience and reputation.  As verified in the accompanying affidavit, the foregoing hourly rates are representative of the prevailing market rate in the community:

| Attorney | Rate |
| --- | --- |
| Peter Cobra | $190.00 |
| Elizabeth Simpson | $180.00 |
| Lisa Schatz | $125.00 |

**WHEREFORE,**

**IT IS HEREBY ORDERED** that Plaintiff-Intervenors' Application for Attorney's Fees **[Doc No. 307]** is hereby **GRANTED** and shall be awarded in the amounts stated above.

**DATED** this 22nd day of August, 2000.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT JUDGE