IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JIMMY (BILLY) MCCLENDON, et al.,**

    Plaintiffs,

vs.                                                                                                          No. CV 95-24 JAP/KBM

**CITY OF ALBUQUERQUE, et al.,**

    Defendants.

vs.

**E.M., R.L., W.A., D.J., P.S., and N.W., on behalf
of themselves and all others similarly situated,**

    Plaintiff-Intervenors.

## SETTLEMENT AGREEMENT

    The Plaintiffs, Plaintiff-Intervenors, and Defendants have met and conferred regarding the termination of this litigation. To ensure that improvements achieved thus far by Defendants are preserved, and in recognition of the parties' shared interests in establishing a durable remedy for the class and sub class, the parties hereby enter into this Settlement Agreement:

    1.    The parties hereby agree that it is in the best interest of all parties to resolve all outstanding issues by entering into a global Settlement Agreement.

        A.    Plaintiffs' and Plaintiff-Intervenors' consideration for entering into this Settlement Agreement are improvements in the operation of the County jail system, a fair and reasonable check-out audit for each of the domains listed in the Check-Out Audit

EXHIBIT A

Agreements described below, assurance that a finding of substantial compliance is meaningful, the establishment of a durable remedy and, during the pendency of the lawsuit, identification of any domains, if any, in which backsliding has occurred so that appropriate corrective action can be taken.

  B. Defendants' consideration for entering into this Settlement Agreement is knowing exactly what must be done to achieve substantial compliance, understanding what elements of their obligations will be audited and how those audits will be conducted, and having their obligations described specifically and clearly enough to have their compliance accurately and objectively measured.

2. Definitions:

  A. Backsliding: For purposes of this Agreement, backsliding is defined as deviations from Defendants' obligations that are sufficiently significant that, had those deviations been found at the time substantial compliance originally was determined as to that domain, the deviations would have prevented a finding of substantial compliance as to that domain.

  B. Bernalillo County jail system:  As used in this document, Bernalillo County jail system refers to every adult detention facility owned or operated by the County of Bernalillo or a contractor of the County within Bernalillo County; as well as those detainees who are a part of the County's Community Custody Program.  Bernalillo County jail system does not refer to inmates who are housed in a facility that is neither owned nor operated by the County or a contractor of the County.  Adult detention facility

does not include a facility that is licensed as a treatment facility even if it is a locked facility.

  C. Substantial Compliance: As used in this Settlement Agreement, "substantial compliance" means that Defendants generally are in compliance with the terms of the substantive requirements listed in the Check-Out Audit Agreements. Incidents of non-compliance do not necessarily prevent a finding of substantial compliance. The determination of substantial compliance will take into account the extent to which exceptions to compliance are sporadic or isolated in nature, are unintentional, are the temporary result of actions by MDC inmates and are promptly and properly addressed by corrective action and, where appropriate, disciplinary action against staff members responsible for the exception to compliance. In no event will a determination of substantial compliance be made if exceptions to compliance are the result of willful or intentional actions by Defendants.

    1) Initial Finding of Substantial Compliance:

   Once the Defendants believe that they have sufficient evidence to demonstrate substantial compliance in a particular domain, the Defendants may move the Court for an initial finding of substantial compliance.

    2) Sustained Compliance:

   Substantial compliance for a period of time determined sufficient by the Court to demonstrate that a durable remedy is in place. The time period for substantial compliance may vary by domain.

    D. Check Out Audit: The Check Out Audit will occur at the end of the period set for sustained compliance for any given domain.

    E. Domain: A domain refers to a unit of this case as set forth below in Paragraph 9.

    F. Subcategory: Subcategory refers to the discrete requirements listed in the Check-Out Audit Agreements.

  3. Defendants will ensure that the population at the Bernalillo County Metropolitan Detention Center, located at 100 Deputy Dean Miera, Dr. SW (*hereinafter* "MDC"), remains at or under 1,950. The mechanisms by which the County will keep the population at or below 1,950 are set out in the Stipulated Order Setting Population Capacity for the Bernalillo County Metropolitan Detention Center [Doc. No. __].

  4. <u>Initial Finding of Substantial Compliance</u>:

    A. The parties agree that once the Defendants believe that they have sufficient evidence to demonstrate substantial compliance in a particular domain the Defendants may move the Court for a finding of initial substantial compliance.

    B. The parties agree that the Court will determine whether the record supports a finding of initial substantial compliance with respect to each domain of the applicable Check-Out Audit Agreements based on the experts' reports and other evidence presented by the parties. If the Court requires additional information in order to make his or her recommended findings, the Court will provide guidance to the appropriate expert as to what additional information is required. If the Court finds that there is an area in

4

non-compliance, the Court, in consultation with the appropriate expert, will direct Defendants as to what must be accomplished to achieve initial substantial compliance.

C. When making the determination of initial substantial compliance, the Court will also determine the date upon which initial substantial compliance began as to each domain.

5. <u>Sustained Substantial Compliance:</u>

A. After the Court has determined Defendants have achieved initial substantial compliance, the Court will set a period of self-monitoring for each domain which the Court determines is a sufficient period to reach sustained substantial compliance based upon the complexity of the domain, the date when initial substantial compliance began as well as any other factors determined by the Court.

B. The Court-appointed experts in each area, in conjunction with Defendants, will develop self-monitoring protocols. These protocols will require:

    1) that data regarding each of the subcategories set forth in the Check-Out Audit Agreements be collected and analyzed;

    2) that MDC and/or the medical contractor staff will collect the data regarding the subcategories set forth in the Check-Out Audit Agreements and issue a preliminary analysis of each subcategory;

    3) that the current Court-appointed experts or an expert determined by the Court's expert to be qualified by training, experience, and education in the appropriate subject matter area will review the data

collected on each subcategory and the preliminary analysis; conduct, or require the MDC and/or medical contractor staff to conduct, any additional fact-gathering that is necessary; and provide a written analysis of whether County Defendants are substantially complying with each of the substantive requirements set forth in the applicable Check-Out Audit Agreement;

4) that, if the expert determines that County Defendants are not in substantial compliance with a particular subcategory, the expert will provide a recommendation for corrective action;

5) that MDC and/or the medical contractor implement the corrective action recommended by the expert or will achieve substantial compliance through alternative action acceptable to the expert;

C. During the period of self-monitoring for each domain, Defendants will submit quarterly reports to the expert for that domain, and to counsel for Plaintiff and Plaintiff-Intervenors as to Defendants' continued substantial compliance with each particular domain. The quarterly reports will contain sufficient data for the expert for that domain to determine whether County Defendants remain in compliance with each of the subcategories listed under the domain.

D. During the period of self-monitoring for each domain, counsel for Plaintiffs and Plaintiff-Intervenors only will be compensated for monitoring in that domain as follows: (1) for reviewing Defendants' self-monitoring reports and providing

feedback to the Defendants and their counsel regarding whether the Defendants are in compliance with the provisions of the self-monitoring agreement, (2) for previously agreed upon participation in expert site visits and reviewing and commenting on reports during the Check Out Audits, and (3) for receiving complaints from an individual class member or sub class member with respect to an allegation rising to the level of risk of irreparable harm and conveying any concerns to Defendants' counsel.

6.  The parties agree that at end of the period established for self-monitoring, the Court's experts will conduct Check-Out Audits as to each domain and make a finding of compliance, partial compliance, or non-compliance with the substantive requirements of the Check-Out Audit Agreements listed below.

   A.   Check-Out Audit Agreement No. 1 covers the provision of all medical services, but not including the provision of mental health services. Check-Out Audit Agreement No. 1 is attached as Exhibit 1 to this Settlement Agreement. The parties understand and agree that the terms and conditions set forth in Check-Out Audit Agreement No. 1 are incorporated into this Settlement Agreement.

   B.   Check-Out Audit Agreement No. 2 covers all mental health services, but does not including the provision of medical services. Check-Out Audit Agreement No. 2 is attached as Exhibit 2 to this Settlement Agreement. The parties understand and agree that the terms and conditions set forth in Check-Out Audit Agreement No. 2 are incorporated into this Settlement Agreement.

   C.   Check-Out Audit Agreement No. 3 covers all conditions of confinement

except for the provision of medical and mental health services. Check-Out Audit Agreement No. 3 is attached as Exhibit 3 to this Settlement Agreement. The parties understand and agree that the terms and conditions set forth in Check-Out Audit Agreement No. 3 are incorporated into this Settlement Agreement. Check- Out Audit Agreement No. 3 covers Jail Operations Groups A and B, as well as population management, housing and segregation, sexual misconduct, and use of force and internal investigations.

   D.  In the performance of their check-out audits, the Court's experts will submit proposed findings of fact with respect to each subcategory of the applicable Check-Out Audit Agreements.

  7.  If a Check-Out Audit reflects that a domain has not remained in sustained substantial compliance (due to failure to comply with the substantive requirements set forth in the Check-Out Audit Agreements or due to backsliding), Defendants will have a period of 90 days to cure that deficiency. If Defendants determine that more than 90 days are required to correct the deficiency, Defendants will inform the Court of the reasons for the need to exceed 90 days and the amount of time necessary to correct the deficiency.

  8.  Based upon the Defendants' self-monitoring reports as well as the experts' proposed findings at the Check-Out Audits, the Court will determine whether the record supports a finding of sustained substantial compliance as to each domain. If the Court determines there is not sustained substantial compliance, the Court will set an additional period for self-monitoring. At the conclusion of the additional period of self-monitoring, the expert for that domain will

conduct another Check-Out Audit.

9. Parties agree for incremental vacation of orders regarding particular as follows:

A. Domain 1: Mental Health Services, set forth in Check-Out Audit Agreement No.1.

B. Domain 2: Medical Services, set forth in Check-Out Audit Agreement No. 2.

C. Domain 3: Group A of Jail Operations, set forth in Check-Out Audit Agreement No. 3.

D. Domain 4: Group B of Jail Operations, set forth in Check-Out Audit Agreement No. 3.

E. Domain 5: Population management, set forth in Check-Out Audit Agreement No. 3.

F. Domain 6: Housing and segregation, set forth in Check-Out Audit Agreement No. 3.

G. Domain 7: Sexual misconduct, set forth in Check-Out Audit Agreement No. 3.

H. Domain 8: Use of force by security staff and internal investigation, set forth in Check-Out Audit Agreement No. 3.

10. The parties agree that after the Court makes a finding of sustained substantial compliance as to a particular domain as listed above, all provisions of extant orders related to that domain will be vacated.

11. If Plaintiffs or Plaintiff-Intervenors believe that the Defendants have engaged in backsliding as to a domain that was previously vacated, they may move the Court to re-engage oversight over that particular domain.

12. The Court will grant a motion to re-engage oversight over a domain only where Plaintiffs and/or Plaintiff-Intervenors have established by a preponderance of the evidence that Defendants engaged in backsliding with regards to the requirements of the Check Out Audit Agreement applicable to the domain at issue.

13. <u>Dismissal</u>:  The parties agree that this lawsuit with all extant orders except for the Stipulated Order Setting Population Capacity for the Bernalillo County Metropolitan Detention Center [Doc. No. ] will be vacated and all claims dismissed with prejudice after the Court finds that Defendants have demonstrated sustained substantial compliance for each and every domain. If Defendants have demonstrated sustained substantial compliance for each domain listed in the Check Out Audit Agreements, Plaintiffs and Plaintiffs-Intervenors agree to move the Court for dismissal of all claims with prejudice. The Stipulated Order Setting Population Capacity for the Bernalillo County Metropolitan Detention Center [Doc. No. __] will remain in effect after the dismissal of this action and any violation of that Order can result in enforcement actions before this Court.

14. If Defendants invoke emergency circumstances to take action that departs from what would otherwise be the requirements of this Settlement Agreement, Defendants will immediately notify the Court, the experts, Plaintiffs' counsel, and Plaintiff-Intervenors' counsel of the following:

> A. The emergency circumstances relied upon;
>
> B. The corresponding action taken;
>
> C. What Defendants believe will be the duration of such circumstances and such action; and
>
> D. The steps Defendants are taking to attempt to limit the duration of such action to as short a term as practicable.

15. For purposes of this Settlement Agreement, an emergency is defined as a circumstance caused by a riot, fire, or similar event not caused intentionally by Defendants, their agents or employees, that makes compliance with the provisions of this Settlement Agreement temporarily impossible, extraordinarily difficult, or infeasible. Construction delays or labor disputes not caused intentionally or reasonably anticipated by Defendants may constitute an emergency, but legislative, executive, or administrative policy decisions not to appropriate funds or allocate resources to MDC and its operation will not justify the declaration of an emergency. Legislative decisions regarding sentencing will not justify declaration of an emergency.

16. Prior to dismissal of this action and pursuant to the terms of this Settlement Agreement, the parties agree that they will jointly request that the District Court enter a permanent injunction pertaining to the Bernalillo County jail system. Because of County Defendants' population management initiatives, the parties recognize and agree that County Defendants have not engaged in a number of the following practices for a significant period of time. However, County Defendants cannot anticipate future fluctuations in the population. Accordingly, the injunction will have the following provisions: (a) The population of the

11

Metropolitan Detention Center will be limited to the operational capacity of the MDC, which as of the date of this document is at 1950, which will be determined by the operations expert and reviewed from time to time but no less than every six months based on factors which include design capacity, staffing levels, the impact of inmate classification on inmate segregation numbers, and other factors to be mutually agreed to in writing by the parties; (b) no inmates will be triple celled, unless the facility is designed for triple celling; (c) no inmates will sleep in dayrooms or in other areas not designed for sleeping, except in the detoxification units; (d) defendants will not double cell any inmates requiring segregation who are high-risk or security threats with any other inmates, unless those inmates have been determined to be compatible. Segregated inmates who are in protective custody or new intakes may be double celled if they have been determined to be low risk and compatible using a reliable objective classification tool; (e) defendants will not house inmates who have not yet been classified with inmates who require segregation. The permanent injunction will include stipulated findings that it is narrowly drawn; extends no further than necessary to correct violations of the federal rights of class members; is the least intrusive means necessary to correct violations of the federal rights of class members; and will have no adverse impact on the public safety or the operation of the criminal justice system. Two years after the Court enters the permanent injunction, the County Defendants will reacquire the right to file motions under the Prison Litigation Reform Act.

      17.    Any future contempt motions by either Plaintiffs or Plaintiff-Intervenors must be filed on a timely basis, after mediation, and be based on the requirements of this Agreement and the substantive requirements set forth in the Check-Out Audit Agreements.

18. This Settlement Agreement will not be admissible as evidence in any proceeding or trial other than for the sole and limited purpose of enforcement of the Agreement.

19. The parties do not intend to create in any non-party the status of a third-party beneficiary. This Settlement Agreement will not be construed so as to create a private right of action to any non-party against the Defendants. The rights, duties, and obligations contained in this Settlement Agreement will only bind the parties to this Settlement Agreement.

20. The parties stipulate and agree that the United States District Court will retain jurisdiction for purposes of enforcing this Settlement Agreement.

21. This Settlement Agreement will be submitted to the Court for its review and approval pursuant to Rule 23 of the Federal Rules of Civil Procedure.

22. Plaintiffs, Plaintiff-Intervenors, and Defendants agree to cooperate regarding any fairness or other hearings that are required by the United States District Court in order to facilitate the dismissal of Plaintiffs' and Plaintiff-Intervenors' claims.

23. This Settlement Agreement will not have any force and effect until such time as it has been approved by the Board of County Commissioners of Bernalillo County in an open meeting.

24. If this Settlement Agreement is not approved in its entirety by the United States District Court, then this Settlement Agreement will be null and void.

25. This Settlement Agreement is a document which all parties have negotiated and drafted. Since all parties participated equally in drafting its terms, the general rule of construction interpreting a document against the drafter will not be applied in future

interpretation of this Settlement Agreement.

26. Any request for a modification of this Settlement Agreement will be mediated by the U.S. Magistrate Judge or Special Master Alan C. Torgerson before it is submitted to the United States District Court for consideration.

27. Any claimed breach of this Settlement Agreement will be mediated by the U.S. Magistrate Judge or Special Master Alan C. Torgerson before it is submitted to the United States District Court for consideration.

28. This Settlement Agreement is narrowly drawn; extends no further than necessary to correct violations of the federal rights of class members; is the least intrusive means necessary to correct violations of the federal rights of class members; and will have no adverse impact on the public safety or the operation of the criminal justice system.  Two years after the Court enters this Settlement Agreement, the County Defendants will reacquire the right to file motions under the Prison Litigation Reform Act.

**IT IS SO ORDERED.**

_____
The Honorable James A. Parker
SENIOR UNITED STATES DISTRICT JUDGE

APPROVED:

_____  _____
Randy Autio                          Luis Robles
Attorney for County Defendants       Marcus J. Rael, Jr.
                                     Attorney for County Defendants


_____  _____
Mark Baker                           Jeffrey L. Baker
Attorney for Plaintiffs              Attorney for County Defendants


_____  _____
Mark H. Donatelli                    Peter Cubra
Attorney for Plaintiffs              Attorney for Plaintiff-Intervenors


_____  _____
Zachary A. Ives                      Nancy L. Simmons
Attorney for Plaintiffs              Attorney for Plaintiff-Intervenors


_____  _____
The Honorable Alan Torgerson         Julie Morgas Baca
Special Master                       Bernalillo County Manager