IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JIMMY (BILLY) MCCLENDON, et al.,**

    Plaintiffs,

vs.                                                                                            No. CV 95-24 JAP/KBM

**CITY OF ALBUQUERQUE, et al.,**

    Defendants.

vs.

**E.M., R.L., W.A., D.J., P.S., and N.W., on behalf
of themselves and all others similarly situated,**

    Plaintiff-Intervenors.

**CHECK-OUT AUDIT AGREEMENT No. 1:
THE PROVISION OF MEDICAL SERVICES AT THE
<u>BERNALILLO COUNTY METROPOLITAN DETENTION CENTER</u>**

    1.    The subcategories covered in Check-Out Audit Agreement No. 1 (*hereinafter* referred to as the "Agreement") include the provision of all medical services, but does not include the provision of mental health services or conditions of confinement.

    2.    This Agreement provides definitive, specific, and measurable tasks to be accomplished in order to achieve substantial compliance.

    3.    With respect to the provision of medical services, this Agreement is comprehensive. Thus, the parties understand and agree that this Agreement incorporates (but does not supersede) all extant orders and agreements. The expert's review will be governed

EXHIBIT B

solely by the Settlement Agreement and this Check-Out Audit Agreement.

4. This Agreement sets forth, area by area, the scope of the check-out audit for the provision of medical services only.

5. The parties agree that the Court's medical expert will review the provision of medical services at MDC as set forth in paragraph 6 of this Agreement.

6. The Court's medical expert will make findings of fact which address the subcategories listed below:

> A. Whether MDC's provision of medical services complies with MDC's medical policies and procedures;
>
> B. Whether MDC is in compliance with the advisory standards set forth in the American Correctional Association's Standards for Adult Detention Centers;
>
> C. Whether MDC has made and is making good faith efforts to comply with the advisory Guidelines of the National Commission on Correctional Health Care;
>
> D. Whether MDC is conducting and completing a history and physical exam of each inmate in a timely manner, i.e., within 72 hours for inmates with serious medical needs identified at booking and no later than 14 days otherwise;
>
> E. Whether MDC inmates who complain orally or in writing of serious acute illness or serious injury are given immediate medical attention;

F. Whether all inmate requests for medical care are timely communicated to medical personnel for appropriate treatment.

G. Whether MDC has made necessary revisions to existing policies, procedures and practices for any deficiencies identified by MDC or the monitors regarding the provision of timely access to appropriate medical care and is following the revised policies, procedures and practices.

H. MDC's Quality Improvement Process:

1) Whether MDC operates an adequate Quality Assurance/Improvement system regarding medical care, its medical and health care policies and procedures, including but not limited to those identified in NCCHC standards and MDC policy and has implemented appropriate corrective action;

2) Whether MDC has a committee that reviews individual and system data about triggers and thresholds, and determines whether these data indicate trends either for individuals or for the adequacy of treatment overall;

3) Whether MDC's Quality Improvement Committee conducts analyses of the medical and health care processes and makes recommendations on changes and corrective actions;

    a. Provides oversight of the implementation of medical policies, procedures, guidelines and support plans;

    b. Reviews policies, training, and staffing levels;

    c. Monitors implementation of recommendations and corrective actions;

    d. Reports its findings and recommendations to appropriate County officials periodically; and

    e. Refers appropriate incidents to the Morbidity/Mortality Committee for review, as necessary.

7. Constitutionally adequate medical care

  A. Whether the medical care provided by MDC to its inmates evidences repeated examples of negligent acts, which disclose a pattern of conduct by MDC medical staff;

  B. Whether the examples of negligent acts disclose a pattern of conduct by MDC medical staff that effectively denies inmates access to adequate medical care;

  C. Whether there are systematic and gross deficiencies in staffing, facilities, equipment, or procedures; and

  D. Whether the systematic and gross deficiencies effectively deny the inmate population access to adequate medical care.

8. Americans with Disabilities Act

  A. Whether adequate communication occurs between MDC administration and treating health care professionals regarding an inmate's significant health needs that must be considered in classification decisions in order to preserve the health and safety of

that inmate, other inmates, or staff;

    1)    Whether MDC security staff is advised of inmates' special medical needs that may affect housing, work, program assignments, disciplinary measures, and admissions to and transfers from institutions.

    2)    Whether health care and security staff communicate about inmates with special needs conditions.

B.    Whether MDC follows a proactive program which provides care for special needs patients who require close medical supervision or multidisciplinary care.

    1)    Whether individual treatment plans are developed by a physician or other qualified clinician at the time the condition is identified and updated when warranted.

    2)    Whether the treatment plan includes, at a minimum:

        a.    The frequency of follow-up for medical evaluation and adjustment of treatment modality;

        b.    The type and frequency of diagnostic testing and therapeutic regimens; and

        c.    When appropriate, instructions about diet, exercise, adaptation to the correctional environment, and medication.

C.    Whether medical and dental orthoses, prostheses, and other aids to impairment are supplied in a timely manner when the health of the inmate would otherwise be adversely affected, as determined by the responsible physician or dentist.

        1) Whether health records confirm that patients receive prescribed aids to impairment.

        2) Where the use of specific aids to impairment is contraindicated for security reasons, whether alternatives are considered so the health needs of the inmate are met.

    D.    Whether the medical care provided to subclass members is adequate and whether the medical care provided to sub class members is at least equivalent in quality to the medical care provided to others;

    E.    Regarding inmates who are qualified individuals with disabilities under the ADA, whether the Defendants have made modifications to their policies, procedures and practices that are necessary to provide to inmates with disabilities with medical care which is equivalent in quality to the care provided to inmates without disabilities.

9.    The Court's medical expert will conduct the check-out audit for the provision of medical services after (i) the Court makes an initial finding that defendants are in substantial compliance for all subcategories pertaining to medical care and (ii) defendants' self-monitoring demonstrates substantial compliance for a period determined by the Court. After review of Defendants' self-monitoring and subsequent Check-Out Audit, The Court's medical expert will make findings regarding compliance, partial compliance or non-compliance and submit a copy of his or her proposed findings to the Court and provide copies to all counsel. The Court will then make a finding as to whether Defendants are in sustained substantial compliance with the provisions of the Check-Out Audit Agreement.

10. If the Check-Out Audit reflects that the domain is not in sustained substantial compliance (due to failure to accomplish the tasks described in this Agreement), the Court's medical expert will identify the deficiency and provide Defendants with specific corrective action which Defendants must take to obtain substantial compliance.  Defendants may propose alternative remedial action to obtain substantial compliance which must be approved by the Court's medical expert. Defendants will have a period of 90 days to cure the deficiency, unless Defendants provide notice that more time is needed, as set forth in the Settlement Agreement.

11. If the Court determines that the domain is not in sustained substantial compliance, the Court will set an additional period for self-monitoring, after which the Court's medical expert will conduct another Check-Out Audit.

12. The parties understand and agree that the terms and conditions set forth in the Settlement Agreement to which this Agreement is attached are incorporated herein.

**IT IS SO ORDERED.**

_____
The Honorable James A. Parker
SENIOR UNITED STATES DISTRICT JUDGE

**APPROVED:**

_____       _____
Randy Autio                                                           Luis Robles
Attorney for County Defendants                        Marcus J. Rael, Jr.
                                                                                   Attorney for County Defendants


_____       _____
Mark Baker                                                            Jeffrey L. Baker
Attorney for Plaintiffs                                         Attorney for County Defendants


_____       _____
Mark H. Donatelli                                                Peter Cubra
Attorney for Plaintiffs                                         Attorney for Plaintiff-Intervenors


_____       _____
Zachary A. Ives                                                    Nancy L. Simmons
Attorney for Plaintiffs                                         Attorney for Plaintiff-Intervenors


_____       _____
The Honorable Alan Torgerson                         Julie Morgas Baca
Special Master                                                     Bernalillo County Manager