UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

JIMMY (BILLY) McCLENDON, et al.,
    Plaintiffs,

vs.

                        Case No. 95 CV 024 JAP/ACT

CITY OF ALBUQUERQUE, et al.,
    Defendants.
vs.

E.M., R.L., W.A., D.J., P.S., and N.W.,
on behalf of themselves and all others similarly situated,
    Plaintiff-Intervenors.

MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFFS' AND PLAINTIFF INTERVENORS' JOINT MOTION
FOR ENFORCEMENT OF INTERIM ORDER REGARDING ACCESS TO THE MDC

In PLAINTIFFS' AND PLAINTIFF INTERVENORS' JOINT MOTION FOR ENFORCEMENT OF INTERIM ORDER REGARDING ACCESS TO THE MDC (Doc. No. 1265) (Joint Motion), Plaintiffs and Plaintiff Intervenors ask the Court to order the County Defendants to comply with the Court's September 17, 2009 INTERIM ORDER REGARDING ACCESS TO THE MDC (Doc. No. 754) (Interim Order). Specifically, Plaintiffs and Plaintiff Intervenors seek an order requiring the County to produce reports that officials at the Metropolitan Detention Center (MDC) provided to the Court's medical care expert, Dr. Robert Greifinger, during his April and November 2016 site visits. The County opposes the Joint Motion. *See* COUNTY DEFENDANT'S RESPONSE TO PLAINTIFFS' AND PLAINTIFF INTERVENORS' JOINT MOTION FOR ENFORCEMENT OF INTERIM ORDER REGARDING ACCESS TO THE MDC (Doc. No. 1268) (Response). Plaintiffs and Plaintiff Intervenors filed a reply brief. *See* REPLY IN SUPPORT OF PLAINTIFFS' AND PLAINTIFF

1

INTERVENORS' JOINT MOTION FOR ENFORCEMENT OF INTERIM ORDER REGARDING ACCESS TO THE MDC (Doc. No. 1270). Because the Joint Motion requests the same type of records and documents that the Court previously ordered the County and its medical provider to produce, the Court will grant the Joint Motion, subject to a confidentiality order, if necessary.

I.  BACKGROUND

The MDC contracts with Correct Care Solutions (CCS) to provide medical and mental health services to the inmates housed in the MDC. Under the December 7, 2011 ORDER APPOINTING MANUEL ROMERO, ROBERT GREIFINGER, M.D., AND JEFFREY METZNER, M.D. TO EVALUATE THE BERNALILLO COUNTY METROPOLITAN DETENTION CENTER (Doc. No. 909), the Court authorized three experts in the areas of medical care (Dr. Griefinger), mental health care (Dr. Metzner), and conditions of confinement (Mr. Romero), to periodically evaluate the provision of services and the conditions of confinement at the MDC to help the Court determine whether the County is complying with federal law and the orders entered in this case.

On October 13, 2015, the Court entered a MEMORANDUM OPINION AND ORDER GRANTING IN PART [AND] DENYING IN PART PLAINTIFF-INTERVENORS' RENEWED OBJECTIONS TO MEMORANDUM OPINION AND ORDER ON JOINT MOTION FOR ENFORCEMENT OF INTERIM ORDER REGARDING ACCESS TO THE MDC (Doc. No. 1207) (Order on Renewed Objections). In the Order on Renewed Objections, the Court ordered the County and its medical contractor, Correctional Healthcare Companies to provide the following documents to Plaintiff Intervenors: (1) the Continuous Quality Improvement and quality assurance reports; (2) the Mortality Review Reports; and (3) the

Stellman Matrix, a report prepared by the County's contract compliance officer, Dr. Roberta Stellman. Counsel for Plaintiffs and Plaintiff Intervenors asked the County to produce the same type of internal quality review documents that were shown to the Court's medical expert, Dr. Greifinger, during his April and November 2016 site visits. Counsel offered to provide a stipulated order of confidentiality covering the requested documents. The County denied the request. In his November 21, 2016 Report, Dr. Greifinger stated that he "read the mortality reviews of the six inmates who died in custody since [his] last visit" and found them to be "appropriately reflective and self-critical." (Nov. Rep. at 7.) The Joint Motion states that all of the mortality reviews have been withheld from counsel for Plaintiffs and Plaintiff Intervenors. (*See generally,* Mot. at 4.) In November 2016, the County provided to counsel for the Plaintiffs and Plaintiff Intervenors some internal quality assurance reports, which the County claimed were the documents shared with Dr. Greifinger in connection with his November 2016 visit. However, the County apparently is withholding the same types of documents referenced in Dr. Greifinger's April 2016 report. In addition, the County gave Dr. Greifinger several documents prepared by Dr. Ron Shansky and Dr. Kenneth Ray, the County's compliance contractors, that Plaintiffs' and Plaintiff Intervenors' counsel state they have not seen.[1]

Counsel for Plaintiffs and Plaintiff Intervenors argue that they need all documents reviewed by the Court's experts to ensure that the County is giving the experts accurate information. A complete set of documents provided to the Court's experts is vital to counsel for Plaintiffs and Plaintiff Intervenors in monitoring compliance with the Court's extant orders as incorporated into a recently-approved SETTLEMENT AGREEMENT (Doc. No. 1222-1) (the Settlement Agreement). The Settlement Agreement requires the County to demonstrate initial

---

[1] The County had contracted with Drs. Shansky and Ray to provide compliance and sustainability monitoring services regarding medical and other services at MDC.

3

compliance with numerous standards outlined in three CHECK-OUT AUDIT AGREEMENTS (Doc. Nos. 1222-2, 1222-3, 1222-4.). CHECK-OUT AUDIT AGREEMENT No. 1: THE PROVISION OF MEDICAL SERVICES AT THE BERNALILLO COUNTY METROPOLITAN DETENTION CENTER (Doc. No. 1222-2) (COA 1) requires the Court's medical expert, Dr. Greifinger, to make findings of fact addressing whether the MDC has performed "definitive, specific, and measurable tasks" to accomplish substantial compliance with numerous requirements regarding medical services at the MDC. CHECK-OUT AUDIT AGREEMENT No. 2: THE PROVISION OF MENTAL HEALTH SERVICES AT THE BERNALILLO COUNTY METROPOLITAN DETENTION CENTER (Doc. No. 1222-3) (COA 2) requires the Court's mental health expert, Dr. Metzner, to make findings of fact addressing whether MDC has performed "definitive, specific, and measurable tasks" to accomplish substantial compliance with numerous requirements regarding mental health services at the MDC. CHECK-OUT AUDIT AGREEMENT No. 3: THE CONDITIONS OF CONFINEMENT AT THE BERNALILLO COUNTY METROPOLITAN DETENTION CENTER (Doc. No. 1222-4) (COA 3) requires the Court's conditions of confinement expert, Mr. Romero, to make findings of fact addressing whether MDC has performed "definitive, specific, and measurable tasks" to accomplish substantial compliance with numerous requirements regarding conditions of confinement at the MDC.

Over the past several years, the experts have visited MDC to observe the operations at MDC, and each expert has produced detailed reports to the Court outlining MDC's compliance or non-compliance with the Court's orders. Under the Settlement Agreement, the experts will continue to play a central role in helping this Court to determine whether MDC is in compliance

with the provisions of COA 1, COA 2, and COA 3. In the future, the experts will help the Court to make findings that will lead to the successful conclusion of this case.

II.     DISCUSSION

The Court's analysis in its Order on Renewed Objections applies to the Joint Motion. Counsel for the class and subclass must have access to all reports, documents, and information that MDC gives to the Court's experts, even if the experts do not use the information in preparing their reports. Access to internal quality reports and mortality reviews given to the experts will ensure that Plaintiffs' and Plaintiff Intervenors' counsel are able to determine whether the County is providing accurate and sufficient information to those experts. In addition, counsel for the class and subclass must have access to the reports prepared by Drs. Shansky and Ray that were given to Dr. Greifinger during his April 2016 and November 2016 site visits. In the future, the County must give opposing counsel all reports that the County provides to any of the experts.

The County maintains that the materials sought are protected from disclosure by the self-critical analysis privilege and that forcing the County and its medical provider, CCS, to share this information will "chill" their self-critical analysis. According to the County, "[i]t will be difficult for CCS staff to be candid when they believe that these documents, which are intended to be improvement tools, will be shared with opposing counsel and may be potentially used against them in the future." (Resp. at 2–3.) The County's concerns are understandable, and some courts have held that these types of analyses are protected by the privilege in medical malpractice cases. *See Weekoty v. United States*, 30 F.Supp.2d 1343, 1345 (D.N.M. 1999) (recognizing privilege in medical malpractice case). *But see Zander v. Craig Hosp.*, 267 F.R.D. 653, 661 (D. Colo. 2010) (citing *Weekoty*) (finding that "organic documents" which described hospital's quality

5

management functions were not privileged in a medical malpractice case). In the context of prison reform, however, these types of quality assurance reports are not protected by the self-critical analysis privilege. *See* Order on Renewed Objections at 11–14. The Court sees no reason to change its previous conclusion that these types of documents are discoverable. *See Bravo v. Board of Commissioners for the County of Dona Ana*, Case No. 08 CV 0010 WJ/KBM, MEMORANDUM OPINION AND ORDER (Doc. No. 214) (D.N.M. Nov. 24, 2009) at 6 (unpublished). Moreover, even if the privilege were applicable in this case, Plaintiffs and Plaintiff Intervenors may access the documents because the County and CCS waived their privilege when they provided the documents to MDC personnel and to the Court's experts.

The County also argues that Plaintiffs and Plaintiff Intervenors should not have access to the reports prepared by Drs. Shansky and Ray because Dr. Greifinger did not use those reports in his evaluation of medical care at the MDC. The County contends that the reports would not assist Plaintiffs and Plaintiff Intervenors in evaluating Dr. Greifinger's 2016 reports. However, it is not the County's duty to define what is useful to counsel for the Plaintiffs and Plaintiff Intervenors, and these reports, if given to the Court's expert, should be provided to opposing counsel. If the County and CCS want to protect the confidentiality of these reports, the Court will enter a stipulated order protecting that confidentiality, as it has in the past.

IT IS ORDERED that the PLAINTIFFS' AND PLAINTIFF INTERVENORS' JOINT MOTION FOR ENFORCEMENT OF INTERIM ORDER REGARDING ACCESS TO THE MDC (Doc. No. 1265) is granted.

_____
SENIOR UNITED STATES DISTRICT JUDGE