UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JIMMY (BILLY) MCCLENDON, et al.,**

    Plaintiff,

vs.                                                                         Civ. No. 95-24 JAP/KBM

**CITY OF ALBUQUERQUE, et al.,**

    Defendant,

vs.

**E.M., R.L., W.A., D.J., P.S., and N.W.**
**On behalf of themselves and all others**
**similarly situated,**

    Plaintiff-Intervenors


**ORDER**

On December 23, 2019, Defendants City of Albuquerque, et al. (Defendants) filed DEFENDANT BERNALILLO COUNTY BOARD OF COMISSIONERS' MOTION FOR FINDING OF INITIAL COMPLIANCE AND TO SET SELF-MONITORING PERIOD REGARDING DOMAIN #6 (Doc. No. 1388) (Motion). On January 3, 2020, Plaintiffs Jimmy (Billy) McClendon et al. and Plaintiff Intervenors E.M., R.L., W.A., D.J., P.S., and N.W. (collectively, Plaintiffs) filed an opposing Response in, PLAINTIFF AND PLAINTIFF INTERVENORS' JOINT RESPONSE TO DEFENDANT BERNALILLO COUNTY BOARD OF COMMISSIONERS' MOTION FOR FINDING OF INITIAL COMPLIANCE AND TO SET SELF-MONITORING PERIOD REGARDING DOMAIN #6 (Doc. 1389) (Response). On January 6, 2020, Defendants replied in DEFENDANT BERNALILLO COUNTY BOARD OF

COMMISSIONERS' REPLY IN SUPPORT OF MOTION FOR FINDING OF INITIAL COMPLIANCE AND TO SET SELF-MONITORING PERIOD REGARDING DOMAIN #6 (Doc. 1390) (Reply).

Defendants' Motion asks the Court to find that Defendants were in initial substantial compliance with Domain 6 as of June 27, 2019 and to set a self-monitoring period for Domain 6 that terminates on December 28, 2020. Plaintiffs agree that Defendants are in initial substantial compliance with Domain 6, but they object to Defendants' suggested termination date, arguing that as a condition precedent to disengagement, Defendants should undergo an eighteen month self-monitoring period that would obligate them to submit six quarterly self-monitoring reports. After reviewing the briefs and the reports of Jail Operations Expert Margo Frasier (Frasier), the Court will grant Defendants' Motion.

## THE SETTLEMENT AGREEMENT

On May 26, 2016, the parties entered into a Settlement Agreement (SA). SA (Doc. 1222-1). The Court approved the SA on June 27, 2016.[1] The SA seeks to establish "improvements in the operation of the County jail system" and to create a system that will assure that those improvements are meaningful. *Id.* ¶ 1(A). Toward that end, the SA pursues a durable remedy for the class and sub-class. *Id.* at 1.

Under the terms of the SA, there are eight domains. *Id.* ¶ 9(A)-(H).[2] Each domain has subcategories with criteria. When Defendants "have sufficient evidence to demonstrate

---

[1] MEMORANDUM OPINION AND ORDER GRANTING APPROVAL OF SETTLEMENT AGREEMENT (Doc. 1225).
[2] The domains are: Domain 1, Mental Health Services; Domain 2, Medical Services; Domain 3, Group A of Jail Operations; Domain 4, Group B of Jail Operations: Domain 5, Population management; Domain 6, Housing and segregation; Domain 7, Sexual misconduct; Domain 8, Use of force by security staff and internal investigation. SA (Doc. 1222-1) ¶ 9.

substantial compliance in a particular domain" they may begin the process of disengagement. The disengagement process has three steps.

First, Defendants must "move the Court for a finding of substantial compliance" based on their determination "that they have sufficient evidence to demonstrate substantial compliance in a particular domain." *Id.* ¶ 4(A). "'[S]ubstantial compliance' means that Defendants generally are in compliance with the terms of the substantive requirements listed in the [domain's] Check-Out Audit Agreement[]." *Id.* ¶ 2(C). The Check Out Audit occurs at the end of the period set for a domain's sustained compliance.[3] *Id.* ¶ 2(D).

Then, the Court determines "whether the record supports a finding of initial substantial compliance" and if so, "the date upon which initial substantial compliance began." *Id.* ¶ 4(B)-(C). Once the Court makes that determination, 'the Court will set a period of self-monitoring for each domain which the Court determines is a sufficient period to reach sustained substantial compliance based on the complexity of the domain, the date when initial substantial compliance began as well as any other factors determined by the Court." *Id.* ¶ 5(A). During the self-monitoring period, the SA requires Defendants to "submit quarterly reports to the expert for that domain, and to counsel for Plaintiff and Plaintiff-Intervenors as to Defendants' continued substantial compliance with each particular domain." *Id.* ¶ 5(C). These quarterly reports must contain information that permits the expert to determine whether during the self-monitoring period the Defendants remained in compliance with each of the domain's subcategories. *Id.*

---

[3] Plaintiffs state that "sustained compliance period" is a term "not contemplated by the Settlement Agreement and the Court is not asked to set a period of sustained compliance." (Response p. 3). The term "sustained compliance" is defined in the definitions section of the SA as "[s]ubstantial compliance for *a period of time* determined sufficient by the Court to demonstrate that a durable remedy is in place." *See* SA (Doc. 1222-1) ¶ 2(C)(2) (emphasis added). The Plaintiff's self-monitoring reports and the Check-Out Audits provide the record through which a Court may evaluate whether during the self-monitoring period a domain has remained in "sustained substantial compliance" *Id.* ¶ 8.

Second, at the end of a domain's self-monitoring period, the Court's experts conduct a Check-Out Audit and determine whether under the terms of the Check-Out Audit the Defendants are in compliance, partial compliance, or non-compliance. *Id.* ¶ 6. As part of this process, "the Court's experts will submit proposed findings of fact with respect to each subcategory of the applicable Check-Out Audit Agreements." *Id.* ¶ 6(D).

At the third step, the Court reviews Defendants' self-monitoring reports and the expert's proposed findings from the Check-Out Audit and "determines whether the record supports a finding of substantial compliance as to [the] domain." *Id.* ¶ 8. "[A]fter the Court makes a finding of sustained compliance as to a particular domain as listed above, all provisions of extant orders related to that domain will be vacated." *Id.* ¶ 10. If, at the last two steps, Defendants have not met their obligations or the Court's experts find evidence of "backsliding" in Defendant's performance, then Defendants must repeat those steps. *See id.* ¶ 2(A) (defining "backsliding"); ¶ 7 (if, at the second step, a Check-Out Audit shows that Defendants have not remained in substantial compliance, Defendants have 90 days to cure deficiency); ¶ 8 (providing that if, at the third step, the Court finds that there is no sustained substantial compliance, the Court will set an additional self-monitoring period).

## ANALYSIS

Domain 6 encompasses housing and segregation and has six subcategories. Defendants are at its first disengagement step. Plaintiffs agree that since September 28, 2018, Defendants have substantially complied with five of Domain 6's components. On June 27, 2019, Frasier found Defendants in substantial compliance with the sixth component. In December 2019, Frasier approved Defendants' self-monitoring plan. Plaintiffs agree that Defendants are ready to move into the self-monitoring period.

Defendants and Plaintiffs disagree on a single issue: the length of the self-monitoring period. Defendants argue that the self-monitoring period should retroactively begin on June 27, 2019 and end on December 28, 2020. In opposition, Plaintiffs argue that the self-monitoring period should begin on a date that would permit them to have six quarterly self-monitoring reports. Six quarterly reports would require an eighteen-month self-monitoring period. For Plaintiffs to receive those six quarterly reports, Defendants' self-monitoring period would have to begin approximately three months before this Court's order and continue through spring of 2021.

Plaintiffs point to nothing in the language of the SA that requires an eighteen-month self-monitoring period or six quarterly self-monitoring reports. Rather, Plaintiffs' argument relies on an implied assertion that in the absence of six quarterly reports, Defendants cannot demonstrate sustained substantial compliance for the subcategories in Domain 6. Plaintiffs buttress this argument with an observation that Defendants have not demonstrated compliance with all of Domain 6's subcategories for the same length of time that Defendants demonstrated compliance with the subcategories of Domain 5 before entering a self-monitoring period. Plaintiffs also assert that the Court should maintain a distinction between an initial compliance period and a self-monitoring period. According to the Plaintiffs, Defendants should not be credited with "self-monitoring" time before the entry of a Court order officially beginning a self-monitoring period. With this argument, Plaintiffs emphasize a "distinction between maintaining compliance while under monitoring by the Court's expert and Plaintiff's counsel and doing so while under self-monitoring." Response (Doc. 1389) at 4.

Defendants counter that the SA focuses on demonstrated "substantial compliance" only as evidence of a durable remedy. Toward that end, the SA does not set a duration for the self-

5

monitoring period but relies on the Court's judgment as to the length needed to show sustained compliance based on its analysis of various factors. Defendants assert that this approach is consistent with the Court's findings as to Domain 5 where the Court set an end date for compliance instead of requiring a specific period to demonstrate compliance. Defendants urge the Court to consider that it has been over six months since Frasier found Domain 6 in initial substantial compliance. They argue that it would be unfair and inequitable to ignore this six-month plus period, particularly, since in the interim, full monitoring has continued. Full monitoring, Defendants assert, is more "burdensome on county Defendants and grants greater access to Plaintiff's counsel." Reply (Doc. 1390) at 5. Finally, Defendants argue that the self-monitoring period and the accompanying reports are meant only for the court expert's evaluation and should not be an end in themselves.

As an initial matter, the Court observes that the quarterly self-monitoring reports benefit both the Court's experts and the Plaintiffs. The SA requires Defendants to give these reports to Plaintiffs' counsel and to compensate them for reviewing and providing feedback on the reports. SA (Doc. 122-1) ¶ D. But the SA does not establish a fixed number of quarterly reports for each domain's self-monitoring period.

Plaintiffs have not demonstrated that six quarterly reports are necessary to demonstrate sustained compliance with Domain 6. Significantly, since June 27, 2019, Plaintiffs have had full access to Defendants' documentation regarding Defendants' compliance. Plaintiffs have not identified any ongoing compliance problems. Moreover, Plaintiffs admit that Domain 6 is not complex. Notably, the self-monitoring period is less onerous than what precedes it. Finally, while Plaintiffs will not receive 6 quarterly reports, in effect, Defendants will undergo the 18-

month self-monitoring period the Plaintiffs request as the Court will retroactively find that the self-monitoring period began on June 27, 2019.

IT IS ORDERED THAT:

1. DEFENDANT BERNALILLO COUNTY BOARD OF COMMISSIONERS' MOTION FOR FINDING OF INITIAL COMPLIANCE AND TO SET SELF-MONITORING PERIOD REGARDING DOMAIN #6 (Doc. 1388) is GRANTED;
2. Defendants achieved initial substantial compliance with Domain 6 on June 27, 2019;
3. The self-monitoring period for Domain 6 began on June 27, 2019;
4. The self-monitoring period for Domain 6 concludes on December 31, 2020.

_____
SENIOR UNITED STATES DISTRICT JUDGE