IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JIMMY (BILLY) McCLENDON, et al.

    Plaintiffs,

v.                                                                  CIV 95-0024 JB/KBM

CITY OF ALBUQUERQUE, et al.,

    Defendants,

E.M., R.L. W.A. D.J., P.S. and
N.W. on behalf of themselves and
all other similarly situated,

    Plaintiff-Intervenors.

## ORDER ON JOINT MOTION FOR ENFORCEMENT
## OF THE INTERIM ORDER REGARDING ACCESS TO THE MDC

THIS MATTER is before the Court on the opposed Joint Motion for Enforcement of the Interim Order Regarding Access to the MDC filed by Plaintiffs and Plaintiff-Intervenors (jointly "Plaintiffs") on July 23, 2021 *(Doc. 1435).* The Court has reviewed the Motion, Defendant's Brief in Opposition *(Doc. 1451)*, Movants' Reply Brief *(Doc. 1463),* and all exhibits attached to those documents. For the reasons set forth below, the Motion will be granted.

### Background

Plaintiffs brought this class action lawsuit in 1995 to address conditions of confinement in the Bernalillo County jail system, initially the Bernalillo County Detention Center ("BCDC") in downtown Albuquerque, New Mexico and later on, the Metropolitan

Detention Center ("MDC"). The case is now governed by the Settlement Agreement and its three Check-Out Audit Agreements approved by Senior Judge James A. Parker on June 27, 2016. *Doc. 1225.* Those agreements are found on the Court's docket as Doc. 1222-1 through Doc. 1222-4.

In the Settlement Agreement, the parties set out eight subjects ("Domains") for monitoring and settled on a method to demonstrate initial compliance for each of the eight domains that are set out in the Check-Out Audit Agreements. Specifically, "[a]t the completion of the self-monitoring period, the [Court-appointed] experts must conduct 'Check-Out Audits' as to each domain and make a finding of compliance, partial compliance, or non-compliance using the standards set out in each Check-Out Audit Agreement." *Doc. 1225* at 15.

The requirements for compliance with the general conditions of confinement are set forth in Check-Out Audit Agreement 3. *Doc. 1222-4* at 24-25 (covering all conditions of confinement except those relating to the provision of medical and mental health services). The instant Motion implicates Check-Out Audit Agreement 3's Domain 7 requirements that address "Sexual Misconduct." *Doc. 1222-4* at 24-25.

Also implicated is the so-called "Interim Access Order" located at Doc. No. 754. In 2009, a dispute arose as to the level of access Plaintiffs' counsel should have to the MDC facility and its records in monitoring Defendants' efforts to comply with the Settlement Agreement. *See Doc. 731.*Then-assigned referred Magistrate Judge Alan C. Torgerson (who now serves as the special master in this case) resolved the issues with his entry of the Interim Access Order on September 27, 2009. *Doc. 754.* In response to Plaintiffs' objections to the Judge Torgerson's Order, Judge James A. Parker upheld its

terms as enforceable. He expressly found that the Interim Access Order clarified the language "reasonable and unimpeded" used by previously-presiding District Judge Martha Vazquez in her July 2003 Order as allowing reasonable restrictions on access to the MDC facility and its records. *Doc. 768* at 15-16.

## Analysis

The parties agree that Check-Out Audit Agreement 3 sets forth the agreed-upon requirements to demonstrate compliance for addressing "Sexual Misconduct." That portion of the Check-Out Audit Agreement 3 provides in pertinent part:

> I. Sexual Misconduct
> 1) Whether MDC has developed and adequately implements policies, protocols, trainings, and audits consistent with the requirements of the Prison Rape Elimination Act of 2003, 42 U.S.C. § 15601, et seq.
> 2) Whether MDC's policies and protocols adequately address the prevention, detection, reporting, and investigation of sexual abuse, sexual harassment, and sexual touching.
> 3) Whether MDC's policies and protocols adequately address the collection of data regarding sexual abuse (including inmate-on inmate and staff-on-inmate sexual abuse), sexual harassment, and sexual touching.
> 4) Whether MDC adequately protects inmates from sexual abuse, sexual harassment, and sexual touching.

*Doc.1222-4* at 24-25. Plaintiffs contend that they need access to *all* MDC reports alleging violations of the Prison Rape Elimination Act ("PREA") to properly assess whether Defendants are complying with these obligations as to Domain 7 in the Settlement Agreement.

Apparently, Plaintiffs are permitted periodic review of only those PREA reports that have been given to Margo Frasier, the Court's general conditions expert. Thus, Plaintiffs have no access to reports which contain allegations that Defendants determine are "non-PREA" incidents *See e.g., Doc. 1463* at Exs.1 & 2. Plaintiffs insist that

3

production of these reports is essential to confirm that "Defendants are not misidentifying as non-PREA patterns of sexual harassment that do implicate PREA and require compliance with PREA's regulations for inmate safety." *Doc. 1463* at 4.

In support of access to such documents, Plaintiffs rely on Paragraph 13 of the Interim Access Order which provides:

> Every quarter, on a date to be agreed on by the parties, … defendants … will produce documentation regarding mutually agreed subjects, including defendants' logs regarding use of force, use of mace, *and other incidents*. Defendants will produce that data from the computer system defendants use to keep track of such information. If there is a disagreement about what is to be produced, the matter will be submitted to the U.S. Magistrate Judge for decision.[1]

Doc. 754 ¶ 13 (emphasis added)]. Plaintiffs assert that the emphasized phrase "*and other incidents*" includes *all* allegations in a report asserted as violative of the PREA despite an ultimate finding by MDC that the allegations fall outside the mandates of the PREA.

Defendants maintain that "[t]his Court has never held Plaintiffs must be given *all* documents that are relevant to compliance with a Court provision, but instead only those are *necessary* for Plaintiffs' monitoring." *Doc. 1451* at 4 (emphasis in original). With this proposition, the Court agrees. Thus, the question presented: are the requested PREA documents merely relevant to compliance or are they necessary for Plaintiffs' counsel to monitor and assess compliance with the check-out audit requirements for Domain 7?

---

[1] The Court agrees with Plaintiffs that "Domain 7 – like all other domains described in the Settlement Agreement and in [Check-Out Agreement 3] – is a 'mutually agreed subject,' and PREA reports are 'documentation regarding' that subject." *Doc. 1463* at 2. Thus, as the currently-referred magistrate judge, I am authorized to decide the issue at hand, and I do not believe Defendants take a contrary position.

The Court finds that if reports containing allegations involving sexual harassment or other prohibited conduct under the PREA are sometimes improperly closed as "non-PREA" incidents, this constitutes information clearly needed by counsel to fulfill their monitoring obligations to the Class. Plaintiffs persuasively argue that they require access to all PREA reports in assessing "whether the facility's investigations themselves are deficient, or whether investigators are misapplying PREA's standard of proof. In that sense, it is the unsubstantiated reports (and the non-PREA determinations) that are most informative." *Doc. 1463* at 5.

Moreover, Defendants fail to show undue burden in producing all PREA reports alleging violations occurring within the MDC facility. Based on Defendants' representations to the Court, this would require production of approximately 50 PREA reports and non-PREA determinations per quarter, all of which exist in an electronic database. Finally, the Court finds unavailing Defendants' "size of the fishbowl" arguments relating to increased compensation to Plaintiffs' counsel for document review.

Wherefore,

**IT IS HEREBY ORDERED** that Defendants provide access to Plaintiffs' counsel of all reports containing allegations of violations of the PREA within the MDC facility.

_____
UNITED STATES MAGISTRATE JUDGE