## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JIMMY MCCLENDON; HAROLD LUND;
PETER SUMATKAKU; DAVID MICHAEL
BAUER; CARL RAY LOPEZ; BRUCE
DAVID MORAWE; THOMAS YOUNG;
RUTHIE DURAN; DEBORAH LAVERA;
JANELLE ROYBAL; DANETTE DIFIORI;
MARIA SISNEROS; LARRY GREEN;
BARTEL HALEY; MICHAEL COTE; JOE
RAY HERRERA; JOSIE KRIENA; DEBBIE
LUCERO; DAVID SHAWKIN; MARC A.
GILLETTE; GEORGE CHAVEZ; ELISEO
BACA; CLINT BARRAS; FRANCISCO
MELENDEZ; SAMUAL HERROD; VINCENT
PADILLA; CARL DUCKWORTH; JOSEPH
W. ANDERSON; PAUL JOHNSON; FRED
MALL; HECTOR LOPEZ; RICKY ROSE;
HERBERT KING, SR.; JAMES PARKS;
MICHAEL A. JOHNSON; JOHNNY
VALLEJOS; JOE NEWBERRY; DARRYL
CRAFT; ALBERT WILLY; WILLIAM P.
JIMMY; AUGUSTINE TAPIA; RICHARD A.
SMITH; ROBERT LOVATO; ROY
WHATLEY; MARTY BEGAY; MARTIN
VALDIVIA; TALLIE THOMAS;
AUGUSTINE JACKSON; DONALD HALL;
CARL SUR; STEVE ESQUIBEL; LONNIE
WHATLEY; JAMES SAIZ; BRYON
ZAMORA; ALLEN M. SAWYER; PATRICK
BENNY ROMERO; RICHARD C. KOPECKY;
PHILLIP SHUMATE; NELSON ROMERO;
STEVE JOHNSON; BENNIE F. GARCIA;
LOUIE CHAVEZ; BRIAN SALAZAR;
RICHARD GALLEGOS; LARRY STROUD;
JAMES BURKS; BRAD FISCHER; AMIHON
BACA; JEFF DILLOW; PETE MCQUEEN;
MANUEL MARTINEZ; ARNOLD
ANTHONY MAESTAS and JOHN HEWATT,

      Plaintiffs,

vs.                                        No. CIV 95-0024 JB/KBM

E.M.; R.L.; W.A.; D.J.; P.S.; N.W. and
SHAWNA TANNER,

       Plaintiff-Intervenors,

vs.

CITY OF ALBUQUERQUE; MARTIN
CHAVEZ, Mayor of Albuquerque; COUNTY
OF BERNALILLO; PATRICK BACA,
Bernalillo County Commissioner; ALBERT
VALDEZ, Bernalillo County Commissioner;
EUGENE GILBERT, Bernalillo County
Commissioner; BARBARA SEWARD,
Bernalillo County Commissioner;
JACQUELINE SCHAEFER, Bernalillo
County Commissioner; BILL DANTIS,
Director, Bernalillo County Detention Center;
BERNALILLO COUNTY DETENTION
CENTER; PAUL SANCHEZ; FRANK
LOVATO; ERCELL GRIFFIN, Deputy
Director, Bernalillo County Detention Center;
MICHAEL SMITH, Lieutenant; JOHN VAN
SICKLER, Lieutenant; WILL BELL, Officer;
ALFRED CHAVEZ, Lieutenant; RICHARD
FUSCO, Lieutenant; GEORGE FUENTES;
DAVID BACA, Lieutenant; VICTOR
HERNANDEZ; KEVIN D. SEVIR; DR. JIM
MASON; BARBARA COLE; MARIA
LUCERO; DAVID ROYSTON; FELIMON
MARTINEZ, Captain; STANLEY LENTS;
DOUGLAS ROBINSON; SEAL BARLEY;
LYNN KING; DAVID SHERMAN; BRIAN
MASER; JOHN DOES, Employees of
Bernalillo County Detention Center; NANCY
L. SIMMONS; MICHAEL SISNEROS,
Director of Bernalillo County Detention
Center, in his official capacity, and
BERNALILLO COUNTY BOARD OF
COMMISSIONERS,

       Defendants,

vs.

LAWRENCE A. JOHNSON; WILLIE

JAMES WASHINGTON; MANUEL R.
BOSWELL and AFSCME LOCAL 2499,

       Intervenors.

### MEMORANDUM OPINION[1]

    **THIS MATTER** comes before the Court on the Plaintiffs and the Plaintiff-Intervenors'

Motion for Order to Show Cause Why County Defendant Should Not Pay Monetary Penalites [sic]

for Refusing to Provide Medical Records, filed August 21, 2023 (Doc. 1635)("Motion").  The

Court held a hearing on October 3, 2023.  The primary issue is whether the Court should order

Defendant Bernalillo Board of County Commissioners ("Bernalillo County") to show cause why

the Court should not adjudge Bernalillo County in contempt and sanction Bernalillo County for

violations of: (i) the Protective Order Regarding Confidentiality, filed October 29, 1996

(Doc. 254)("1996 Protective Order"), which the Honorable Martha Vázquez, United States

District Judge for the United States District Court for the District of New Mexico, entered; (ii) the

Protective Order Regarding Confidentiality of Medical and Mental Health Records Obtained by

Plaintiff-Intervenors, filed April 23, 1998 (Doc. 292)("1998 Protective Order"), which Judge

Vázquez entered; (iii) the orders in the Memorandum Opinion and Order, filed July 11, 2003

(Doc. 416)("2003 MOO"), which Judge Vázquez filed; and (iv) the orders in the Memorandum

Opinion and Order Adopting Magistrate Judge's Interim Order, filed February 1, 2010

(Doc. 768)("2010 MOO"), which the Honorable James Parker, Senior United States District Judge

for the United States District for the District of New Mexico, entered.  The Court concludes that:

---

[1]On October 3, 2023, the Court entered an Order to Show Cause, filed October 3, 2023
(Doc. 1654)("OSC") pursuant to the Plaintiffs and the Plaintiff-Intervenors' Motion for Order to
Show Cause Why County Defendant Should Not Pay Monetary Penalites [sic] for Refusing to
Provide Medical Records, filed August 21, 2023 (Doc. 1635).  OSC at 3.  In the OSC, the Court
states that it will "issue . . . a Memorandum Opinion at a later date more fully detailing its rationale
for this decision."  OSC at 3 n.1.  This Memorandum Opinion is the promised opinion.

(i) the Plaintiffs and the Plaintiff-Intervenors' Motion for Order to Show Cause Why County Defendant Should Not Pay Monetary Penalites [sic] for Refusing to Provide Medical Records, filed August 21, 2023 (Doc. 1635), is granted; (ii) Bernalillo County must show cause why the Court should not adjudge Bernalillo County in contempt and prospectively sanction Bernalillo County for ongoing violations of the four judicial Orders requiring access to medical records.

## FACTUAL BACKGROUND

On January 10, 1995, Plaintiff Jimmy (Billy) McClendon, along with "all prisoners who are presently, or will be confined in the Bernalillo County Detention Center"[2] ("the Plaintiffs") filed a class action against Defendants City of Albuquerque, the Mayor of Albuquerque, Bernalillo County, the Bernalillo County Metropolitan Detention Center ("MDC"), the MDC Director, the MDC Deputy Director, and various MDC employees, alleging that MDC operates under inhumane and unconstitutional conditions.  See Complaint Class Action ¶¶ 1-2, at 2-3, filed January 10, 1995 (Doc. 1)("Initial Complaint"); Complaint Class Action Part 2 ¶¶ 8.36-23.3 at 1-34, filed January 10, 1995 (Doc. 1-1)("Initial Complaint Part 2"); Complaint Class Action Part 3 ¶¶ 23.4-36.6, at 1-40, filed January 10, 1995 (Doc.1-2)("Initial Complaint Part 3").

 In the Initial Complaint, the Plaintiffs seek to enjoin the Defendants from operating MDC until MDC meets State and federal constitutional standards, see Initial Complaint ¶ 1, at 1-5, and the Plaintiffs allege that Bernalillo County is violating Articles I, II, and VI of the Constitution of the United States; specifically, the Plaintiffs seek

> to see that federal law is faithfully executed as provided by Article II, Section 3 of the Constitution of the United States; to protect the freedom of persons within the United States to travel and transact business in channels of interstate commerce as established by Article I, Section 8 of the Constitution of the United States; and to

---

[2]The Bernalillo County Detention Center is now known as the Bernalillo County Metropolitan Detention Center.

protect the rights of persons with the United States to receive the benefits of the supreme law of the land as provided by Article VI of the Constitution of the United States.

Initial Complaint ¶ 3, at 4.  The Plaintiffs bring their claims under 42 U.S.C. § 1983, 18 U.S.C. § 242, and 18 U.S.C. § 245.  See Initial Complaint ¶ 3, at 4.

> The Initial Complaint alleges:
>
> [T]he totality of the overcrowding and other conditions at BCDC fall beneath standards of human decency, inflict needless suffering on prisoners and create an environment which threatens prisoners' mental and physical well being, and results in the physical and mental deterioration and debilitation of the persons confined therein which is both unnecessary and penologically unjustifiable.

Initial Complaint ¶ 1, at 2-3.  The Plaintiffs allege that this overcrowding makes it nearly impossible to clean the cells, maintain personal hygiene, and provide safety for the inmates.  See Initial Complaint ¶ 4, at 10.  The Plaintiffs also contend that Bernalillo County does not provide sufficient medical care, dental care, or psychological and rehabilitative services to their inmates. See Initial Complaint ¶ 4, at 13.

On September 6, 1995, a group of persons with mental and/or developmental disabilities who were or were going to be detained at MDC, and all others similarly situated, moved to intervene in the lawsuit.  See Motion to Intervene, filed September 06, 1995 (Doc. 113)("MTI #1"); Plaintiff Intervenors' Memorandum of Law in Support of Motion to Intervene, filed September 6, 1995 (Doc. 114)("Memo. for Motion to Intervene").  The Plaintiff-intervenors moved to intervene, because "each named Plaintiff has one or more mental or developmental disabilities which require medical, mental health, habitation and/or educational service.  As a result of their detention, proposed plaintiffs in intervention have interests directly affected by this litigation."  Memo. for Motion to Intervene at 1.

The initial Settlement Agreement in this case was reached and filed on September 7, 1995 (Doc. 115)("Initial Settlement Agreement").  The parties entered into the most recent Settlement

Agreement, which sets forth requirements that aim to improve conditions at MDC and carve a pathway to the end of litigation, in 2016.  See Settlement Agreement at 1-14, filed May 26, 2016 (Doc. 1222-1).[3]

> 1.     **The Relevant Orders and Other Facts That Bear on The Motion.**

As it pertains to the present dispute at issue in the Motion, the Plaintiffs and Plaintiff-Intervenors contend that there are four orders that are relevant to the County Defendant's obligation to produce certain types of medical records.  See Motion at 2-5.

> a.     **1996 Protective Order.**

On October 29, 1996, Judge Vázquez entered a Protective Order Regarding Confidentiality.  See 1996 Protective Order.  The Plaintiffs, Plaintiff-Intervenors, and Defendants stipulated to the 1996 Protective Order.  See 1996 Protective Order at 1.  The 1996 Protective Order ensures that certain information relevant to the litigation will be treated as confidential and can be disclosed only to certain individuals for certain purposes.  See 1996 Protective Order ¶ 1, at 1; id. ¶ 2, at 2.

More specifically, 1996 Protective Order states that "[t]he parties, their counsel, and the agents and employees of the parties and their counsel, shall treat as confidential" two categories of information:

> [(i)] Information, obtained in discovery or otherwise, from which the identity of any subclass member can be ascertained. This provision shall apply throughout the duration of this case unless knowingly and voluntarily waived by a competent adult with legal authority over the classmember in question who is acting after consultation with counsel [and (ii)] All records required to be treated as confidential information under the terms of the New Mexico Mental Health and Developmental

---

[3]Judge Parker summarizes extensively the factual background to this case in his Memorandum Opinion and Order Granting Approval of Settlement Agreement at 2-16, filed June 27, 2016 (Doc. 1225)("MOO Approving Settlement").

Disabilities Code, the New Mexico Children's Code, or any other applicable state
or federal statute.

1996 Protective Order ¶ 1(a), (b), at 1-2.  The 1996 Protective Order also outlines the manner in

which litigation documents containing confidential information will be filed with the Court.  See

1996 Protective Order ¶ 4, at 2.

The 1996 Protective Order mandates that certain records -- held by "any agent of the

Bernalillo County Detention Center" -- be subject to disclosure to counsel for the Plaintiffs and

the Plaintiff-Intervenors':

> Defendants shall allow counsel for plaintiffs and for plaintiff intervenors to
> review and obtain photocopies of any and all records that are maintained by any
> agent of the Bernalillo County Detention Center, including the Medical Services
> Unit, the Psychiatric Services Unit and the University of New Mexico, concerning
> any person who is or was a member of the class or subclass in this action. No action
> by a classmember or subclass member shall be required before releasing the
> information to plaintiffs' or plaintiff intervenors' counsel. Notwithstanding other
> provisions of state or federal law, information to be released may include
> information regarding drug abuse, alcohol abuse, infection with the Human
> Immunodeficiency Virus, or Sickle Cell Anemia. Persons with knowledge about
> the records and the issues they describe are also authorized to discuss the
> classmember and the information in her or his records with counsel for plaintiffs or
> plaintiff intervenors.

1996 Protective Order ¶ 8, at 3.

**b.   1998 Protective Order.**

On April 21, 1998, the Plaintiff-Intervenors moved the Court for a protective order that

would "supplement[]" the 1996 Protective Order "to provide additional provisions regarding the

confidentiality of the medical and mental health records as requested by counsel for the University

of New Mexico."  Plaintiff Intervenor's Motion for a Protective Order Regarding Confidentiality

of Medical and Mental Health Records Obtained by Plaintiff-Intervenors at 2, filed April 21, 1998

(Doc. 291).  On April 23, 1998, Judge Vázquez filed a Protective Order Regarding Confidentiality

of Medical and Mental Health Records Obtained by Plaintiff-Intervenors.  See 1998 Protective Order.

As the title of the 1998 Protective Order implies -- and by its own terms -- this Order applies only to records obtained by Plaintiff-Intervenors.  See 1998 Protective Order ¶ 1, at 1 ("Plaintiff-Intervenors, their counsel, and the agents and employees of plaintiff-intervenors and their counsel, shall treat as confidential, and not reveal to the public, the following [. . . ].").  The Plaintiff-Intervenors, the Defendants, and "the University of New Mexico (custodian of certain class member records)" stipulated to the 1998 Protective Order.  See 1998 Protective Order at 1.  The 1998 Protective Order states that the 1998 Protective Order "supplement[s]" the 1996 Protective Order, 1998 Protective Order at 1, and also states that -- aside from the supplemented material -- "[t]he order filed in this action October 29, 1996 entitled Protective Order Regarding Confidentiality shall otherwise remain in effect," 1998 Protective Order ¶ 11, at 4.

While the 1998 Protective Order uses much of the same language as the 1996 Protective Order, the categories of information that the Plaintiff-Intervenors shall keep confidential are more specific; the 1998 Protective Order states that the "Plaintiff-Intervenors, their counsel, and the agents and employees of plaintiff-intervenors and their counsel, shall treat as confidential, and not reveal to the public" the following two categories of information:

> [(i)] All records maintained by the University of New Mexico and its agents required to be treated as confidential information under the terms of the New Mexico Mental Health and Developmental Disabilities Code, the New Mexico Children's Code, or any other applicable state or federal statute [and (ii)] All medical and mental health records maintained by the University of New Mexico obtained through discovery.

1998 Protective Order ¶ 1(a), (b), at 1-2.  The 1998 Protective Order also contains a very similar disclosure provision to the 1996 Protective Order:

> Defendants and/or the University of New Mexico shall allow counsel for plaintiff intervenors to review and obtain photocopies of any and all records that

are maintained by any agent of the Bernalillo County Detention Center, including the Medical Services Unit, the Psychiatric Services Unit and the University of New Mexico, concerning any person who is or was a member of the class or subclass in this action. No action by a class member or subclass member shall be required before releasing the information to plaintiff intervenors' counsel. Notwithstanding other provisions of state or federal law, information to be released may include information regarding drug abuse, alcohol abuse, infection with the Human Immunodeficiency Virus, or Sickle Cell Anemia. Persons with knowledge about the records and the issues they describe are also authorized to discuss with counsel for plaintiff intervenors the class member and the information in their or his records to the extent permitted by RPC 16-402.[4]

1998 Protective Order ¶ 7, at 3-4.

The 1998 Protective Order also contains two provisions that are not in the 1996 Protective

Order:

8. All copies of medical and mental health records obtained by counsel for plaintiff intervenors through discovery shall be returned to defendants and/or the University of New Mexico at the conclusion of this litigation.

9. Counsel for plaintiff-intervenors shall not utilize the medical or mental health records obtained pursuant to this order or information contained therein to pursue any action for damages on behalf of any class member or sub-class member arising from actions or inactions reflected in those records.

1998 Protective Order ¶¶ 8-9, at 4.

---

[4]"RPC 16-402" refers to rule 16-402 NMRA (1998), the New Mexico Rules of Professional Conduct provision that -- at that time -- read:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so. Except for persons having a managerial responsibility on behalf of the organization, an attorney is not prohibited from communicating directly with employees of a corporation, partnership or other entity about the subject matter of the representation even though the corporation, partnership or entity itself is represented by counsel.

   c.      **2003 Memorandum Opinion and Order**.

On July 11, 2003, Judge Vázquez filed a Memorandum Opinion and Order to address the

Plaintiffs' and Plaintiff Intervenors' Joint Motion for a Temporary Restraining Order and

Preliminary Injunction Enjoining the Defendants from Restriction Class and Sub Class Counsel

from Having Access to the Metropolitan Detention Center, filed June 27, 2003 (Doc. 409).  See

2003 MOO.

At issue was the Plaintiff and Plaintiff-Intervenor's allegation that the Defendants had:

(1) prohibited their counsel from monitoring MDC, interviewing members of the
class and the sub-class at MDC, and interviewing staff at MDC; (2) changed their
practices regarding residents' telephone access to their counsel; and (3) prohibited
Protection & Advocacy System, Inc ("P&A"), co-counsel for Plaintiff Intervenors,
from having access to MDC.

2003 MOO at 2.  Judge Vázquez granted the Plaintiffs' and Plaintiff Intervenors' Joint Motion for

a Temporary Restraining Order and Preliminary Injunction Enjoining the Defendants from

Restriction Class and Sub Class Counsel from Having Access to the Metropolitan Detention

Center, and ordered -- among other things -- that the Defendants shall:

1. Immediately allow counsel for Plaintiffs and Plaintiff Intervenors and P&A
personnel, as co-counsel to Plaintiff Intervenors, to have reasonable and unimpeded
access to MDC and to the records of residents of MDC;

2. Immediately refrain from imposing any limits upon access to MDC and to the
residents and staff therein which are more restrictive than those which were used
when the class and the sub-class were housed at the BCDC,[5] westside and satellite
facilities.

2003 MOO at 16.

---

[5]The 2003 MOO also concluded that these previous orders regarding access to information
apply to the then-newly constructed MDC and not only to the former Bernalillo County Detention
Center, which was the facility that housed the class members at the outset of the litigation.  See
2003 MOO at 4-11.

Judge Vázquez based her conclusion in part on a consideration of the preliminary injunction factors; in assessing the Plaintiffs and the Plaintiff-Intervenors' likelihood of success on the merits, Judge Vázquez concludes -- citing both the 1996 and 1998 Protective Orders -- that "[t]he Court has entered at least two orders requiring that counsel for Plaintiffs and Plaintiff Intervenors be allowed access to records concerning any person who is or was a member of the class or the sub-class in this action."  2003 MOO at 12 (citing 1996 Protective Order ¶ 8, at 3, and 1998 Protective Order ¶ 7, at 3-4).  Nothing in the 2003 MOO indicates that either the 1996 Protective Order or the 1998 Protective Order are superseded or no longer valid.

### d.    2009 Interim Order and 2010 Memorandum Opinion and Order.

On September 17, 2009, the Honorable Alan Torgerson, United States Magistrate Judge for the United States District Court for the District of New Mexico, entered an Interim Order Regarding Access to MDC, in which Magistrate Judge Torgerson imposed certain "protocols regarding monitoring by counsel for plaintiffs and counsel for plaintiff-intervenors and non-lawyers who work with counsel for both plaintiffs and plaintiff-intervenors."  Interim Order Regarding Access to MDC, filed September 17, 2009 (Doc. 754)("2009 Interim Order" or "Interim Access Order").  These protocols involve how many medical files the counsel for the Plaintiff and the Plaintiff-Intervenors may review per visit to MDC, notice that counsel for the Plaintiff and the Plaintiff-Intervenors must give in anticipation of visits to review medical records, procedures for scheduling visits, and regular disclosures that must be made by Defendants.  See 2009 Interim Order at 1-6.

After consideration of the Plaintiffs' and Plaintiff-Intervenors' Joint Objections to the Interim Order Regarding Access to MDC, filed October 8, 2009 (Doc. 754); Defendant Bernalillo County's Response to Plaintiffs' and Plaintiff-Intervenors' Joint Objections to the Interim Order

Regarding Access to MDC, filed October 26, 2009 (Doc. 759); and Plaintiffs' and Plaintiff-Intervenors' Reply In Support of Their Joint Objections to the Interim Order Regarding Access to MDC, filed November 12, 2009 (Doc. 762), Judge Parker filed a Memorandum Opinion and Order Adopting Magistrate Judge's Interim Order.  See 2010 MOO.  The 2010 MOO discusses the 2003 MOO and cites the language from the 2003 MOO that prevents the Defendants from "imposing any limits on access to MDC and to the residents and staff therein 'which are more restrictive' than those which were used when the class and the sub-class were housed at the BCDC."  2010 MOO at 4 (quoting and citing 2003 MOO ¶ 2, at 16 (alterations omitted)).

Additionally, the 2010 MOO states that "instead of substantively altering the July 2003 Order, the Interim Order simply clarifies the reasonable and unimpeded access required by the July 2003 Order."  2010 MOO at 16.  The 2010 MOO states that "the Interim Order (Doc. No. 754) is adopted in its entirety."  2010 MOO at 16.  Nowhere in the 2010 MOO does Judge Parker supersede or suspend the earlier orders -- the 1996 Protective Order or the 1998 Protective Order -- on which the 2003 MOO relied.

**e.      Relevant Facts Giving Rise to the Motion.**

On July 26, 2023, the University of New Mexico -- which previously had provided healthcare at the jail at the outset of this litigation -- began to provide medical treatment once again at MDC.  See Motion at 5; County Defendant's Response to Motion for Order to Show Cause Why County Defendant Should Not Pay Monetary Penalties for Refusing to Provide Medical Records at 2, filed September 6, 2023 (Doc. 1642)("Response").  On August 1, 2023, 48 hours preceding a proposed site visit to MDC, Plaintiff-Intervenors' counsel contacted the MDC Warden to schedule a visit to the jail and review the medical records of thirteen named incarcerated persons. See Motion at 5; Email Correspondence (dated August 1, 2023), filed August 21, 2023

(Doc. 1635-1).  Subsequent to this and other similar requests for medical records that the Plaintiffs and the Plaintiff-Intervenors have made since August 1, 2023, the County Defendant has adopted a position that it cannot produce these medical records without the individual patient consent of each MDC resident.  See Motion at 5; Email Correspondence (dated August 19, 2023), filed August 21, 2023 (Doc. 1635-2).[6]

## PROCEDURAL BACKGROUND

The dispute underlying the Motion came to the Court's attention at a status conference held on August 17, 2023.  See Clerk's Minutes at 1, filed August 17, 2023 (Doc. 1639).  In this procedural background section, the Court outlines the relevant discussion at that status conference, as well as the arguments made in the Motion, the Response, and the Reply in Support of Motion for Order to Show Cause Why County Defendant Should Not Pay Monetary Penalties for Refusing to Provide Medical Records, filed September 20, 2023 (Doc. 1644)("Reply").  The Court then summarizes the arguments made about the Motion at the hearing held on October 3, 2023.

1.    **The August 17, 2023, Status Conference**.

At a status conference held on August 17, 2023, see Clerk's Minutes at 1, filed August 17, 2023 (Doc. 1639), the parties discussed the issue that underlies the Motion, see Draft Transcript of Status Conference at 23:7-26:16 (held August 17, 2023)(Court, Smith, Waterfall)("Status

---

[6]Bernalillo County does not address directly whether it has refused to disclose medical records to the Plaintiff-Intervenors.  It states, however, in its Response at 1-2, that its "position is that the Interim Access Order does not comply with federal and state regulations that apply to production of medical records generally, as well as specific regulations regarding mental health records, substance abuse records, and sexually transmitted disease treatment."  On the basis of this statement -- and the email correspondence cited above -- the Court finds that the County Defendant has refused to disclose medical records.

Conference Tr.");[7] id. at 37:22-43:7 (Court, Rahn); id. at 47:16-54:25 (Court, Rahn, Smith).  At

that conference, the Plaintiffs and the Plaintiff-Intervenors argued that binding orders in this case

require production of medical records, and that Bernalillo County has "unilaterally cut off [their]

access to medical records" by taking a position that "individual consent" is required for each

medical record disclosure.  Status Conference Tr. at 48:18 (Smith).  Bernalillo County argued that

the orders referenced by the Plaintiffs and the Plaintiff-Intervenors do not "adequately address[]

the issue," and sought "an updated confidentiality order."  Status Conference Tr. at 37:22-40:3

(Rahn).

        In considering the issues raised at the status conference -- i.e., whether the past orders still

apply, or whether an updated confidentiality order is required to comply with relevant law -- the

Court stated: "Well, I'm going to set hearings because . . . one of you has got to move and the

other had got to respond."  Status Conference Tr. at 52:6-8 (Court).  After conferring with the

parties about availability and setting a hearing, the Court said: "[I]f you're going to argue that the

prior orders apply, we've got a hearing, and probably I need to put the burden on the plaintiffs [to

move] and [Bernalillo County] need[s] to respond and then [the Plaintiffs] get the reply and I'll

see you on the 29th."  Status Conference Tr. at 54:8-12 (Court).  The Court then added: "If the

County says [the orders] don't apply, then they run the risk of being wrong, and being in contempt

of court orders that apply."  Status Conference Tr. at 54:14-16 (Court).

        2.      **The Motion**.

        The Plaintiffs and Plaintiff-Intervenors filed the Motion on August 21, 2023.  See Motion

at 1.  The Motion requests that the Court: "(i) order the County Defendant to show cause why it

---

        [7]The Court's citations to the hearing transcript refer to the court reporter's original,
unedited version.  Accordingly, page and line numbers are subject to slight change in the final,
filed transcript.

should not be adjudged in contempt and prospectively sanctioned for ongoing violations of the Court's orders requiring access to medical records; (ii) after hearing from the County Defendant, issue an order finding the County Defendant in civil contempt for noncompliance with the Court's past order, and imposing monetary penalties for future noncompliance in an amount sufficient to coerce compliance with the Court's orders; and (iii) award any other relief the Court deems just and proper."  Motion at 12-13.

The Motion's basic premise is that, for "nearly three decades," the parties in this dispute have operated under record production protocols that adhere to "agreed-upon and court-ordered access" to medical records.  Motion at 1.  Beginning July 26, 2023, however, with UNM as the new medical service provider, the Plaintiff-Intervenors "have requested multiple medical records in accordance with this Court's prior orders and have not received a single one."  Motion at 2. Accordingly, the Plaintiff and the Plaintiff-Intervenors argue that they are capable of making a showing that civil contempt is appropriate, because they are able to show, by clear-and-convincing evidence, that: (i) valid court orders exist which mandate the production of medical records; (ii) Bernalillo County has knowledge of these orders; and (iii) Bernalillo County is disobeying these orders.  See Motion at 9-12; id. at 8 (articulating the legal standard for civil contempt, citing F.T.C. v. Kuykendall, 371 F.3d 745, 756 (10th Cir. 2004)).

To establish by clear-and-convincing evidence that court orders exist in this case, the Plaintiffs and Plaintiff-Intervenors discuss and describe the four orders, which the Court described above: the 1996 Protective Order, the 1998 Protective Order, the 2003 MOO, and the 2010 MOO. See Motion at 9.  The Plaintiffs and the Plaintiff-Intervenors note that "[a]ll of these orders remain in effect and the County has never appealed these orders or moved to modify, vacate, or amend

- 15 -

them, and has instead selected disobedience." Motion at 9. Relatedly, the Plaintiffs and the

Plaintiff-Intervenors also contend:

> The 2009 Interim Access Order neither terminated the 1996 or 1998 orders
> nor the 2003 injunction, but simply imposed limitations on the number of records
> Plaintiffs and Plaintiff-Intervenors could obtain each time they visited, required
> notice, and laid out guidelines for reviewing medical files, none of which required
> individualized consent from class members, which would have conflicted with the
> terms of the prior orders. [Doc. 754, ¶1-4] The 2009 Interim Access Order
> recognized that class counsel was entitled to obtain medical records. The 2009
> Interim Access Order did not disturb the foundational agreement in this case -- an
> agreement that the parties (and UNM) had stipulated to -- as ordered by the Court
> in 1996 and 1998 and enforced over the County's objection in 2003. As this Court
> stated in the order adopting the 2009 Interim Access Order, "instead of
> substantively altering the July 2003 order, the Interim Order simply clarifies the
> reasonable and unimpeded access required by the July 2003 Order; and therefore,
> does not impermissibly change the July 2003 order." [Doc. 768, p. 16]

Motion at 9-10 (brackets in original). Moreover, anticipating Bernalillo County's arguments, the

Plaintiffs and the Plaintiff-Intervenors also cite to cases that articulate the proposition that "a

contempt proceeding does not open to reconsideration the legal or factual basis for the order

alleged to have been disobeyed and thus become a retrial of the original controversy." Motion at

9 (citing Maggio v. Zeitz, 333 U.S. 56, 69 (1948)).

As to the second prong of the movant's required showing in the civil contempt context --

that Bernalillo County has knowledge of the order -- the Plaintiffs and the Plaintiff-Intervenors

argue that "[t]he County was aware of these valid court orders as they are matters public record in

this case and the County has been following them nearly continuously for the past 27 years."

Motion at 10. The Plaintiffs and the Plaintiff-Intervenors argue, moreover, that the only time --

before the dispute giving rise to the Motion -- in which "the County blatantly disobeyed these

orders, the Court entered an injunction commanding obedience." Motion at 10 (citing 2003 MOO).

As to the third and final prong of the movant's required showing in the civil contempt

context -- that Bernalillo County is disobeying the order -- the Plaintiffs and the Plaintiff-

Intervenors contend that, beginning with the requests made on August 1, 2023, Bernalillo County has refused to produce medical documents that are requested using the protocols outlined in the Interim Access Order and mandated in the 2010 MOO.  See Motion at 11.  Accordingly, the Plaintiffs and the Plaintiff-Intervenors argue, Bernalillo County has disobeyed the 2010 MOO as well as the more general mandates found in the 1996 Protective Order and 1998 Protective Order. See Motion at 11.

Because the Plaintiffs and the Plaintiff-Intervenors argue that they have proved -- by clear-and-convincing evidence -- all that is required for a finding of liability in the context of civil contempt, the Court should order reasonable monetary penalties to coerce compliance.  Motion at 12.  Citing to a case from the United States District Court for the Southern District of New York, the Plaintiffs and the Plaintiff-Intervenors assert that "[f]inancial sanctions, as a category, are relatively mild," Motion at 12 (citing Markus v. Rozhkov, 615 B.R. 679, 711 (S.D.N.Y. 2020)(Liman, J.)), and that financial penalties for civil contempt are appropriate here so as to "coerce" Bernalillo County to disclose the medical records in a manner that accords with the previous Orders in this case, Motion at 12.

### 3.    The Response.

Bernalillo County responds.  See Response at 1.  At the outset, Bernalillo County asserts that it "does not dispute that under the Interim Access Order **(Doc. No. 754)**, counsel for Plaintiffs and Plaintiff-Intervenors (jointly "Plaintiffs") are allowed to review medical records."  Response at 1 (emphasis in original).  Rather, the County Defendant clarifies that its position is that the Interim Access Order "does not comply with federal and state regulations that apply to production of medical records generally, and well as specific regulations regarding mental health records, substance abuse records, and sexually transmitted disease treatment."  Response at 2.  Accordingly,

Bernalillo County states that it is "simply seeking an updated protective order ensuring compliance with applicable state and federal law."  Response at 2.  The Response thus argues that "[t]he Court should enter a new protective order to protect class members' rights under state and federal law," and Bernalillo County attaches as an exhibit to the Response a "Qualified Protective Order" that would serve that purpose.    Response at 10.  See Qualified Protective Order Regarding Confidentiality of Medical, Mental Health, and Substance Use Disorder Records Maintained by the University of New Mexico Hospital in Respect of Health Care Services Provided to Detainees at the Metropolitan Detention Center (Draft), filed September 6, 2023 (Doc. 1642-2).  In essence, Bernalillo County's Response reads like a motion in its own right; in large part, it does not straightforwardly respond to the Plaintiffs and the Plaintiff-Intervenors' Motion, but rather it asks the Court to do something else: enter a new protective order.

That said, the Response attacks some of the bases on which the Plaintiffs and the Plaintiff-Intervenors rely in their request for a civil contempt sanction against Bernalillo County.  First and foremost, Bernalillo County contends that the Interim Access Order "superseded prior court orders," and thus the 1996 Protective Order and the 1998 Protective Order are "no longer operative."  Response at 3.  Bernalillo County argues that the 2003 MOO is "the operative order regarding access to MDC," but, because the 2003 MOO "does not contain any specific factual findings regarding the production and protection of confidential medical and mental health records," the Interim Access Order exists to "clarif[y] access to records."  Response at 3.  Accordingly, Bernalillo County disagrees with the Plaintiffs and the Plaintiff-Intervenors' interpretation of the application of the 1996 Protective Order and of the 1998 Protective Order.

As far as the Court can tell, Bernalillo County believes that the 2003 MOO and the Interim Access Order remain operative.  See Response at 3.  Bernalillo County alleges, however, that

"[n]either of these orders contain the necessary findings for production of records by UNMH under HIPPA[, the Health Insurance Portability and Accountability Act of 1996, Pub.L. 104-191, 110 Stat.1936 ("HIPPA"),] or any other applicable regulations."  Response at 3.  Bernalillo County states that, owing to this alleged non-compliance of the allegedly currently operative order, the Court should deploy its "inherent power to reconsider and modify its interlocutory orders" and "enter the attached Qualified Order which addresses the various legal requirements associated with federal and state statutes addressing the production of the subject records."  Response at 4.

The Response then dedicates several pages to developing this argument and discusses why the "current court orders do not comply with applicable state and federal law."  Response at 4.  The basic underlying conclusion of this discussion is stated at the outset, where the County Defendant states that "[a]n agreement that violates the law is unenforceable."  Response at 4.  Bernalillo County then goes through each of the various laws and regulations that it contends make the relevant orders in this case "unenforceable": two HIPPA-related regulations and a state statutory scheme.  See Response at 5-7.  Next, Bernalillo County makes a more general argument about how the procedures that have been followed until the present time -- which have not involved any individual notice to class members when their medical records are disclosed to their class counsel and court experts -- is insufficient because it means that the class member lack "notice or opportunity to object to the production of their medical records."  Response at 8.  Relatedly, Bernalillo County argues that the relative burden in getting individual consent -- under the limitations of Interim Access Order, which limits class counsel to fifteen medical records per site visit -- would be a "relatively minor imposition."  Response at 9.

Bernalillo County then argues that sanctions for civil contempt are not appropriate.  See Response at 9-10.  In relevant part, this argument is based on a citation to a case from the Supreme

- 19 -

Court of the United States, which states that civil contempt "should not be resorted to where there is [a] fair ground of doubt as to the wrongfulness of the defendant's conduct."  Response at 10 (Citing Taggart v. Lorenzen, 139 S. Ct. 1795, 1797 (2019)).  Bernalillo County also cites a non-precedential Order and Judgment from the United States Court of Appeals for the Tenth Circuit, which states that

> [a] defendant may be absolved from a finding of civil contempt if the defendant is able to show that it complied with a reasonable interpretation of the stipulation and order and if the defendant's action appears to be based on a good faith and reasonable interpretation of the order.

Response at 10 (citing Spectra Sonics Aviation, Inc. v. Ogden City, 931 F.2d 63 at *2 (10th Cir. 1991)(unpublished)[8]).  On the basis of these authorities, Bernalillo County asserts that it has "articulated a reasonable basis for believing the Interim Access Order superseded prior orders and that, even including the prior orders, the current orders do not contain the protections required by state and federal law."  Response at 10.  To conclude, Bernalillo County argues that the Court should enter a new protective order in this case, and should deny the Plaintiffs and the Plaintiff-Intervenors' Motion.  Response at 10-11.

---

[8]Spectra Sonics Aviation, Inc. v. Ogden City is an unpublished opinion, but the Court can rely on a Tenth Circuit unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. [. . .] However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citing In re Citation of Unpublished Opinions/Ords. & Judgments, 151 F.R.D. 470 (10th Cir. 1993)).

4.    **The Reply**.

On September 20, 2023, the Plaintiffs and the Plaintiff-Intervenors filed their Reply.  The Reply has four parts: (i) a section arguing that the 1996 Protective Order, the 1998 Protective Order, the 2003 MOO, and the 2010 MOO are all still in effect, see Reply at 2-3; (ii) a section arguing that those orders do not conflict with any law, see Reply at 3-13; (iii) a section arguing that Bernalillo County is in contempt, because it is out of compliance with the orders, see Reply at 13-14; and (iv) a section arguing that the Court should not exercise its inherent power to modify the prior orders, see Reply at 15-19.  The first section notes that "[t]he County [in the Response] makes a cursory argument that the 2009 Interim Access Order and the 2003 [MOO] supersede the 1996 and 1998 protective orders, but never explains why."  Reply at 2.  The Plaintiffs and the Plaintiff-Intervenors assert that "[t]he 2003 [MOO] *enforced* the prior orders."  Motion Reply at 2 (citing 2003 MOO at 12)(emphasis in original).  The Plaintiffs and Plaintiff-Intervenors also note that, in the litigation that led to the 2003 MOO, the Plaintiffs had asked the Court to enjoin Bernalillo County from "imposing limits on access [at the MDC] that are more restrictive than the limits previously imposed at BCDC and the westside and satellite facilities,"  Motion Reply at 3 (citing 2003 MOO at 3), and that Judge Vázquez granted this request, ordering "that Defendants shall . . . [i]mmediately refrain from imposing any limits upon access to MDC and to the residents and staff therein which are more restrictive than those which were used when the class and the sub-class were housed at the BCDC."  2003 MOO at 16.  If the 2003 MOO had superseded the 1996 and 1998 Protective Orders -- the Plaintiffs and Plaintiff-Intervenors contend -- Judge Vázquez' reference to previous restrictions on access "which were used when the class and the sub-class were housed at the BCDC" would be nonsensical.  Reply at 2-3.

Next, the Plaintiffs and the Plaintiff-Intervenors confront Bernalillo's specific arguments related to the Orders' alleged conflict with state and federal law. The Plaintiffs and the Plaintiff-Intervenors first contend that HIPPA's "privacy rule" -- codified at 45 C.F.R. § 164.508 -- does not conflict the operative Orders, because the 1998 Protective Order specifically contains language that renders it HIPPA-complaint. Reply at 5-6 (citing 1998 Protective Order ¶ 8, at 4). Second, the Plaintiffs and the Plaintiff-Intervenors assert that the regulatory restrictions found in 42 C.F.R. Part 2 -- which concern the production of certain substance abuse records -- do not apply to Bernalillo County, because "the County has made no effort to produce the sort of evidence that the Tenth Circuit requires to establish that these confidentiality provisions apply to the County's jail, the MDC." Reply at 8. The relevant Tenth Circuit precedent that the Plaintiffs and the Plaintiff-Intervenors use to support this argument is Center for Legal Advocacy v. Earnest, 320 F.3d 1107 (10th Cir. 2003), which discusses the relevant regulatory restrictions and when those confidentially provisions apply to a given health care facility. Relying on Center for Legal Advocacy v. Earnest, the Plaintiffs and Plaintiff-Intervenors argue that 42 C.F.R. Part 2's restrictions do not apply to UNMH's operation at MDC, because:

> There is no suggestion that UNMH's personnel at the MDC are "identified specifically as licensed alcohol or drug abuse treatment providers or counselors," *see* [Ctr. for Legal Advoc. v. Earnest, 320 F.3d] at 1111, that their primary function at the MDC is providing drug and alcohol use disorder treatment, as opposed to general medical treatment, *see id.* at 1112, or that UNMH holds itself out to the community as a provider of drug and alcohol treatment, as opposed to a fully staffed medical services department at the jail, *see id.* Additionally, the County has not established that UNMH's medical unit at the MDC is a federally-assisted program, *see* 42 C.F.R. § 212(e)(2), or that every record it has withheld -- which, as of the date of filing of this Reply, is every single page of all records requested by Plaintiffs and Plaintiff Intervenors related to more than 53 different inmates -- contains only qualifying substance use information, *see* 42 C.F.R. § 212(e)(3), and relates only to qualifying patients within the meaning of 42 C.F.R. § 211.6.

Reply at 8-9 (footnotes omitted).  Third, the Plaintiffs and the Plaintiff-Intervenors argue that the operative Orders in this case comply with New Mexico state law, because class counsel is the "legally authorized representative" of the class members for the purposes of N.M.S.A. § 24-2B-6's confidentiality requirements, see N.M.S.A. § 24-2B-6(A)(1).  Section 24-2B-6(A)(1) provides:

> No person or the person's agents or employees who require or administer [an HIV] test shall disclose the identity of any person upon whom a test is performed or the result of such a test in a manner that permits identification of the subject of the test, except to . . . the subject of the test or the subject's legally authorized representative, guardian or legal custodian.

N.M.S.A. § 24-2B-6(A)(1).  Moreover, the Plaintiffs and the Plaintiff-Intervenors submit, the non-disclosure requirements of the New Mexico Mental Health and Developmental Disabilities Code only prohibits disclosure of a patient's confidential information to third parties, and thus those requirements are inapplicable where the recipient of the disclosure is "the patient's own agent -- class counsel."  Reply at 11 (citing N.M.S.A. § 43-1-19(A)).  For these reasons, the Plaintiffs and Plaintiff-Intervenors allege that the operative Orders that govern the disclosure of medical information in this case -- the 1996 Protective Order, the 1998 Protective Order, the 2003 MOO, and the 2010 MOO -- are compliant with the law that Bernalillo County contends render these Orders invalid.

The next section of the Reply builds on the previous two sections to return to the Plaintiffs and Plaintiff-Intervenors' allegations of contempt:

> Because the County does not and cannot deny that it is out of compliance with at least some of the Court's prior orders, see e.g., Interim Access Order (Doc. 764), by virtue of having not produced a single medical record in response to over 50 requests for such records by counsel for the class and subclass since UNMH began providing medical services at the MDC, it is undisputed that the County is in contempt.

Reply at 13.  The Plaintiffs and the Plaintiff-Intervenors then again go through the prima facie showings required to prove civil contempt, deploying much the same augments as they outlined in their Motion.  See Reply at 13-14.

Finally, the last section of the Reply addresses Bernalillo County's argument that the Court should use its "inherent power" to modify the existing orders in this case.  See Reply at 15 (citing Response at 4, 10).  The Plaintiffs and the Plaintiff-Intervenors usefully summarize this argument as follows: the Court should decline to modify the existing Orders, "because there is nothing wrong with the Court's prior orders, and the order the County proposes would make compliance with Plaintiffs and Plaintiff Intervenors' monitoring obligations impossible, result in harm to members of the class and subclass, and frustrate the requirements of the Interim Access Order, the entire check-out audit process and the goals of the consent decrees in this case."  Reply at 15.  The Reply then fleshes out the Plaintiffs and the Plaintiff-Intervenors' more specific objections to Bernalillo County's proposed Confidentially Order.  See Reply at 15-19.  The Reply concludes with a request that the Court grant the Motion, and "order the County to produce all outstanding medical and mental health records within 48 hours and impose prospective monetary penalties for each day the records are not produced."  Reply at 19.

5.     **The Motion Hearing**.

The Court heard argument on the Motion on October 3, 2023.  Counsel for the Plaintiffs began by outlining the four orders that the Plaintiffs and the Plaintiff-Intervenors believe are operative in this case -- the 1996 Protective Order, the 1998 Protective Order, the 2003 MOO, and the 2010 MOO -- and describing the relationship between these Orders.  See Draft Transcript of

Motion Hearing at 4:9-8:25 (held October 3, 2023)(Court, Smith)(" Tr.");[9] id. at 14:15:16:2.  The Plaintiffs' counsel also articulated the Plaintiffs and the Plaintiff-Intervenors' theory why these Orders do not conflict with federal law, and further stated that -- even if the Orders conflict with state law -- "this Court's orders supersede those [statutes]," because, "[i]n federal class action cases litigating the right[s] of class members to receive constitutional[ly] adequate medical and mental health care, class counsel has the right to examine class member medical records despite state statutes that require individual releases." Tr. at 18:9-20:15 (Smith).  Counsel for the Plaintiffs also accused Bernalillo County of trying to convert the Motion hearing into "motion to modify the existing order," and stated that, "[i]f the County wanted to modify the existing orders, it should have filed a motion asking to do so." Tr. at 20:17-20 (Smith).  The Plaintiffs' counsel concluded by restating the Plaintiffs' and Plaintiff-Intervenor's arguments related to the "unworkable" and "cumbersome" nature of Bernalillo County's proposed Confidentiality Order.  Tr. at 20:22-23:4 (Smith).

Next, the Plaintiff-Intervenors' counsel emphasized that "this is a contempt motion for an order to show cause[,] again[,] not a challenge to the orders before the court." Tr. at 23:14-17 (Loewe).  The Plaintiff-Intervenors' counsel urged the Court not to consider "collateral[] attack[s]" on the Orders, because such a consideration is inappropriate in the context of a civil contempt.  Tr. at 24:10-25:7 (Loewe).  The Plaintiff-Intervenors' counsel then addressed an argument that appeared in Bernalillo County's Motion Response: namely, that civil contempt is inappropriate under the facts of this case, because Bernalillo County contends that its actions accord with a "reasonable interpretation of the order" and its actions "appear[] to be in good faith."  Tr. at 25:7-

---

[9]The Court's citations to the hearing transcript refer to the court reporter's original, unedited version.  Accordingly, page and line numbers are subject to slight change in the final, filed transcript.

14 (Loewe)(citing Motion Response at 10).   In considering this argument, the Plaintiff-Intervenors' counsel countered that "good faith isn't usually a defense to civil contempt" and "certainly not a party's subjective good faith."  Tr. at 25:15-17 (Loewe).  The Plaintiff-Intervenors' counsel then remarked that: "If Defendant takes the position that it is appropriate action to simply stop complying with orders of the Court because it suddenly interprets the Court's order to no longer be sufficient, we have big problems."  Tr. at 26:4-9 (Loewe).  The Plaintiff-Intervenors' basic contention on this question is that a party cannot stop complying with a court order because it unilaterally decides that the order does not comply with law.  Rather, citing to Washington v. Washington State Commercial Passenger Fishing Vessel Association, 443 U.S. 658 (1979), the Plaintiff-Intervenors' counsel argued that "even if [an order of the court] is erroneous in some respects all parties have an unequivocal obligation to obey them while they remain in effect."[10] Tr. at 26:18-21 (Loewe).

The Plaintiff-Intervenors' counsel concluded by reiterating that Bernalillo County is "simply in contempt of the Court's orders," because it has failed to obey the protocols for medical record disclosure that those orders mandate.  Tr. at 27:3-4 (Loewe).  In the Plaintiff-Intervenors' view, Bernalillo County's position that the orders are not valid because they do not comply with law is "essentially a collateral attack on the Court's prior order," which the Plaintiff-Intervenors contend is "improper" given the Motion's posture.  Tr. at 29:1-3 (Loewe).  Moreover, the Plaintiff-Intervenors' counsel continued, although Bernalillo County puts much emphasis on the need for individual releases for medical records, the Plaintiffs and the Plaintiff-Intervenors in this case have provided two individual signed releases for medical records for specific incarcerated persons

---

[10]The Court notes that the Plaintiff-Intervenor's counsel makes this assertion in an arguendo posture and explicitly "do[es] not concede" that there are any errors in the operative Orders in this case.  Tr. at 26:14-21 (Loewe).

following the August 17, 2023, status conference, and still have not received the requested records.
See Tr. at 27:4-15.  See Authorization to Use or Disclose Health Information (dated August 31, 2023), filed September 20, 2023 (Doc. 1644-5).

Bernalillo County's counsel responded, first by arguing that the Plaintiffs and the Plaintiff-Intervenors had been "misleading," Tr. at 30:22 (Rahn), in suggesting that Bernalillo County's attacks on the validity of the orders -- as outlined in Bernalillo County's Response -- are procedurally improper, because the Court had "ordered plaintiffs to file a motion," Tr. at 31:10-11 (Rahn), and that Bernalillo County did not file a motion for a new protective order, "because the Court indicated [at the August 17, 2023, status conference] that it wanted to handle this dispute responding to plaintiffs' order," Tr. at 32:17-20 (Rahn).  The Court disputed this characterization of its comments at the status conference and noted that "I don't have a request to modify the court orders[,] so it seems to me that today the task is to figure out whether the county is complying with the court orders."  Tr. at 32:23-33:1 (Court).  In the Court's view, the Plaintiffs and Plaintiff-Intervenors "kind of beat [Bernalillo County] to the courthouse door by filing a motion to show cause."  Tr. at 33:6-7 (Court).

As for the contempt claim's substance, Bernalillo County's counsel continued to argue -- as Bernalillo County did in its Response -- that the 1996 Protective Order and the 1998 Protective Orders are no longer operative.  See Tr. at 33:22-36:2 (Court, Rahn).  Bernalillo County conceded, however, that the 1998 Protective Order -- if it is operative -- would be HIPPA-compliant.  See Tr. at 36:6-11 (Court, Rahn).  Bernalillo County also conceded that the restrictions in C.F.R. Part 2 regarding production of certain substance abuse records are inapplicable at this time, because UNMH is not currently providing substance abuse care to incarcerated people at MDC.  See Tr. at 37:14-22 (Rahn).  See also Response at 5.

- 27 -

As for Bernalillo County's argument in its Response that it should not be held in contempt because it is complying with a reasonable interpretation of the Orders, see Response at 10 (citing Spectra Sonics Aviation, Inc. v. Ogden City, 931 F.2d at *2), Bernalillo County's counsel clarified that she was "not arguing good faith" as a defense to Bernalillo County's compliance -- or noncompliance -- with the Orders, Tr. at 39:21-22 (Rahn), but rather that the noncompliance with the Orders is based on Bernalillo County's reasonable interpretation of the invalidity of the Orders, see Tr. at 39:21-23.  Bernalillo County's counsel also stated that there are many protective Orders in this case "that apply to certain types of information that is provided to Plaintiffs with different medical vendors," and so it is "unfair to suggest that for the last [twenty-six] years we've been explicitly following [the 1998 Protective Order]." Tr. at 39:24-4014 (Rahn).  Finally, in response to the Court's questioning, Bernalillo County's counsel argued that State law should apply to govern the terms of the federal consent decree, see Tr. at 41:1-2 (Rahn), and also stated that federal courts have "discretion[]"whether to apply State law statutory privileges when such privileges conflict with the disclosure of records pertaining to a federal civil rights class action claim.  See Tr. at 41:6-17.  While Bernalillo County's counsel acknowledged that the Defendants stipulated to the 1996 Protective Order and the 1998 Protective Order in this case, and those Orders appear to consider various State law statutory privileges, see 1998 Protective Order at ¶ 1(a), at 1, those Orders "do not contain the necessary findings" to "explicitly indicate that those protections [the State law statutory privileges] did not apply." Tr. at 41:22-42:5 (Rahn).

The Plaintiffs' counsel, in reply, argued that the previous Orders waived the State law statutory privileges, see Tr. at 49:2-3 (Smith), and that, in any event, when a federal court must enforce an order to remedy violations of constitutional rights, State law to the contrary can be "supplant[ed]," Tr. at 45:22 (Smith).  Next, the Plaintiff-Intervenors' counsel, in reply, also

articulated the theory that State law statutory privileges occasionally must give way to federal constitutional rights in federal class actions in the institutional context.  See Tr. at 52:2-24 (Loewe). The Plaintiff-Intervenors' counsel again highlighted that the Motion concerns civil contempt -- not a motion for a new protective order -- and stated to the Court that, "if [the Court] invite[s] the parties to suddenly start determining which orders and agreements in this case we determine to be insufficient and stop complying, it's my clients who are going to be harmed by that."  Tr. at 51: 1-6 (Loewe).

At the conclusion of the hearing, the Court stated:

I do think that there is path to finding the County in contempt of [the 1998 Protective Order].  It seems to me that we do have a valid court order.  It may have problems, [] but it's still there, and nobody is asking me to change it.  So the County seems to me to be in danger of being held in contempt for not providing medical records to plaintiffs' lawyers and the intervenors under [the 1998 Protective Order].

Tr. at 53:8-15 (Court).  Later that afternoon, the Court entered the OSC, ordering that "the County Defendant must show cause why it should not be adjudged in contempt and prospectively sanctioned for ongoing violations of the Court's orders requiring access to medical records."  OSC at 3.

## RELEVANT LAW REGARDING CIVIL CONTEMPT

Contempt of court is "the disregard of judicial authority," which a court may punish as "an inherent and integral element of its power."  11A Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 2960 (3d ed. 2023).  See Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991)("[I]t is firmly established that '[t]he power to punish for contempt is inherent in all courts.'" (citing Ex parte Robinson, 86 U.S. 505, 510 (1873))).  Contempt applies to "disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial."  Chambers v. NASCO, Inc., 501 U.S. at 44.  In the Tenth Circuit, "[t]o prevail in a civil

contempt proceeding, the plaintiff has the burden of proving, by clear and convincing evidence, that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order." Reliance Ins. Co. v. Mast Constr. Co., 159 F.3d 1311, 1315 (10th Cir. 1998)(citing Roe v. Operation Rescue, 54 F.3d 133, 137 (3d Cir. 1995)).  See Pueblo of Pojoaque v. New Mexico, No. CIV 15-0625, 2016 WL 3135644, at *11 (D.N.M. April 21, 2016)(Browning, J.).

As it pertains to the "existence of a valid court order" prong of this analysis, courts routinely have held that a party alleged to be in civil contempt for disobeying a court order may not challenge the substantive basis of that order as a defense to their alleged contempt:

> It would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. The procedure to enforce a court's order commanding or forbidding an act should not be so inconclusive as to foster experimentation with disobedience. Every precaution should be taken that orders issue, in turnover as in other proceedings, only after legal grounds are shown and only when it appears that obedience is within the power of the party being coerced by the order. But when it has become final, disobedience cannot be justified by re-trying the issues as to whether the order should have issued in the first place.

Maggio v. Zeitz, 333 U.S. 56, 69 (1948)(Jackson, J.)(citing United States v. United Mine Workers of Am., 330 U.S. 258, 259 (1947), and Oriel v. Russell, 278 U.S. 358 (1929)).  See Marshak v. Treadwell, 595 F.3d 478, 486 (3d Cir. 2009)("As we have frequently stated, a party who is alleged to be in contempt of a court order may not challenge the substantive merits of that order within contempt proceedings.");  Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc., 628 F.3d 837, 846 (7th Cir. 2010)(noting that "a contempt proceeding is ordinarily not the proper place for collateral attacks on the underlying injunction.").  Similarly, as the Honorable Judge Eduardo C. Robreno, United States District Judge for the United States District Court for the Eastern District of

Pennsylvania, notes:

> It is elementary, in fact so basic that without it courts would cease to function, that disagreement with an order of the court does not relieve a party from complying with the order's directives unless a stay is granted or the order is reversed or vacated. In fact, even in situations where the order is later proven to be incorrect, or even unconstitutional, a person can properly be held in contempt for violating the order.

Loftus v. Se. Pennsylvania Transp. Auth., 8 F. Supp. 2d 464, 469 (E.D. Pa. 1998)(citing United States v. Stine, 646 F.2d 839, 845 (3d Cir. 1981)), aff'd, 187 F.3d 626 (3d Cir. 1999).

Furthermore, the order being enforced must be "clear and unambiguous." Reliance Ins. Co. v. Mast Const. Co., 84 F.3d 372, 377 (10th Cir. 1996). "Any ambiguities or omissions in the order will be construed in favor of [the order's target]." Reliance Ins. Co. v. Mast Const. Co., 84 F.3d at 377. See 12 Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 3022 (3d. ed. 2023)("[A] party may not be punished for disobeying an order that does not definitely state what it is to do or refrain from doing."). "Civil contempt 'is a severe remedy, and should not be resorted to where there is a fair ground of doubt as to the wrongfulness of defendant's conduct.'" MAC Corp. of Am. v. Williams Patent Crusher & Pulverizer Co., 767 F.2d 882, 885 (Fed. Cir. 1985)(quoting Cal. Artificial Stone Paving Co. v. Molitor, 113 U.S. 609, 618 (1885)). See Pueblo of Pojoaque v. New Mexico, No. CIV 15-0625, 2016 WL 3135644, at *11 (D.N.M. April 21, 2016)(Browning, J.).

## ANALYSIS

The Court grants the Motion, and orders Bernalillo County to show cause why the Court should not hold Bernalillo County in contempt based on its violation of operative Orders in this case. To assess civil contempt's appropriateness, the Court analyzes whether the Plaintiffs and the Plaintiff-Intervenors have proven -- by clear-and-convincing evidence -- that: (i) valid court Orders exist in this case which require disclosure of medical records; (ii) Bernalillo County has knowledge

of these Orders; and (iii) Bernalillo County is disobeying these Orders.  See Reliance Ins. Co. v. Mast Constr. Co., 159 F.3d at 1315.  Because the Court concludes that the Plaintiffs and the Plaintiff-Intervenors can prove all three of these factors by clear-and-convincing evidence, the Court grants the Motion.

I.      **VALID COURT ORDERS IN THIS CASE REQUIRE BERNALILLO COUNTY, PURSUANT TO CERTAIN PROTOCOLS, TO PRODUCE MEDICAL DOCUMENTS UPON THE PLAINTIFFS AND THE PLAINTIFF-INTERVENORS' REQUEST.**

In this case, the 1996 Protective Order and the 1998 Protective Order provide the general framework for the Plaintiffs and Plaintiff-Intervenors' access to the medical records of people who are incarcerated at MDC.  The 1996 Protective Order mandates that certain records -- held by "any agent of the Bernalillo County Detention Center" -- be subject to disclosure to counsel for the Plaintiffs and the Plaintiff-Intervenors:

> Defendants shall allow counsel for plaintiffs and for plaintiff intervenors to review and obtain photocopies of any and all records that are maintained by any agent of the Bernalillo County Detention Center, including the Medical Services Unit, the Psychiatric Services Unit and the University of New Mexico, concerning any person who is or was a member of the class or subclass in this action. No action by a classmember or subclass member shall be required before releasing the information to plaintiffs' or plaintiff intervenors' counsel. Notwithstanding other provisions of state or federal law, information to be released may include information regarding drug abuse, alcohol abuse, infection with the Human Immunodeficiency Virus, or Sickle Cell Anemia. Persons with knowledge about the records and the issues they describe are also authorized to discuss the classmember and the information in her or his records with counsel for plaintiffs or plaintiff intervenors.

1996 Protective Order ¶ 8, at 3.  This provision of the 1996 Protective Order -- an Order to which the Plaintiffs, the Plaintiff-Intervenors, and the Defendants stipulated -- is mirrored in a very similar provision in the 1998 Protective Order.  See 1998 Protective Order ¶ 7, at 3-4.  A plain language reading of these provisions indicates that the access which they provide is very broad -- indeed, they entitle the Plaintiffs and the Plaintiff-Intervenors to "any and all records that are

maintained by any agent of the Bernalillo County Detention Center, including the Medical Services Unit, the Psychiatric Services Unit and the University of New Mexico, concerning any person who is or was a member of the class or subclass in this action," and that "[n]o action by a classmember or subclass member shall be required before releasing the information to plaintiffs' or plaintiff intervenors' counsel." 1996 Protective Order ¶ 8, at 3. See also 1998 Protective Order ¶ 7, at 3-4 (using identical language).

The Court concludes that neither the 1996 Protective Order nor the 1998 Protective Order have been "superseded," as Bernalillo County contends. Response at 3. Bernalillo County never has been entirely clear -- neither in its Response nor at the Motion hearing -- as to the basis of this "Orders-have-been-superseded" theory. In any event, the Court observes that the 2003 MOO cites with approval the 1996 Protective Order and the 1998 Protective Order, with Judge Vázquez stating that, "[t]he Court has entered at least two orders requiring that counsel for Plaintiffs and Plaintiff Intervenors be allowed access to records concerning any person who is or was a member of the class or the sub-class in this action." 2003 MOO at 12 (citing 1996 Protective Order ¶ 8, at 3, and 1998 Protective Order ¶ 7, at 3-4). The Court reads this language to mean that Judge Vázquez seeks to affirm the legally binding nature of the 1996 Protective Order or of the 1998 Protective Order, and not to supersede them.

In addition, the Court also finds the context of Judge Vázquez' reference to the 1996 Protective Order and the 1998 Protective Orders informative: the 2003 MOO is the result of a motion for a temporary restraining order and preliminary injunction which seeks to prevent the Defendants from restricting the Plaintiffs and the Plaintiff-Intervenors' counsel from having access to MDC to monitor the facility, interview MDC staff, and interviewing members of the class and sub-class. See 2003 MOO at 2. In granting this relief, Judge Vázquez states that the Plaintiffs and

the Plaintiff-Intervenors were likely to succeed on the merits because the 1996 Protective Order and the 1998 Protective Order provide that "counsel for Plaintiffs and Plaintiff Intervenors be allowed access to records concerning any person who is or was a member of the class or the sub-class in this action." 2003 MOO at 12. If Judge Vázquez had sought to supersede the earlier protective Orders, her reliance on them -- for the purposes of ruling on motion for a temporary restraining order and preliminary injunction -- would be incoherent. In sum, the Court concludes that the 1996 Protective Order and the 1998 Protective Order -- with their broad guarantees to records access -- remain operative in this case.

The Court also concludes that the 2010 MOO, which adopts the 2009 Interim Access Order, remains operative and controls the basic protocols by which the Plaintiffs and the Plaintiff-Intervenors can request access to the records that the 1996 Protective Order and the 1998 Protective Order guarantee. When considered together, it is clear that all of these Orders -- the 1996 Protective Order, the 1998 Protective Order, the 2003 MOO, and the 2010 MOO -- provide the Plaintiffs and the Plaintiff-Intervenors with a right to access the medical records of individuals housed at MDC. This right is not absolute: the 2009 Interim Access Order conditions the right with various protocols. Nevertheless, the Court concludes that these Orders remain operative in this litigation and thus mandate Bernalillo County's conduct with respect to the production of medical documents.

As noted in this opinion's Procedural Background section, Bernalillo County's main contentions why there are no "valid court orders" in this case that can support holding Bernalillo County in civil contempt is that: (i) the 1996 Protective Order and the 1998 Protective Order have been superseded; and (ii) the 2003 MOO and the 2010 MOO do not comply with law. The Court already has rejected the first of these contentions. As for the second, the Court agrees with the

Plaintiffs and the Plaintiff-Intervenors that Bernalillo County's unilateral disagreement with the

legal validity of the Orders at issue in this case does not -- on its own -- justify Bernalillo County's

decision to disobey those Orders. As the Supreme Court has noted, "a contempt proceeding does

not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed

and thus become a retrial of the original controversy."[11] Maggio v. Zeitz, 333 U.S. at 69. If

Bernalillo County seeks to alter or amend the procedures by which the Plaintiffs and Plaintiff-

Intervenors access the medical records of individuals incarcerated at MDC, the proper procedural

maneuver would be to move the Court to enter a new protective order. As the Court noted at the

hearing about the Motion, "I don't have a request to modify the court orders[,] so it seems to me

---

[11]The Court notes that Bernalillo County concedes that the 1998 Protective Order -- which the Court has concluded remains operative in this case -- is HIPPA-compliant. See Tr. at 36:6-11 (Court, Rahn). At the hearing, Bernalillo County also conceded that the restrictions found in C.F.R. Part 2 regarding production of certain substance abuse records are inapplicable at this time because UNMH is not currently providing substance abuse care to incarcerated people at MDC. See Tr. at 37:14-22 (Rahn); see also Response at 5. This leaves only the claim that the current Orders in this case do not comply with State statutory privilege guarantees found in: (i) the Human Immunodeficiency Virus Test Act, N.M.S.A. §§ 24-2B-1 to -9, see Response at 6; (ii) the Public Health Act, N.M.S.A. §§ 24-1-1 to -44, see Response at 6-7; and (iii) the Mental Health and Developmental Disabilities Code, N.M.S.A §§ 43-1-1 to -25, see Response at 7. The Court acknowledges that there does appear to be some tension between the medical records disclosure protocols in this case and the statutory privilege rights found in these statutes. However, the Court also notes that the 1996 Protective Order and the 1998 Protective Order -- which, again, were stipulated to by the parties -- appear to have considered some State statutory protections when the parties designated as confidential all records "required to be treated as confidential information under the terms of the New Mexico Mental Health and Developmental Disabilities Code, the New Mexico Children's Code, or any other applicable state or federal statute." 1996 Protective Order ¶ 1(b), at 1-2. See 1998 Protective Order ¶ 1(a), at 1-2 (identical language). Whether this provision is sufficient to render these Orders compliant with the State statutory schemes is perhaps debatable, and the Plaintiffs and the Plaintiff-Intervenors also argue that the Court has the power to essentially disregard these statutory privileges in the name of vindicating federal constitutional rights. See Reply at 11-13; Tr. at 18:9-20:15 (Smith). For the purposes of this Motion, however, the Court need not prejudge the merits of this question, which invariably involve a "reconsideration the legal or factual basis of the order alleged to have been disobeyed" and would "thus become a retrial of the original controversy." Maggio v. Zeitz, 333 U.S. at 69.

that today the task is to figure out whether the county is complying with the court orders."  Tr. at

32:23-33:1 (Court).

In sum, as it pertains to the first required finding to support a conclusion of civil contempt

-- that valid court orders exist which mandate Bernalillo County to produce medical records to the

Plaintiffs and Plaintiff-Intervenors -- the Court concludes that such Orders exist.  The 1996

Protective Order and the 1998 Protective Order, both of which the parties stipulated to, provide

the Plaintiffs and Plaintiff-Intervenors' counsel a broad right to access "any and all records that

are maintained by any agent of" MDC.  1996 Protective Order ¶ 8, at 3.  See 1998 Protective Order

¶ 7, at 3-4.  The Interim Access Order -- the provisions of which were adopted by the 2010 MOO

-- provides for more specific protocols by which counsel for the Plaintiffs and the Plaintiff-

Intervenors must request records, thereby "clarif[ying] the reasonable and unimpeded access

required by the [2003 MOO]."  2010 MOO at 16.  Relevant here, these Orders mandate that

"[c]ounsel for [P]laintiffs and [P]laintiff-[I]ntervenors and their staff may review up to [fifteen]

medical files per visit," so long as counsel for the Plaintiffs and the Plaintiff-Intervenors give forty-

eight hours' notice before the visit.  Interim Access Order ¶ 1, at 1.  The Court finds that this

mandate, which forms part of the access protocols that are articulated by past Orders in this case,

compels Bernalillo County to give the Plaintiffs and Plaintiff-Intervenors access to the medical

records of individuals who are housed at MDC.  Accordingly, the Court concludes that clear-and-

convincing evidence demonstrates that valid court Orders exist in this case that require disclosure

of medical records.

## II.   BERNALILLO COUNTY HAS KNOWLEDGE OF THE ORDERS THAT REQUIRE DISCLOSURE OF MEDICAL RECORDS TO COUNSEL FOR THE PLAINTIFFS AND THE PLAINTIFF-INTERVENORS.

Bernalillo County does not appear to dispute the portion of the test for civil contempt requiring knowledge of the Orders that mandate disclosure of medical records.  The Plaintiff and the Plaintiff-Intervenors argue that Bernalillo County was clearly aware of these Orders because they have been following them continuously since they were entered -- with the exception of the circumstances that led to the 2003 MOO, in which Bernalillo County was commanded to disclose the records as outlined in the 1996 Protective Order and the 1998 Protective Order.  See Motion at 10.  In an attempt to counter this assertion, at the hearing about the Motion, Bernalillo County's counsel stated that there are many protective orders in this case "that apply to certain types of information that is provided to Plaintiffs with different medical vendors," and so it is "unfair to suggest that for the last [twenty-six] years we've been explicitly following [the 1998 Protective Order]."  Tr. at 39:24-40:14 (Rahn).  The Court has not been provided with any examples of these "other" protective orders, and the Court is persuaded that Bernalillo County's long-time adherence to the general disclosure requirements of the 1996 Protective Order and the 1998 Protective Order, and the more specific protocols in the Interim Access Order (via the 2010 MOO) demonstrates by clear-and-convincing evidence that Bernalillo County had knowledge of these Orders.

## III.   BERNALILLO COUNTY IS DISOBEYING THE ORDERS, AND HAS NOT SHOWN THAT IT IS UNABLE TO OBEY THE ORDERS' REQUIREMENTS.

Finally, the Court concludes that Bernalillo County has disobeyed the medical disclosure mandates found in the 1996 Protective Order, the 1998 Protective Order, the 2003 MOO, and the 2010 MOO.  Most specifically, Plaintiffs and Plaintiff-Intervenors have shown that -- as recently as August 1, 2023 -- they have requested, with more than forty-eight hours' notice, medical files on thirteen individuals who are incarcerated at MDC.  See Email Correspondence from Kelly

Waterfall to Jason Jones (dated August 1, 2023), filed August 21, 2023 (Doc. 1635-1).  This request complies with the Interim Access Order's protocols -- which the 2010 MOO adopts -- but Bernalillo County has refused to produce these records, because its "position is that the Interim Access Order does not comply with federal and state regulations that apply to production of medical records generally, as well as specific regulations regarding mental health records, substance abuse records, and sexually transmitted disease treatment."  Response at 1-2.  See Email Correspondence from Rodney McNease to Doreen McKight (dated August 19, 2023), filed August 21, 2023 (Doc. 1635-2)("As has been previously communicated [, Bernalillo County] would not be able to provide medical records requested without individual releases of information as provided by University Counsel.").  Accordingly, the Court finds by clear-and-convincing evidence that Bernalillo County has disobeyed the operative Orders' mandates related to the disclosure of medical records to the Plaintiffs and the Plaintiff-Intervenors' counsel.

Because the Plaintiffs and the Plaintiff-Intervenors have made a prima facie case for the appropriateness of civil contempt in this case, Bernalillo County may now attempt to prove that it is "plainly and unmistakably" unable to comply with the Orders.  Donovan v. Burgett Greenhouses, Inc., 759 F.2d 1483, 1486 (10th Cir. 1985)(quoting Hodgson v. Hotard, 436 F.2d 1110, 1115 (5th Cir. 1971)).  As of the present time, Bernalillo County has made no such showing, instead continuing to rely on its theory that the Orders in this case do not comply with law.  The Court reiterates that such an attack is inappropriate given this Motion's procedural posture.  See Maggio v. Zeitz, 333 U.S. at 69; Loftus v. Se. Pennsylvania Transp. Auth., 8 F. Supp. 2d at 469. If Bernalillo County wishes to seek a new protective order, it may move asking for a new one. Until the Court vacates the existing one, the Court concludes that the Plaintiffs and the Plaintiff-Intervenors have proven by clear-and-convincing evidence that Bernalillo County is in contempt

of previous Orders in this case, and will issue an Order to Show Cause why the Court should not hold Bernalillo County in contempt.

**IT IS ORDERED** that: (i) the Plaintiffs and the Plaintiff-Intervenors' Motion for Order to Show Cause Why County Defendant Should Not Pay Monetary Penalites [sic] for Refusing to Provide Medical Records, filed August 21, 2023 (Doc. 1635), is granted; (ii) Defendant Bernalillo County Board of County Commissioners must show cause why the Court should not adjudge Bernalillo County in contempt and prospectively sanction Bernalillo County for ongoing violations of the Court's orders requiring access to medical records; and (iii) the hearing on the Order to Show Cause is set for October 12, 2023, at 8:30 a.m.

_____
UNITED STATES DISTRICT JUDGE

*Counsel and Parties*:

Philip B. Davis
Philip B. Davis, Attorney at Law
Albuquerque, New Mexico

-- and --

Mary E. Schmidt-Nowara
Freedman, Boyd, Hollander & Goldberg, P.A.
Albuquerque, New Mexico

-- and --

Adam C. Flores
Ives & Flores, P.A.
Albuquerque, New Mexico

-- and --

Mark H. Donatelli
Peter Schoenburg
Marc M. Lowry
Carey Bhalla
Arne Leonard
Rothstein Donatelli LLP
Albuquerque, New Mexico

-- and --

Alexandra Freedman Smith
Doreen McKnight
Law Office of Alexandra Freedman Smith, LLC
Albuquerque, New Mexico

      *Attorneys for the Plaintiffs*

Mary E. Schmidt-Nowara
Freedman, Boyd, Hollander & Goldberg, P.A.
Albuquerque, New Mexico

-- and --

Claire Dickson
Albuquerque, New Mexico

-- and --

Nancy L. Simmons
David Meilleur
Law Offices of Nancy L. Simmons
Albuquerque, New Mexico

-- and --

Nicholas T. Davis
Davis Law
Albuquerque, New Mexico

-- and --

Peter Cubra
Law Office of Peter Cubra
Albuquerque, New Mexico

-- and--

Ryan J. Villa
Katherine Loewe
Kelly K. Waterfall
The Law Office of Ryan J. Villa
Albuquerque, New Mexico

 *Attorneys for the Plaintiff-Intervenors*

Kathryn Levy
Trevor Adam Rigler
  City Attorney's Office
City of Albuquerque
Albuquerque, New Mexico

-- and --

Debra J. Moulton
Kennedy, Moulton & Wells, P.C.
Albuquerque, New Mexico

 *Attorneys for Defendant City of Albuquerque*

Luis E. Robles
Marcus J. Rael, Jr.
Taylor Sauer Rahn
Robles, Rael & Anaya, P.C.
Albuquerque, New Mexico

 *Attorneys for Defendants County of Bernalillo and Bernalillo County Board of*
  *Commissioners*

Shane C. Youtz
Stephen Curtice
Youtz & Valdez, P.C.
Albuquerque, New Mexico

 *Attorneys for Intervenor AFSCME Local 2499*

Lawrence A. Johnson
Los Lunas, New Mexico

 *Intervenor Pro Se*

Willie James Washington
Albuquerque, New Mexico

   *Intervenor Pro Se*