**Outlook**

## MDC Report #20

**From** Margo Frasier <margo.frasier@yahoo.com>

**Date** Sun 5/18/2025 2:33 PM

**To** NMDml_Judge Browning's Chambers nmd.uscourts.gov <BrowningChambers@nmd.uscourts.gov>

**Cc** Taylor Rahn <taylor@roblesrael.com>; 'Kelly Waterfall (kelly@rjvlawfirm.com)' <kelly@rjvlawfirm.com>; Alexandra Freedman Smith <asmith@smith-law-nm.com>; Simmons, Nancy <nlsimmons@swcp.com>; Alan Torgerson <alanctorgerson@yahoo.com>

📎 1 attachment (910 KB)

MDC Report #20 final corrections monitor.pdf;

**CAUTION - EXTERNAL:**

Your Honor,

Attached is Report #20 of the Court Appointed Jail Operations Expert. I am available if you have any questions.

Sincerely,
Margo L. Frasier

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

*Give me a work copy* ✍ 5/30/25

*File on CM/ECF* ✍ 5/30/25

✍ 5/30/25

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JIMMY (BILLY) MCCLENDON, ET AL.
Plaintiffs,

v.

CITY OF ALBUQUERQUE, ET AL.
Defendants,

v.

E.M., R.L., W.A., D.J., P.S. and N.W.,
on behalf of themselves and
all others similarly situated
Plaintiff-Intervenors

Civ. No. 95-24 JB/KBM

### Report No. 20 of the Court Appointed Jail Operations Expert
### Regarding Conditions of Confinement at the Bernalillo County Metropolitan
### Detention Center

### May 18, 2025

Margo L. Frasier, J.D., C.P.O., Jail Operations Monitor
3300 Plover Rain Way
Pflugerville, Texas 78660
Email: margo.frasier@yahoo.com

# Table of Contents

Page

**Introduction**                                                                 **3**

    Report of Compliance                                      3

**Domain 3: Group A**                                                            **5**

**Domain 4: Group B**                                                            **6**

    Inmate Discipline                                         **6**

    Inmate Classification                                     **16**

    Inmate Grievance Procedure                                **22**

    Safety and Supervision                                    **31**

    Contraband Control                                        **38**

    Staffing                                                  **41**

    Access to Counsel and Legal Materials                     **46**

    Law Library                                               **48**

    Inmate Programming (excluding mental health programming)  **51**

    Access to Information                                     **53**

    Supplemental Opinions                                     **55**

**Domain 5: Population Management**                                              **61**

**Domain 6: Housing and Segregation**                                           **61**

**Domain 7: Sexual Misconduct**                                                 **61**

**Domain 8: Use of Force by Security Staff and Internal Investigations**        **68**

    Use of Force by Security Staff                            **69**

    Internal Investigations                                   **85**

**Conclusion**                                                                   **91**

# Introduction

This is the twentieth report of the court appointed jail operations expert regarding the conditions of confinement at the Bernalillo County Metropolitan Detention Center (MDC). The first nine reports were filed by Manuel Romero. Subsequent reports were filed by Margo Frasier having been appointed as the jail operations expert in February 2018.

To prepare for the issuance of a report, Monitor Frasier visited the MDC during the compliance period and an additional time after the compliance period, but before the preparation of this report. The monitoring period for Report #20 covers Q3-Q4 of 2024. Monitor Frasier was able to conduct an on-site monitoring visits August 5-8, 2024, December 30-31, 2024, and April 21-23, 2025.

MDC set ambitious deadlines for bringing MDC into compliance with the Settlement Agreement. The severe shortage of staff has continued to hamper meeting those deadlines. The staffing shortages do not lessen the responsibility of MDC to comply with the terms of the Settlement Agreement and are not taken into consideration by Monitor Frasier in her ratings. MDC has been involved in a very aggressive recruitment campaign resulting in lowering the number of vacancies. The increase in security staffing has allowed for an increase in supervision in the housing units and an increase in the amount of time inmates are allowed out of their cells.

Monthly virtual meetings between the counsel for the parties and representatives of MDC and the health care provider continued to be held. Margo Frasier attends those meetings, whenever possible, by conference call. In addition to the meetings with counsel, the McClendon Executive Action Committee (MEAC), which consists of the command staff of MDC and MDC staff assigned to key areas, continues to concentrate on bringing MDC into compliance with the Settlement Agreement and addressing issues of quality improvement. Monitor Frasier is available to the MEAC to provide guidance on compliance. When Monitor Frasier visits MDC, she meets with counsel for the parties and the MDC staff.

MDC is in the self-monitoring phase of the process for portions of the Settlement Agreement as it had obtained substantial compliance in three of the domains: Domains 3, 5, and 6. Monitor Frasier worked with MDC to establish the criteria MDC is to utilize to self-monitor compliance. Under the self-monitoring provisions, MDC is to submit quarterly reports to the Monitor and counsel for Plaintiffs/Plaintiff-Intervenors. The Monitor continues to monitor all provisions, but, for domains in the self-monitoring phase, emphasis has shifted to evaluation of the quarterly reports as opposed to semi-annual compliance tours. As the original self-monitoring periods for Domains #3, #5 and #6 have expired, a report on the Check-Out Audits for Domains #5 and #6 was submitted to the Court on March 31, 2021, and the Check-Out Audit for Domain #3 was submitted to the Court on October 29, 2021. In addition to the domains in self-monitoring, paragraphs 6(C)(4), (D)(3), (D)(4), (Q)(1), (Q)(2), (B)(3), (B)(6), (B)(14), (J)(5), and (J)(11) have been removed per a Stipulated Order (Doc. No. 1477). This results in 83 provisions being in active monitoring.

As with Compliance Reports #10-19, MDC was asked to perform a self-assessment of level of compliance and to provide the self-assessment and the documentation supporting proof of compliance. The documents compiled by MDC and the self- assessment were provided to Monitor Frasier and to the counsel for Plaintiffs and Plaintiff-Intervenors on February 25, 2025. Additional documents were provided one week later. Monitor Frasier then requested the counsel for Plaintiffs and Plaintiff- Intervenors to assess their position as to MDC's level of compliance. The assessment by counsel for Plaintiffs and Plaintiff-Intervenors was provided to Monitor Frasier and counsel for MDC on April 3, 2025. The draft of this report was provided to counsel for all parties with a request for comments on May 9, 2025. Counsel for all parties provided comments on the draft on May 14, 2025. Monitor Frasier closely considered the assessments of compliance provided by the parties, comments from all parties, and materials reviewed in the finalization of this report. Monitor Frasier appreciates the candid and clear responses of all parties, and the accuracy of the report is improved because of their input.

Monitor Frasier thanks the leadership of MDC and the counsel to the parties for their cooperation in the review process and the continuing insight provided to Monitor Frasier. Monitor Frasier thanks Judge Browning for the opportunity to assist the court in meeting the goal of a constitutional MDC.

**Terms Used in Compliance Ratings**

Monitor Frasier uses three terms to describe the levels of compliance: Substantial Compliance, Partial Compliance, and Non-Compliance. When the term Substantial Compliance is used, it is to indicate that the MDC has successfully, generally, met the substantive terms and requirements of the provision. Substantial Compliance or Compliance does not mean that there have not been occurrences when policy was not been followed or the requirements were not met. When Partial Compliance is used, it is to indicate that MDC has made significant progress towards meeting the substantive terms and requirements of the provision. When the term Non-Compliance is used, it indicates the MDC has not yet made significant progress towards meeting the substantive terms and requirements of the provision. Non- Compliance does not necessarily mean that MDC has made no progress; although, not making any progress would constitute Non-Compliance.

**Summary of Compliance - Settlement Agreement as of Compliance Report #187**

| Report # | Substantial Compliance | Partial Compliance | Non-Compliance | Not Applicable | Total |
|---|---|---|---|---|---|
| Romero #9 | 38 | 54 | 55 | 6 | 153 |
| Frasier #10 | 81 | 55 | 15 | 2 | 153 |
| Frasier #11 | 91 | 56 | 4 | 2 | 153 |
| Frasier #12 | 104 | 49 | 0 | 0 | 153 |

| Frasier #13 | 50 | 43 | 0 | 0 | 93 |
| Frasier #14 | 57 | 36 | 0 | 0 | 93 |
| Frasier #15 | 47 | 28 | 8 | 0 | 83 |
| Frasier #16 | 41 | 34 | 8 | 0 | 83 |
| Frasier #17 | 41 | 37 | 5 | 0 | 83 |
| Frasier #18 | 45 | 32 | 6 | 0 | 83 |
| Frasier #19 | 45 | 38 | 0 | 0 | 83 |
| Frasier #20 | 49 | 34 | 0 | 0 | 83 |

The ratings attributed to Monitor Romero were the last rating given by him. As of Report #13, the ratings for Domains #3, #5, and #6 are no longer included in the chart as they are subject to a different process of monitoring.

## Domain 3: Group A

COA #3 Domain 3: Group A consists of nine (9) subcategories: Fire and Life Safety, Sanitation and Environmental Conditions, Sanitary Laundry, Food Service, U.S. Mail Service, Inmate Access to Commissary, Access to Community Services, and Competency Evaluations. Within the nine (9) subcategories, there are multiple provisions. There are sometimes multiple sections within a provision. Monitor Frasier found MDC to be in Substantial Compliance or Compliance with eight (8) subcategories (Fire and Life Safety, Sanitation and Environmental Conditions, Sanitary Laundry, Food Service, U.S. Mail Service, Inmate Access to Commissary, and Access to Community Services), and unable to rate two (2) subcategories (Competency Evaluations) without assistance and guidance from the Court. MDC was found in Substantial Compliance/Compliance with all provisions with the exception of the Competency Evaluation subcategory as of June 27, 2019.

Monitor Frasier's review in Report #12 found that Substantial Compliance was being sustained of all provisions rated in Domain #3. On February 19, 2020, Judge Parker signed a Stipulated Order Granting Defendant Bernalillo County Board of Commissioners' Unopposed Motion for Finding of Initial Compliance and to Set Self- Monitoring Period Regarding Domain #3. The Court held MDC achieved initial substantial compliance with Domain #3 as of July 1, 2019. The self-monitoring period continued through August 19, 2021. On February 11, 2022, Judge Browning held a hearing on Bernalillo County's Motions for Sustained Compliance as to Domains 3, 5, and 6. The Court requested further information as to the adequacy of telephone access under Domain 3. Upon further hearing, the Court found MDC was not in sustained compliance of Domain #3 due Check-Out Audit #3 6(L)(3)-(4), 6(M)(1), and 6(S)(1)-(3), and ordered a new period of self-monitoring from October 1, 2022, to March 31, 2023. A further Order was entered extending the self-monitoring until March 31, 2024. Monitor Frasier's findings on

the Check-Out for Domain #3 was submitted to counsel for the Parties on February 6, 2025. The Court found that MDC was not in sustained compliance as to Domain #6 due to Check- Out Audit #3 6(H)(3) as to segregated inmates having one hour per day out of cell time and ordered a new period of self-monitoring from April 1, 2022, to September 30, 2022. The Court granted the motion as to Domain #5. During this period of time, Monitor Frasier has reviewed the quarterly reports to evaluate whether MDC has remained in compliance with each of the domain's subcategories. Domain 3 will not be included in the reports.

## Domain 4: Group B

COA #3 Domain 4: Group B consists of eleven (11) subcategories. Within the eleven (11) subcategories, there are multiple provisions. There are sometimes multiple sections within a provision. Monitor Frasier has found MDC to be in Substantial Compliance with six (6) subcategories and Partial Compliance with five (5) subcategories.

The following consists of the status, measures of compliance, steps taken by the County to comply, Monitor Frasier's analysis and factual basis for finding, and Monitor Frasier's recommendations to achieve compliance for Domain 4: Group B.

**Inmate Discipline:**

| Paragraph: | Inmate Discipline: C. 1) Whether MDC maintains and effectively implements policies and procedures for a formal disciplinary process including: a. timely issuance of written disciplinary citations administrative review and disciplinary reports for alleged rule violations, in accordance with generally accepted correctional standards. b. a prohibition of the use of behavior modification programs, discipline, and punishment, unless permitted by MDC's written inmate discipline policies. *[Doc. No. 1161, p.4, para. 2(d)].* | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: | Partial Compliance: 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Non-Compliance: 06/23/2017; 09/18/2018 | Other: |
| Measures of Compliance: | • Related policies, procedures, written directives and practices (14.03 Inmate Sanctions, 14.06 Less Serious Infractions/Unit Procedures and Sanctions, 14.07 Disciplinary Report Requirements). Internal audits documenting no use of behavior modification programs, discipline, and punishment that are prohibited by the written inmate discipline policies. | | | |

6

| | |
|---|---|
| Steps taken by the County to Implement: | MDC negotiated a disciplinary policy with counsel for Plaintiffs and Plaintiff-Intervenors which contains these provisions. The provisions regarding timeliness of written disciplinary citations, administrative review and disciplinary reports have been implemented and they are in line with generally accepted correctional standards. |
| Monitor's analysis and factual basis for the finding. | During Q3-Q4 2024, the technical dismissal of disciplinary charges ranged from 42.45% to 54.19% for PSU inmates. No data was provided for non-PSU inmates, but observation on site reflects that it is similar or even higher. This indicates that written disciplinary citations are not being timely issued. While the disciplinary hearings which are held (as opposed to being technically dismissed), may be held timely, the entire process is not being done timely. Inmates are still being placed in RHU only to have their disciplinary charges dismissed shortly before the hearing should have been held. As to prohibited discipline, the same memorandum from May 10, 2021, was the only proof submitted. |
| Recommendations: | 1. Complete monthly audits as to timeliness which include discipline tickets that were dismissed as a result of being untimely. Particularly note whether any inmates were placed in segregation pending a disciplinary hearing for a disciplinary tickets that was dismissed for lack of timeliness. Audits for every month within the monitoring period should be provided. 2. Provide proof that no prohibited behavior modification programs, discipline, or punishment was used. 3. Audit the use of in-unit sanctions for compliance with policy. |

| | |
|---|---|
| Paragraph: | Inmate Discipline: <br> C. 2) Whether MDC ensures that disciplinary charges against inmates with a mental or developmental disability are reviewed by a Qualified Mental Health Professional: <br> a. Whether the Qualified Mental Health Professional determines the extent to which the charge was related to a mental or developmental disability. <br> b. Whether the Qualified Mental Health Professional communicates his or her finding to MDC to ensure that inmates who commit infractions resulting from a mental or developmental disability are not punished for behavior caused by a mental or developmental disability. *[Doc. No. 256, IV(A)(1)].* |

| Compliance Status: | Compliance: | Partial Compliance: | Non-Compliance: | Other: |
|---|---|---|---|---|
| | 02/23/2024; 08/15/2024; 02/25/2025 | 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023 | 06/23/2017; 09/18/2018 | |

| Measures of Compliance: | • Related policies, procedures, written directives and practices (14.05 Mental Health Input into the Disciplinary Process for Inmates with a Serious Mental Illness, Intellectual Disability or Abnormal Behavior).<br>• Internal audits documenting that disciplinary charges against inmates with a mental or developmental disability:<br>  ○ are reviewed by a Qualified Mental Health Professional,<br>  ○ a determination of the extent to which the charge was related to a mental or developmental disability is made,<br>  ○ a communication of that determination to MDC, and<br>  ○ MDC not punishing inmates for infractions caused by a mental or developmental disability. |
|---|---|
| Steps taken by the County to Implement: | MDC has negotiated a disciplinary policy with counsel for Plaintiffs and Plaintiffs and Plaintiff-Intervenors which contains these provisions. The provision requiring disciplinary charges against inmates with a mental or developmental disability to be reviewed by a QMHP, a determination made, and communicated has been implemented. QMHPs regularly reviews inmates with a serious mental illness (SMI) but there does appear to be a process for determining other inmates who should be reviewed due to developmental disability. |
| Monitor's analysis and the factual basis for finding: | The provisions regarding consultation with an QMHP to determine the extent to which the charge is related to a mental or developmental disability and communication of the finding have been implemented. Automatic electronic documentation of the review has yet to be implemented, but it is entered manually. There appears to be unclarity when it comes to exactly which inmates are required to be reviewed. QMHPs do a good job of reviewing SMI inmates prior to the disciplinary hearing; review was conducted 100% of the time when the inmate was subjected to a disciplinary hearing. The findings are communicated on a written form. The audit does not reflect how many inmates with a developmental disability received a disciplinary report or that they were reviewed. It does reflect inmates with a developmental disability being reviewed, but they also were inmates with an SMI. The requirement does not appear to be for all of the inmates on the PSU caseload. Documentation reviewed and interviews on-site noted review by a QMHP before the inmate on the PSU caseload was placed on lockdowns. The audits do not include pre-hearing segregation reviews by a QMHP. The social service coordinators have proven to be a good source of a list of inmates who have developmental disabilities. |
| Recommendations: | 1. Included in the audits should be all inmates who qualify for review (which would include all SMI inmates and non-SMI inmates with a developmental or mental disability) and inmates which, require review prior to pre-hearing segregation by a QMHP. |

| Paragraph: | Inmate Discipline: |
|---|---|
| | C. 3) Whether MDC has adopted and effectively implements written policies for the use of disciplinary measures with regard to inmates with a mental or developmental disability (including inmates exhibiting recognizable signs or symptoms of mental or developmental disability) including the following:<br>a.  Whether MDC staff consults with Qualified Mental Health Staff to determine whether initiating disciplinary procedures is appropriate for inmates with a mental or developmental disability.<br>b.  If a Qualified Mental Health Professional determines the inmates' actions that are the subject of the disciplinary proceedings are symptomatic of a mental or developmental disability, whether MDC mitigates the imposition of discipline. |

| Compliance Status: | Compliance:<br>02/23/2024;<br>08/15/2024;<br>02/25/2025 | Partial Compliance:<br>06/27/2019;<br>002/04/2020;<br>11/20/2020;<br>07/02/2021;<br>06/08/2022;<br>05/07/2023;<br>08/03/2023 | Non-Compliance:<br>06/23/2017;<br>09/18/2018 | Other: |
|---|---|---|---|---|

| Measures of Compliance: | <ul><li>Related policies, procedures, written directives and practices (14.05 Mental Health Input into the Disciplinary Process for Inmates with a Serious Mental Illness, Intellectual Disability or Abnormal Behavior).</li><li>Internal audits documenting, with regard to inmates with a mental or developmental disability (including inmates exhibiting recognizable signs or symptoms of mental or developmental disability),<ul><li>whether MDC staff consults with Qualified Mental Health Staff to determine whether initiating disciplinary procedures is appropriate for inmates with a mental or developmental disability developmental disability, and</li><li>whether, if a Qualified Mental Health Professional determines the inmates' action that are the subject of the disciplinary proceedings are symptomatic of a mental or developmental disability, MDC mitigates the imposition of punishment.</li></ul></li></ul> |
|---|---|

| Steps taken by the County to Implement: | MDC has negotiated a disciplinary policy with counsel for Plaintiffs and Plaintiff-Intervenors which contains these provisions. The provisions in the negotiated policy and current policy requiring consultation with QMHP to determine whether initiating disciplinary charges is appropriate for inmates with a mental or developmental disability and mitigation of the imposition of discipline have been implemented. QMHPs review includes SMI inmates but there does appear to be a process for determining other inmates who should be reviewed due to developmental disability. The review takes place before  the disciplinary hearing. If the QMHP recommends a mitigation in the imposition of discipline, it is followed by MDC. |
|---|---|

| | |
|---|---|
| Monitor's analysis and the factual basis for finding: | The provisions requiring consultation with QMHP to determine whether initiating disciplinary charges is appropriate for inmates with a mental or developmental disability and mitigation of the imposition of discipline have been implemented. The review is not recorded electronically. QMHPs do a good job of reviewing SMI inmates and inmates with a developmental disability prior to the disciplinary hearing; review was conducted 100% of the time. The audit does not reflect how many inmates with a developmental disability received a disciplinary report or that they were reviewed. There were inmates with a developmental disability that were reviewed, but they were inmates who also had an SMI. What is still problematic is when the review is taking place. The results of the review are communicated via a written form and are followed by MDC in making the decisions whether or not to institute disciplinary action. Documentation reviewed and interviews on-site noted review by a QMHP before the inmate on the PSU caseload was placed on pre- hearing segregation. The audits do not include pre-hearing segregation reviews by a QMHP. |
| Recommendations: | 1. Include in the audit the consultation and documentation provided the consultation with the QMHP before an inmate is placed in pre-hearing segregation. This is particularly important given that up to 54.19% of the cases involving PSU inmates were dismissed on technical reasons such as lack of timeliness. |

| Paragraph | 1) Inmate Discipline: C. 5) Whether MDC ensures all inmates placed in lock down status are timely provided with the protections set forth in MDC's policies and procedures and generally accepted correctional standards. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: | Partial Compliance: 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Non-Compliance: 06/23/2017; 09/18/2018 | Other: |
| Measures of Compliance: | • Related policies, procedures, written directives and practices (14.03 Inmate Sanctions, 14.08 Pre-Hearing Detention).<br>• Internal audits documenting to the extent inmates placed in lock down status are timely provided with the protections set forth in the negotiated disciplinary process. | | | |
| Steps taken by the County to Implement: | MDC has negotiated a disciplinary policy with counsel for Plaintiffs and Plaintiff-Intervenor which contains these provisions. Current policy provides for protections for inmates placed in lockdown status. | | | |

10

| Monitor's analysis and the factual basis for finding: | Documentation was reviewed which consisted of audits which demonstrated that calls into question whether disciplinary hearings are being held timely for inmates placed in lockdown status. Documentation indicated that 42.4-54.19% of all disciplinary cases involving PSU inmates were dismissed for technical reasons including being untimely. The Inmate Discipline Report reflects when an inmate is placed in RHU and the disciplinary charge is later dismissed on a technical reason. It reflects that as many as 122 inmates (during the month of October 2024) were placed in RHU only to have the charges later dismissed on technical reasons. This indicates that written disciplinary citations are not being timely issued. While the disciplinary hearings which are held (as opposed to being technically dismissed) may be held timely, the entire process is not being done timely. Inmates are still being placed in RHU only to have their disciplinary charges dismissed shortly before the hearing should have been held. Substantial Compliance requires proof of a timely disciplinary process; not just the hearing. Lacking is documentation that the other provisions of 14.08 Pre-Hearing Detention are consistently followed. The negotiated disciplinary process and current policies do comply with generally accepted correctional standards. |
|---|---|
| Recommendations: | 1. Implement the audit schedule and format to measure the extent to which inmates placed in lockdown status are timely provided with all of the protections set forth in the negotiated disciplinary policies and procedures. |

| Paragraph | 1) Inmate Discipline:<br>    C. 6) Whether MDC ensures that the disciplinary officer's/board's written record accurately reflects the evidence and discussion from the disciplinary hearing, including any recommendations from a Qualified Mental Health Professional regarding the extent to which disciplinary charges are related to an inmate's mental or developmental disability, or suggestions for minimizing the deleterious effect of disciplinary measures on the inmate. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance:<br>02/04/2020;<br>07/02/2021;<br>06/08/2022;<br>02/23/2024; | Partial Compliance:<br>06/27/19;<br>11/20/2020;<br>05/07/2023;<br>08/03/2023;<br>08/15/2024;<br>02/25/2025 | Non-Compliance:<br>06/23/2017;<br>09/18/2018 | Other: |
| Measures of Compliance: | • Related policies, procedures, written directives and practices (14.10 Formal and Impartial Hearings, 14.15 Record of Hearing).<br>• On site review and self-audits of the extent the disciplinary officer's/board's written record accurately reflects the evidence and discussion from the disciplinary hearing, including any recommendation from a QMHP regarding the extent to which disciplinary charges are related to an inmate's mental or developmental disability, or suggestions for minimizing the deleterious effect of disciplinary measures on the inmate. | | | |

| | |
|---|---|
| Steps taken by the County to Implement: | MDC has negotiated a disciplinary policy with counsel for Plaintiffs and Plaintiff- Intervenor which contains these provisions. The negotiated policy and current policies require the written record of the disciplinary board to reflect the evidence and discussion including recommendations from QMHP. |
| Monitor's analysis the factual basis for finding: | MDC provided documentation of the written record of the disciplinary board. The record reflected the type of evidence that purportedly supported the disciplinary charge, but, when evidence was presented by the inmate, no synopsis of the inmate's statement at the hearing and how it factored into the decision was included. MDC did provide documentation that a QMHP recommendation was received, and it being followed. |
| Recommendations: | 1. Continue to implement the corrective action plan regarding refusals and have three-member disciplinary panels. Thoroughly describe the basis of the finding including consideration of any evidence presented by the inmate and how it factored into the decision. |

| Paragraph | 1) Inmate Discipline: C. 7) Whether MDC alerts the facility's medical provider when inmates are placed in disciplinary segregation or protective custody. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023 08/03/2023 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: 06/27/2019 | Non-Compliance: 06/23/2017; 09/18/2018 | Other: |
| Measures of Compliance: | • Related policies, procedures, written directives and practices (14.08 Pre- Hearing Detention). • Observation of process whereby inmates placed in disciplinary segregation or protective custody are screened by the facility's medical provider. | | | |
| Steps taken by the County to Implement: | MDC has negotiated a disciplinary policy with counsel for Plaintiffs and Plaintiff- Intervenor which contains these provisions. Policy and practice provide for the medical provider to be alerted with inmates are placed in disciplinary segregation or protective custody and to screen them. | | | |
| Monitor's analysis and the factual basis for finding: | The only written documentation provided was a memorandum from 2021 stating that an audit found 100% compliance with policy. This is insufficient. A column should be added to the Inmate Discipline Report for this item. The Monitor also reviewed on-site the electronic records of the disciplinary board and classification records. The documentation reflected that the medical provider was alerted when an inmate was placed in disciplinary segregation or protective custody. | | | |

| Recommendations: | 1. Continue to work towards electronic notification of the facility's medical provider when inmates are placed in disciplinary segregation or protective custody. Not only will electronic notification ease the burden of notification, but it should also allow for reports to be run which will provide sufficient documentation of compliance. Until then, include proof of the medical clearance in the disciplinary packet and provide in the documentation to the Monitor and the parties. |
|---|---|

| Paragraph | 1) Inmate Discipline:<br>  C. 8) Whether a Qualified Mental Health Staff member works with the disciplinary officer or board, as needed, to address the needs of inmates who have a mental or developmental disability. |
|---|---|

| Compliance Status: | Compliance:<br>02/23/2024;<br>08/15/2024;<br>02/25/2025 | Partial Compliance:<br>06/27/2019;<br>02/04/2020;<br>11/20/2020;<br>07/02/2021;<br>06/08/2022;<br>05/07/2023;<br>08/03/2023 | Non-Compliance:<br>06/23/2017;<br>09/18/2018 | Other: |
|---|---|---|---|---|
| Measures of Compliance: | <ul><li>Related policies, procedures, written directives and practices (14.05 Mental Health Input into the Disciplinary Process for Inmates with a Serious Mental Illness, Intellectual Disability or Abnormal Behavior).</li><li>Internal audits documenting to the extent a Qualified Mental Health Staff member works with the disciplinary officer or board, as needed, to address the needs of inmates who have a mental or developmental disability.</li></ul> | | | |
| Steps taken by the County to Implement: | MDC has negotiated a disciplinary policy with counsel for Plaintiffs and Plaintiff- Intervenor which contains these provisions. Policy and practice provide for a QMHP to work with the disciplinary board, as needed to address the needs of inmates who have a mental or developmental disability. QMHPs now review inmates with a serious mental illness (SMI) or a developmental disability. | | | |
| Monitor's analysis and the factual basis for finding: | Documentation was reviewed which consisted of audits of consultation with QMHP on inmates with a SMI or developmental disability and the written records of the disciplinary board which noted cases in which consultation occurred. The audits conducted with the review of SMI inmates and inmates with a developmental disability to be 100%. | | | |
| Recommendations: | No recommendations required at this time. | | | |

| Paragraph | 1) Inmate Discipline:<br>  C. 9) Whether MDC provides an adequate number of staff to carry out the duties and responsibilities of the inmate disciplinary system as required by MDC policy and procedure. |
|---|---|

| Compliance Status: | Compliance: 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022 | Partial Compliance: 06/27/2019; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Non-Compliance: 06/23/2017; 09/18/2018 | Other: |
|---|---|---|---|---|
| Measures of Compliance: | <ul><li>Staffing chart and job descriptions of the inmate disciplinary system.</li><li>Analysis of timeliness and thoroughness of compliance with various components of the inmate disciplinary system to determine whether adequate number of staff are assigned to the inmate disciplinary system to fulfill the requirements of the negotiated inmate disciplinary policy.</li></ul> | | | |
| Steps taken by the County to Implement: | MDC provided the job description for an Inmate Discipline Coordinator which appears to be a support position. MDC has negotiated a disciplinary policy with counsel for Plaintiffs and Plaintiff-Intervenors. The policy does delineate the various staff who are involved in the inmate disciplinary process. | | | |
| Monitor's analysis and the factual basis for finding: | While it appears that the hearings are now, once again, being conducted by a three-person panel, the untimeliness in the notation of inmates and the untimeliness in completing disciplinary reports results over half of the disciplinary offenses being dismissed. The high rate of dismissals has the effect of undermining the entire disciplinary process. It also appears that an inordinate amount of overtime is worked by the Inmate Discipline Coordinator which may indicate a lack of sufficient staff. | | | |
| Recommendations: | 1. Analyze the cases dismissed to determine what is the cause of the dismissals so that the deficiency may be addressed. | | | |

| Paragraph | 1) Inmate Discipline: C. 10) Whether MDC punishes groups of residents for the behavior of individuals and whether lockdowns of living units occur that are not authorized by the jail director or his designee. *[Doc. No. 256.]* | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: 11/20/2020; 07/02/2021; 08/15/2024; 02/25/2025 | Partial Compliance: 06/27/2019; 02/04/2020; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024 | Non-Compliance: 06/23/2017; 09/18/2018 | Other: |

| Measures of Compliance: | <ul><li>Related policies, procedures, written directives and practices (Chapter14 Inmate Discipline; 8.31 Riot/Disturbance Plan).</li><li>Internal audits documenting to the extent any groups of residents/inmates have been punished for behavior of individuals.</li><li>Internal audits documenting to the extent whether lockdowns of living units occur that are not authorized by the jail director or his designee.</li></ul> |
|---|---|

| | |
|---|---|
| Steps taken by the County to Implement: | MDC has negotiated a disciplinary policy with counsel for Plaintiffs and Plaintiff- Intervenor. Policy prohibits punishment of groups of inmates for the behavior or individual inmates. |
| Monitor's analysis and the factual basis for finding: | The only documentation provided for this provision was a memorandum dated May 10, 2021. However, documentation was provided monthly of lockdowns of the facility or a part thereof and the reason for the lockdown during the monitoring period. MDC provided the responses to complaints about group punishment raised by counsel for the inmates. While there may be isolated examples of when a pod officer did not follow policy, the documentation reveals that MDC has successfully, generally, met the substantive terms and requirements of the provision. This provision is rated as being in Substantial Compliance. |
| Recommendations: | 1. Continue to audit compliance with the provision and provide documentation. |

| Paragraph | 1) Inmate Discipline: C. 11) Whether MDC developed and employs an effective and comprehensive training program on inmate discipline. *[Doc. No. 1161 at p. 5, para. 2(j)]* | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020 | Non-Compliance: 06/23/2017 | Other: |
| Measures of Compliance: | • Whether MDC has developed an effective and comprehensive training program on inmate discipline. • Whether MDC employs an effective and comprehensive training program on inmate discipline. | | | |
| Steps taken by the County to Implement: | MDC has developed an effective and comprehensive training program on inmate discipline based on the negotiated disciplinary process. MDC has a plan to fully train (employ) the training. | | | |
| Monitor's analysis and the factual basis for finding: | MDC has developed an effective and comprehensive training program for staff on inmate discipline based on the negotiated disciplinary process and has fully trained the staff. Concerns surrounding the effectiveness and comprehensiveness of the training for QMHPs and disciplinary staff have been resolved. | | | |
| Recommendations: | 1. Further review has indicated that deficiencies in disciplinary process are more related to supervision than training. The biggest issue is the number of dismissals. Previous recommendation was for an analysis of the reasons for dismissals so that it may be addressed. | | | |

| Paragraph | 1) Inmate Discipline: C. 12) Whether MDC ensures that correctional officers receive adequate training in MDC's policies regarding inmate discipline. *[Doc. No. 1161 at p. 5, para. 2(j).]* |
|---|---|

| Compliance Status: | Compliance: 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020 | Non-Compliance: 06/23/2017 | Other: |
|---|---|---|---|---|
| Measures of Compliance: | • Whether MDC has developed an adequate training program on MDC's policies regarding inmate discipline and ensures correctional officers receive the training. | | | |
| Steps taken by the County to Implement: | MDC has developed an adequate training program on MDC's policies regarding inmate discipline based on the negotiated disciplinary process and fully trained the correctional officers. | | | |
| Monitor's analysis and the factual basis for finding: | MDC has developed an adequate training program for correctional officers on MDC's policies regarding inmate discipline based on the negotiated disciplinary process and has fully employed the training. | | | |
| Recommendations: | No recommendations required at this time. | | | |

The counsel for the parties negotiated a very thorough and comprehensive disciplinary process which was completed in March 2015. The policy has been implemented.

MDC has made progress in providing documentation regarding the consultation with QMHP in the disciplinary process. However, having nearly 50% of the dismissed for technical reasons threatens to undermine the disciplinary process and should be addressed. First, MDC must analyze the dismissals to determine the cause. MDC is in Substantial Compliance with seven (7) and Partial Compliance with four (4) of the remaining eleven (11) Inmate Discipline provisions. Thus, the entire Inmate Discipline subcategory remains in Partial-Compliance. For several of the provisions in Partial Compliance, it is a matter of addressing the high rate of dismissals of cases.

**Classification**

| Paragraph | 2) Classification: D. 1) Whether MDC maintains and effectively implements policies and procedures for an appropriate, objective classification system that separates inmates in housing units by classification levels in order to protect inmates from an unreasonable risk of harm. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: 06/23/2015; 10/30/2024 | Non-Compliance: | Other: |

| Measures of Compliance: | • Related policies, procedures, written directives and practices (ICL 17.00 Classification/Screening/Housing Categories/Non- Discrimination).<br>• MDC Housing Plan.<br>• Northpointe Classification Decision Tree.<br>• JICS Reclassification Tree.<br>• Internal audits documenting to the extent the objective classification system is followed to determine housing decisions. |
|---|---|
| Steps taken by the County to Implement: | MDC has in place an objective classification system that is based on the Northpointe Classification Decision Tree. This system separate inmates in housing units by classification levels with a goal of protecting inmates from unreasonable risk of harm. |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that the objective classification system that MDC has in place is an appropriate system for separating inmates in housing units by classification levels in order to protect inmates from an unreasonable risk of harm. |
| Recommendations: | 1. Perform audits and provide them in the documentation. |

| Paragraph | 2) Classification:<br>D. 2) Whether MDC's classification system considers an inmate's security level, severity of current charges, types of prior commitments, suicide risk, history of escape attempts, history of violence, and special needs. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: 06/23/2015 | Non-Compliance: | Other: |
| Measures of Compliance: | • Related policies, procedures, written directives and practices (ICL 17.00 Classification/Screening/Housing Categories/Non- Discrimination).<br>• MDC Housing Plan.<br>• Northpointe Classification Decision Tree.<br>• JICS Reclassification Tree.<br>• Internal audits documenting to the extent the objective classification system is followed to determine housing decisions. | | | |
| Steps taken by the County to Implement: | MDC has in place an objective classification system that is based on the Northpointe Classification Decision Tree. This system takes into consideration an inmate's security level, severity of current charges, types of p r i o r commitments, suicide risk, history of escape attempts, history of violence, and special needs. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that the MDC classification system considers an inmate's security level, severity of current charges, types of prior commitments, suicide risk, history of escape attempts, history of violence, and special needs. | | | |

| Recommendations: | No recommendations required at this time. | | | |
|---|---|---|---|---|

| Paragraph | 2) Classification:<br>D. 5) Whether MDC provides ongoing internal and external review and validation of its inmate classification system to ensure its reliability and objectivity. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance:<br>11/20/2020;<br>07/02/2021;<br>06/08/2022;<br>05/07/2023;<br>08/03/2023;<br>02/23/2024 | Partial Compliance:<br>06/23/2015;<br>09/18/2018;<br>06/27/2019;<br>02/04/2020;<br>08/15/2024;<br>02/25/2025 | Non-Compliance: | Other: |
| Measures of Compliance: | • Housing audits.<br>• Corrective action plan based on the results of the housing audits.<br>• Outside review and validation of the inmate classification system.<br>• Internal audits documenting to the extent the objective classification system is reviewed and validated to ensure its reliability and objectivity.<br>• Analysis of inmates who are classified as STG to determine whether the decision is based on evidence that ensures reliability and objectivity. | | | |
| Steps taken by the County to Implement: | MDC conducts housing audits on a monthly basis. The MDC classification system has undergone an outside review and validation. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation states MDC conducts ongoing internal reviews of its inmate classification system to ensure reliability and objectivity. MDC provided documentation that the classification system has undergone an outside review and validation, but that was in 2020. A classification system should have an external audit approximately every five years. | | | |
| Recommendations: | 1. Perform audits and provide them in the documentation. Have MEAC review the audits and implement any necessary corrective action plan.<br>2. Begin the process for an external audit in 2025. | | | |

| Paragraph | 2) Classification:<br>D. 6) Whether MDC ensures that inmates requiring segregation who are high risk, security threats, seriously mentally ill, disciplinary, or reclassification are not double-celled, unless those inmates have been determined to be compatible using a reliable objective classification tool. [Doc. No. 1161, p. 64, para. 2(m). | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance:<br>06/27/2019;<br>02/04/2020<br>11/20/2020;<br>07/02/2021;<br>06/08/2022;<br>05/07/2023;<br>08/03/2023;<br>02/23/2024; | Partial Compliance:<br>06/23/2015;<br>09/18/2018 | Non-Compliance: | Other: |

| | 08/15/2024; 02/25/2025 | | | |
|---|---|---|---|---|
| Measures of Compliance: | <ul><li>Related policies, procedures, written directives and practices (ICL 17.00 Classification/Screening/Housing Categories/Non- Discrimination).</li><li>MDC Housing Plan.</li><li>Housing audits.</li><li>Analysis of incidents of violence between inmates requiring segregation who are high risk, security threats, seriously mentally ill, disciplinary, or reclassification who are double celled to determine whether the inmates were incompatible and whether the objective classification tool proved to reliable.</li><li>Internal audits documenting to the extent inmates requiring segregation who are high risk, security threats, seriously mentally ill, disciplinary, or reclassification.</li><li>Internal audits documenting whether inmates are double-celled where the inmates have not been determined to be compatible using a reliable objective classification tool.</li></ul> | | | |
| Steps taken by the County to Implement: | MDC has in place an objective classification system that is based on the Northpointe Classification Decision Tree. ICL 17.00 does not specifically state that inmates who require segregation due being high risk, security threats, seriously mentally ill, disciplinary, or reclassification are not to be double celled unless those inmates have been determined to compatible using a reliable objective classification tool. MDC conducts audits of the RHU. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has in place an objective classification system that is based on the Northpointe Classification Decision Tree. ICL 17.00 does not specifically state that inmates who require segregation due being high risk, security threats, seriously mentally ill, disciplinary, or reclassification are not to be double-celled unless those inmates have been determined to compatible using a reliable objective classification tool. However, that is the purpose of the classification system. The housing compliance rosters for the RHU revealed compliance averaged in excess of 90%. MDC revised the Classification policy to specifically incorporate this provision. | | | |
| Recommendations: | No recommendations required at this time. | | | |

| Paragraph | 2) Classification:<br>D. 7) Whether MDC ensures that segregation inmates who are in protective custody and new inmates are not double celled, unless the inmates have first been determined to be low risk and compatible using a reliable classification tool. *[Doc. No. 1161, p. 64, para. 2(m)].* | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: 06/23/2015; 09/18/2018; 06/27/2019; 02/04/2020 | Non-Compliance: | Other: |

| Measures of Compliance: | • Related policies, procedures, written directives and practices (ICL 17.00 Classification/Screening/Housing Categories/Non-Discrimination). <br> • MDC Housing Plan. <br> • Housing audits. <br> • Internal audits documenting to the extent inmates requiring segregation who are in protective custody and new inmates are not double-celled unless the inmates have first been determined to be low and compatible using a reliable classification tool. |
|---|---|
| Steps taken by the County to Implement: | MDC has in place an objective classification system that is based on the Northpointe Classification Decision Tree. ICL 17.00 does not specifically state that inmates requiring segregation who are in protective custody and new inmates are not double-celled unless the inmates have first been determined to be low risk and compatible using a reliable classification tool. |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has in place an objective classification system that is based on the Northpointe Classification Decision Tree. However, ICL 17.00 does not specifically state that inmates requiring segregation who are in protective custody and new inmates are not double-celled unless the inmates have first been determined to be low risk and compatible using a reliable classification tool. The housing compliance audits for the RHU and intake units revealed compliance averaged in excess of 90% which would include protective custody inmates. MDC revised the Classification policy to specifically incorporate this provision. |
| Recommendations: | No recommendations required at this time. |

| Paragraph | 2) Classification: <br> D. 8) Whether MDC ensures that inmates who have committed or been charged with acts of violence are not housed with inmates who have not committed or been charged with such acts by using a pre-classification triage system as recommended by the Department of Justice National Institute of Corrections (NIC). *[Doc. No. 1161, p. 64, para. 2(n)].* |
|---|---|

| Compliance Status: | Compliance: 09/19/2018; 08/15/2024; 02/25/2025 | Partial Compliance: 06/23/2015; 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024 | Non-Compliance: | Other: |
|---|---|---|---|---|

| Measures of Compliance: | • Related policies, procedures, written directives and practices (ICL 17.00 Classification/Screening/Housing Categories/Non- Discrimination).<br>• MDC Housing Plan.<br>• Housing audits.<br>• Internal audits documenting to the extent inmates who have committed or been charged with acts of violence are not housed with inmates who have not committed or been charged with such acts by using a pre-classification triage system as recommended by NIC. |
|---|---|
| Steps taken by the County to Implement: | MDC has in place an objective classification system that is based on the Northpointe Classification Decision Tree. The Northpointe Classification Decision Tree separately houses inmates who have committed or been charged with acts of violence from inmates who have not committed or been charged with such acts. |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has in place an objective classification system that is based on the Northpointe Classification Decision Tree. The Northpointe Classification Decision Tree separately houses inmates who have committed or been charged with acts of violence from inmates who have not committed or been charged with such acts. Documentation was provided that proper separation takes place in excess of 90% of the time. |
| Recommendations: | 1. Continue auditing to determine the extent inmates who have committed or been charged with acts of violence are not housed with inmates who have not committed or been charged with such acts. Monitor Frasier was advised that an armband to alert correctional officers to an inmate's status as an individual charged with a violent offense should assist in avoiding the placement of violent offenders with non-violent offenders. It is unclear whether this system has been put in place.<br>2. Incorporate the requirements of this provision in the OMS so that officers cannot assign inmates to cells occupied by inmates whose classification is incompatible. |

| Paragraph | 2) Classification:<br>D. 9) Whether MDC ensures that inmates who have not yet been classified are not housed in the same pod as inmates who require segregation, as recommended by the NIC. *[Doc. No. 1161, p. 64, para. 2(o)].* | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/15/2025 | Partial Compliance: 06/23/2015 | Non-Compliance: | Other: |

| Measures of Compliance: | • Related policies, procedures, written directives and practices (ICL 17.00 Classification/Screening/Housing Categories/Non-Discrimination).<br>• MDC Housing Plan.<br>• Compliance rosters for Fox 5, Fox 8, and RHU |
|---|---|
| Steps taken by the County to Implement: | MDC has in place an objective classification system and housing plan that does not house inmates who have not yet been classified in the same pod as inmates who require segregation. |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has in place an objective classification system and housing plan that does not house inmates who have not been classified in the same pod as inmates requiring segregation. Review of the compliance rosters provided indicated that no inmates who had not yet been classified were placed in the same pod as inmates requiring segregation. |
| Recommendations: | No recommendations required at this time. |

MDC is in Substantial Compliance with six (6) and in Partial Compliance with one (1) of the remaining seven (7) Classification provisions. The one provision in Partial Compliance are due to lack of documentation to demonstrate MDC successfully, generally, met the substantive terms and requirements of the provision in regard to internal audits of compliance with the classification policy and review of those audits by the MEAC. The entire Classification subcategory remain in Substantial Compliance as the outstanding issue is proof; not actual performance.

**Inmate Grievance Procedure**

| Paragraph | 3) Inmate Grievance Procedure:<br>E. 1) Whether MDC has adopted and effectively implements policies and procedures to ensure inmate have access to an adequate grievance process and to ensure that grievances may be accessed and filed confidentially, without requiring the intervention of a correctional officer, in accordance with generally accepted correctional standards. |
|---|---|

| Compliance Status: | Compliance:<br>09/18/2018;<br>06/27/2019;<br>02/04/2020;<br>11/20/2020;<br>07/02/2021;<br>06/08/2022;<br>05/07/2023;<br>08/03/2023;<br>02/23/2024;<br>08/15/2024;<br>02/25/2025 | Partial Compliance: | Non-Compliance:<br>09/18/2015 | Other: |
|---|---|---|---|---|
| Measures of Compliance: | • Related policies, procedures, written directives and practices (RGT 13.09 Grievance Procedures, Directive on Paper Grievance Process, HCA 12.11 Grievance Mechanism for Health Complaints).<br>• Inmate Handbook.<br>• Grievances filed. | | | |

| | |
|---|---|
| Steps taken by the County to Implement: | MDC has adopted and implemented policies and procedures (RGT 13.09 Grievances Procedures, Directive on Paper Grievance Process, HCA 12.11 Grievance Mechanism for Health Complaints) which state inmates are to have access to a grievance process where grievances may be accessed and filed confidentially, without requiring the intervention of a correctional officer. |
| Monitor's analysis and the factual basis for finding: | MDC 's documentation demonstrates, and observation confirms that a grievance process is in place where inmates may utilize the grievance kiosk, grievance hot line, paper, and tablets to access grievances and file grievances confidentially without requiring the intervention of a correctional officer. Concerns regarding the ability of inmates who have difficulty utilizing the grievance system are addressed in provision 3) E.4). Concerns about lack of access to the grievance system due to the lack of out of cell time and the hoarding of the tables has not been borne out by the number of grievances filed when the population is taken into consideration. The number of grievances filed is not the sole indicator of access to the grievance system. During this monitoring period, there has been an effort to address issues being raised by grievances regarding the inmate population in general so as reduce the need to file grievances. The vast majority of the grievances filed related to medical care and the lack of response to those grievances. Quality of responses and timeliness appears to be the issue as opposed to ability to file grievances. Interviews of inmate during the on-site visits revealed that they are able to file grievances, but often feel as if the grievance is dealt with on technical grounds as opposed to dealing with the substance of the grievance. |
| Recommendations: | 1. Increased out of cell time and addressing the hoarding of tables will further increase access. |

| | |
|---|---|
| Paragraph | 3) Inmate Grievance Procedure:<br>E. 2) Whether MDC has adopted and effectively implements policies and procedures to ensure that the grievances receive appropriate follow-up, including, providing a timely written response that explains to the grievant the reason(s) for the outcome and tracking implementation of resolutions. |

| Compliance Status: | Compliance: 11/20/2020 | Partial Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 07/02/2021; 06/08/2022 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Non-Compliance: 09/18/2015 | Other: |
|---|---|---|---|---|
| Measures of Compliance: | • Related policies, procedures, written directives and practices (RGT 13.09 Grievance Procedures, Directive on Paper Grievance Process, HCA 12.11 Grievance Mechanism for Health Complaints).<br>• Inmate Handbook.<br>• Monthly Grievance Report. | | | |

23

| Steps taken by the County to Implement: | MDC has adopted and implemented policies and procedures (RGT 13.09 Grievances Procedures, HCA 12.11 Grievance Mechanism for Health Complaints) which outline what follow-up is to be taken and the timeline for written responses. The policies require an explanation to the grievant of the reasons for the outcome and that the implementation of resolutions is to be tracked. MDC has implemented an extensive audit of grievances for timeliness and responsiveness. |
|---|---|
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that the policies and procedures outline that grievances are to receive appropriate follow-up, including providing a timely written response that explains to the grievant the reasons for the outcome and requires that the implementation of the resolutions be tracked. MDC has expended a tremendous effort to audit not only the timeliness of the grievances, but also the responsiveness. There are still grievances that are not being responded to within the 10 days set out in the policy and appeals that take longer than the 5 days set out in the policy. The main problem with the grievance system is the number of grievances that are listed as unfounded, but no reason is given for the decision. The number of grievances not addressed because they are classified as duplicates or not to be grievable is concerning. |
| Recommendations: | 1. Continue development and implementation of system to follow-up on grievances and appeals that are not timely responded to in accordance with the policy and where the explanation of the reasons for the outcome is lacking to determine whether there is a pattern as far as the individuals or areas involved and develop an action plan to address. While it is appropriate to have high level officials respond to grievances, it may also result in untimeliness due to the volume of duties of the official. <br> 2. There are a large number of grievances which are closed after having been found to not be grievable. Consider analyzing what the issues are and educating the inmates on how to file proper grievances. <br> 3. The percentage of grievances closed as being unfounded for which no reason is given is unacceptable. Without a meaningful response, it is difficult to tell whether the grievance was given due consideration. |

| Paragraph | 3) Inmate Grievance Procedure: <br> E. 3) Whether MDC ensures that grievance forms are available on all units and are available in Spanish. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: 09/26/2018 | Non-Compliance: 09/18/2015 | Other: |

| Measures of Compliance: | • Related policies, procedures, written directives and practices (RGT 13.09 Grievance Procedures, Directive on Paper Grievance Process, HCA 12.11 Grievance Mechanism for Health Complaints).<br>• Inmate Handbook.<br>• Inmate Grievance Form in Spanish. |
|---|---|
| Steps taken by the County to Implement: | MDC has adopted and implemented RGT 13.09 Grievances Procedures which provides that the grievances form is available on the kiosk in Spanish. Grievance forms are available in Spanish, kiosk instructions are provided in Spanish, and pod instructions are posted in Spanish. Spanish speaking inmates who are unable to utilize those methods are assisted by caseworkers. |
| Monitor's analysis and the factual basis for finding: | On-site observation demonstrated that the grievance form is available on the tablets in Spanish. Paper grievance forms are available in both English and Spanish. Spanish speakers who are unable to utilize the tablets or grievance forms due to literacy issues, are assisted by the social services coordinators. |
| Recommendations: | 1. Paper grievance forms, in both English and Spanish, should be readily available in housing units without having to request a grievance form from a corrections officer. |

| Paragraph | 3) Inmate Grievance Procedure:<br>    E. 4) Whether MDC ensures that there is adequate opportunity for illiterate inmates, inmates who have physical, mental, or cognitive disabilities, and inmates who are not English speakers to access the grievance system. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020 | Non-Compliance: 09/18/2015 | Other: |
| Measures of Compliance: | • Related policies, procedures, written directives and practices (RGT 13.09 Grievance Procedures, Directive on Paper Grievance Process, HCA 12.11 Grievance Mechanism for Health Complaints).<br>• Inmate Handbook.<br>• Grievances filed.<br>• Identification of inmates requiring assistance to file grievances.<br>• Assistance provided by social services coordinators. | | | |

| Steps taken by the County to Implement: | MDC has adopted and implemented RGT 13.09 Grievances Procedures which provides a process for inmates who are illiterate, who have physical, mental, or cognitive disability, and/or who are not English speakers to access the grievance system. MDC has significantly expanded its efforts to identify inmates who may need assistance. |
|---|---|

| | |
|---|---|
| Monitor's analysis and the factual basis for finding: | MDC's documentation and on-site review demonstrates that the policy provides a process for inmates who are illiterate, who have physical, mental, or cognitive disability, and/or who are not English speakers to access the grievance system. MDC uses the social services coordinators to work with individuals with disabilities and otherwise requires accommodation to file grievances. They also provide orientation for the identified inmates. Once inmates are identified, documentation demonstrates that a good job is done assisting the inmates. MDC has done a good job of identifying and flagging these individuals in the EJUS. Social services coordinators are required to check in with the individuals on a frequent basis whether or not the inmate has made a specific request for assistance. In addition, the social service coordinators visit each housing unit at least once per week. |
| Recommendations: | No recommendations required at this time. |

| | | | | |
|---|---|---|---|---|
| Paragraph | 3) Inmate Grievance Procedure:<br>    E. 5) Whether a member of MDC management staff reviews the grievance tracking system regularly in order to identify areas of concern and takes adequate corrective action, as needed, to improve its grievance system. | | | |
| Compliance Status: | Compliance: 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023 02/23/2024; 02/25/2025 | Partial Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 08/15/2024 | Non-Compliance: 9/18/2015 | Other: |
| Measures of Compliance: | • Related policies, procedures, written directives and practices (RGT 13.09 Grievances Procedures, Directive on Paper Grievance Process, HCA 12.11 Grievance Mechanism for Health Complaints).<br>• Grievances filed.<br>• Monthly Grievance Report.<br>• Notes of MEAC meetings outlining steps taken to resolve areas of concern and improve the grievance system in response to the Monthly Grievance report. | | | |
| Steps taken by the County to Implement: | MDC has adopted and implemented RGT 13.09 Grievances Procedures which provides that a member of MDC management staff is to review the grievance tracking system monthly to identify any areas of concern and to take necessary corrective action to improve the grievance system. The data included in the Monthly Grievance Report for the reporting period is a very significant improvement over the data that was collected and reviewed before. MEAC meetings were held regularly during the compliance period. In August 2024, Warden Smith ordered an intense review of the grievance system based on the results of the Monthly Grievance Reports. | | | |

| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has a monthly report entitled MDC Monthly Grievance Report and the policy provides that a member of MDC management staff is to review the grievance tracking system monthly to identify any areas of concern and to take necessary corrective action to improve the grievance system. Documentation was provided that the Monthly Grievance Report is reviewed and discussed at the MEAC, and MEAC held on a regular basis during the compliance period. Warden Smith ordered an intense review of the grievance system in August 2024 and MDC has developed a plan of action to address the shortcomings noted which has resulted in the rating being raised to Substantial Compliance. Monitor Frasier has also participated in the discussion with MDC leadership about efforts to improve the grievance processed. There continue to be areas to be addressed as reflected in the rating of other grievance provisions. |
| Recommendations: | 1.   Continue to address the deficiencies in the grievance system. |

| Paragraph | 3) Inmate Grievance Procedure: |
|---|---|
| | E. 6) Whether MDC developed and employs an effective training program regarding inmate grievances. *[Doc. No 1161 at p. 5, para. 2(j).]* |

| Compliance Status: | Compliance: 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024 02/25/2025 | Partial Compliance: 09/18/2018; 06/27/2019; 02/04/2020 | Non-Compliance: 9/18/2015 | Other: |
|---|---|---|---|---|
| Measures of Compliance: | • Related policies, procedures, written directives and practices (RGT 13.09 Grievances Procedures, Directive on Paper Grievance Process, HCA 12.11 Grievance Mechanism for Health Complaints).<br>• Grievance training program. | | | |
| Steps taken by the County to Implement: | MDC has developed a training program regarding inmate grievances. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has developed and employed a training program regarding inmate grievances. The effectiveness of the training program is reflected in the improvement in the quality of responses and timeliness. | | | |
| Recommendations: | No recommendations required at this time. | | | |

| Paragraph | 3) Inmate Grievance Procedure: |
|---|---|
| | E. 7) Whether MDC ensures that staff receive adequate training in MDC's policies regarding grievances. *[Doc. No. 1161 at p. 5, para. 2(j)]* |

| Compliance Status: | Compliance: 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: 09/18/2018; 06/27/2019; 02/04/2020 | Non-Compliance: 09/19/2015 | Other: |
|---|---|---|---|---|
| Measures of Compliance: | <ul><li>Related policies, procedures, written directives and practices (RGT 13.09 Grievances Procedures, Directive on Paper Grievance Process, HCA 12.11 Grievance Mechanism for Health Complaints)</li><li>Grievance training program.</li><li>Documentation of attendance at grievance training program.</li></ul> | | | |
| Steps taken by the County to Implement: | MDC has developed a training program regarding inmate grievances. MDC requires attendance of staff at the training program on grievances. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has developed and employed a training program regarding inmate grievances and requires staff attendance. The adequacy of the training program, which included specific training and counseling for supervisors, is reflected in the improvement in the quality of responses and timeliness. | | | |
| Recommendations: | No recommendations required at this time. | | | |

| Paragraph | 3) Inmate Grievance Procedure: E. 8) Whether MDC ensures inmate grievances are screened for allegations of staff misconduct and abuse or mistreatment, if the incident or allegation meets established criteria, are referred for investigation. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: | Partial Compliance: 02/04/2020 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Non-Compliance: 09/18/2015; 09/18/2018; 06/27/2019 | Other: |
| Measures of Compliance: | <ul><li>Related policies, procedures, written directives and practices (RGT 13.09 Grievances Procedures, PER 3.35 Investigations Into Complaints Employee Misconduct).</li><li>Grievances filed.</li><li>Documentation of review of grievances for allegations of staff misconduct, abuse or mistreatment and application of criteria for referral for investigation.</li><li>Review of investigations which are based on Grievances that are referred for investigation.</li></ul> | | | |

| Steps taken by the County to Implement: | MDC has adopted and implemented RGT 13.09 Grievances Procedures and PER 3.35 Investigations Into Complaints of Employee Misconduct. RGT 13.09 includes a process for forwarding allegations of sexual abuse for investigation. PER 3.35 provides a process for inmates to file complaints about staff misconduct. A memo delegates the screening and screening and referral responsibility to the Director of Policy and Compliance but does not establish the criteria upon which the decision is to be made. |
|---|---|
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates cases that were investigated by the Office of Professional Standards (OPS) based on referrals from grievances that involved allegations of staff misconduct. Grievances alleging inappropriate use of force are reviewed by the Use of Force Review Panel and referred to OPS when appropriate. Policies require referral of allegations of staff misconduct for investigation. The documentation provided continues to indicate that the grievances are being unfounded or found to not be grievable instead of referring to OPS or other proper individual for investigation. |
| Recommendations: | 1. Provide in RGT 13.09 and/or PER 3.35 or other appropriate policy the process by which grievances are to be screened for allegations of staff misconduct, abuse or mistreatment and the criteria to be used for referral for investigation. The decision- making tree has already been developed; it just needs to be incorporated in policy or procedure. There is a memorandum, but it should be in policy. <br> 2. Develop and implement a method for tracking, review and referral of allegations of staff misconduct for investigation. This can be as simple as a check box on the referral form that it based on an allegation contained in a grievance. <br> 3. Referrals of misconduct contained in grievances should not be referred back to the same person about whom the grievance is made; including the grievance coordinator. |

| Paragraph | 3) Inmate Grievance Procedure: <br> E. 9) Whether incident reports regarding allegations of staff misconduct and abuse or mistreatment are provided to quality assurance staff and reported on by the quality assurance system to determine if the system of inmate grievance is functioning properly. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: | Partial Compliance: 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Non-Compliance: 09/18/2015; 09/18/2018; 06/29/2019 | Other: |

| Measures of Compliance: | • Related policies, procedures, written directives and practices (RGT 13.09 Grievances Procedures, PER 3.35 Investigations Into Complaints Employee Misconduct).<br>• Incident reports provided to quality assurance staff that contain allegations of staff misconduct, abuse, or mistreatment and the reports generated by the quality assurance.<br>• Grievances containing allegations of staff misconduct, abuse or mistreatment.<br>• Grievances that are referred for investigation.<br>• Monthly Grievance Report. |
|---|---|
| Steps taken by the County to Implement: | MDC has adopted and implemented RGT 13.09 Grievances Procedures and PER 3.35 Investigations Into Complaints of Employee Misconduct. RGT 13.09 includes a process for forwarding allegations of sexual abuse for investigation. PER 3.35 provides a process for any staff member to refer complaints about staff misconduct and contains a duty to report. The MDC Monthly Grievance Report indicates if allegations of staff misconduct are received by Grievance Hotline. When a grievance is received alleging staff misconduct, part of the investigative process is to determine whether there is a related incident report. |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates cases were investigated by the Office of Professional Standards (OPS) that involved allegations of staff misconduct. Cases were reviewed which were based on allegations in grievances. Other cases were reviewed that were based on incident reports. In fact, policy requires an incident report to be prepared if a staff member becomes aware of an allegation of misconduct or possible misconduct. While policy does not specifically state that incident reports are to be provided to quality assurance staff that contain allegations of staff misconduct, abuse, or mistreatment, the process is taking place. |
| Recommendations: | 1. Provide in RGT 13.09, PER 3.35, or other appropriate policy the process by which incident reports regarding allegations of staff misconduct, abuse or mistreatment are provided to quality assurance staff, the criteria the quality assurance staff is to use for determining if the inmate grievance system is functioning properly, and the method for reporting this information.<br>2. Develop and implement a method for tracking provision of incident reports regarding allegations of staff misconduct, abuse or mistreatment to quality assurance staff and reported on by the quality assurance system to determine if the inmate grievance system is functioning properly. |

MDC is in Substantial Compliance with six (6) and Partial Compliance with three (3) of the nine (9) Inmate Grievances provisions. The provisions in Partial Compliance are due to lack of documentation to demonstrate MDC has successfully, generally, met the substantive terms and requirements of the provision. Documentation notes significant progress towards the implementation of an adequate grievance system; thus, the entire Inmate Grievance subcategory remains in Partial Compliance. The items which remain in Partial Compliance are ones which are essential to an effective grievance system.

**Safety and Supervision**

| Paragraph | 4) Safety and Supervision: F. 1) Whether MDC has adopted and effectively implements security and control-related policies, procedures, and practices, including but not limited to effective training, that will result in a reasonably safe and secure environment for all inmates and staff, in accordance with generally accepted correctional standards. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: | Partial Compliance: 06/23/2015; 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020; 07/2/2021; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Non-Compliance: 06/08/2022; 05/07/2023 | Other: |
| Measures of Compliance: | • Related policies, procedures, written directives and practices (SEC 8.00-8.55).<br>• Training on security and control-related policies.<br>• Incident reports related to inmate safety and security.<br>• Investigation involving extent security and control-related policies are adhered to by staff.<br>• Audits of security rounds (15-minute, routine welfare, and supervisor).<br>• Analysis of incidents in which the safety and security of inmates and staff has been endangered to determine whether the policies, procedures, and practices and training are being adhered to by staff and whether they are effective in providing for a reasonably safe and secure environment for all inmates and staff. | | | |
| Steps taken by the County to Implement: | MDC implemented security and control-related policies and procedures in SEC 8.00-8.55 and training on pertinent policies. MDC conducts self-audits of compliance and some of the provisions of the policies. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC, in accordance with generally accepted correctional standards, has adopted an extensive set of security and control-related policies, procedures, and practices and provides training on the security and control-related policies, procedures, and practices. MDC's self-audits and on-site observation by the Monitor demonstrate that adherence to the policies continued to improve during the compliance period. Self-audits that were provided indicate that adherence is between 86-93% with an average of 90% for the 15-minute round of special management inmates who require more intensive supervision for security and safety reasons. This is in line with the average from the last monitoring period when it was an average of 90%. For routine welfare checks, the audit indicates that adherence is between 68-74% with an average of 71% over the compliance period. This is in line with the average percentage of 71% reported in Report | | | |

| | |
|---|---|
| | #19. While this percentage still does constitute substantial compliance, it does show that MDC has sustained then improvement and expected to improve as staffing increases. It should be noted that the audit uses an all or none approach. If an officer does perform an entire round, the officer does not get credit for it. During on-site visits, the Monitor often saw other staff in the housing units providing supervision who did not conduct a welfare check round in a manner that would allow for credit under the audit, but whose presence did enhance the safety and security of the housing unit. While there are multiple policies involved in meeting the criteria of this provision, adherence to the policies in the area of supervision of inmates is a main focus due to its impact on inmate safety. There was data provided as to the number of assaults and altercations between inmates. During Q1-Q2 2024, there were 77 and 95 inmate on inmate altercations which required a use of force, respectively. For Q3-Q4 2024, there were 105 and 100 inmate on inmate altercations which required a use of force. While the increase is concerning, it may be due to the increased presence of staff who observe altercations and inmates having more time out of cell which provides an opportunity to confront other inmates. MDC has made a tremendous effort to recruit staffing, and the results of those efforts continue to be reflected during this compliance period. Also important is the deployment of security staff from other areas to perform tasks in the housing units including routine wellness checks and time out of cell. Security checks (although there still is room for significant improvement in routine wellness checks) now occur with the frequency required to warrant Partial Compliance. |
| Recommendations: | 1. Develop and implement a method for reporting aggregate data on adherence to security and control-related polices based on investigations, discipline (including that administered at the captain's level) and use of force reviews.<br>2. Thoroughly analyze incidents in which the safety and security of inmates and staff has been endangered to determine if there was a failure to follow the policies, procedures, and practices and training or if changes need to be made to the policies, procedures, and practices and training. Simply charting in which unit and the area of the unit an assault occurred is not sufficient. Attention should be paid to whether there was a correctional officer in the unit at the time of the assault and/or incident and whether the correctional officer was attentive.<br>3. Adequately staff housing units and perform timely security and welfare rounds. |

| | |
|---|---|
| Paragraph | 4) Safety and Supervision:<br>F. 2) Whether MDC has adopted and effectively implements policies, procedures, and practices to ensure the adequate supervision of inmate work areas and trustees, in accordance with generally accepted correctional standards. |

| Compliance Status: | Compliance: | Partial Compliance: 06/23/2015; 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Non-Compliance: | Other: |
|---|---|---|---|---|
| Measures of Compliance: | <ul><li>Related policies, procedures, written directives and practices (SEC 8.06 Staffing and Around the Clock Supervision).</li><li>Training on SEC 8.06.</li><li>Incident reports related to inmate work areas and trustees.</li><li>Internal audits documenting to the extent the SEC 8.06, with the amendment recommended, is adhered to by staff.</li><li>Analysis of incidents related to inmate work areas and trustees to determine whether policies regarding supervision of inmate workers are being adhered to by staff.</li></ul> | | | |
| Steps taken by the County to Implement: | MDC implemented SEC 8.06 which provides for an officer to be assigned to the kitchen area when inmate workers are present. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that SEC 8.06 provides that an officer is to be assigned to the kitchen area when inmates are present. SEC 8.06 does not address other inmate work areas and trustees even though there are other inmate work areas and trustees throughout the facility. The documentation demonstrates that MDC has made significant progress towards meeting the substantive terms and requirements of the provision. Lacking are policies, procedures, and practices regarding inmate work areas and trustees other than the kitchen workers. MDC provided documentation that indicated there was only one inmate on inmate incident in the kitchen unit during the reporting period that required and it did not require the use of force. Thus, still lacking is the necessary analysis of incidents involving inmate work areas and trustees to determine whether the policies, procedures and practices are being adhered to by staff and whether they are effective in providing for adequate supervision of inmate work areas and trustees. | | | |
| Recommendations: | 1. Amend SEC 8.06 to address the supervision of inmate work areas and trustees outside of the kitchen area.<br>2. Analyze incidents involving inmate work areas and trustees to determine if there was a failure to follow the policies, procedures, and practices or if changes need to be made to the policies, procedures, and practices. If there are no incidents to analyze, state that fact. | | | |

| Paragraph | Safety and Supervision:<br>F. 3) Whether MDC ensures that security staff appropriately monitor inmates to ensure that they are reasonably safe and secure, including but not limited:<br>• Whether rounds are conducted with sufficient frequency to provide inmates with reasonable safety.<br>• Whether MDC provides direct supervision of inmates by posting an adequate number of correctional officers inside the day room area of a housing unit to conduct constant surveillance.<br>• Whether more frequent rounds are conducted for special management inmates who require move intensive supervision for security and safety reasons.<br>• Whether all security rounds are accurately documented on forms or logs that do not contain preprinted rounding times. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: | Partial Compliance:<br>06/23/2015;<br>09/18/2018;<br>02/04/2020;<br>11/20/2020;<br>07/02/2021;<br>08/03/2023;<br>02/23/2024;<br>08/15/2024;<br>02/25/2025 | Non-Compliance:<br>06/27/2019;<br>06/08/2022;<br>05/07/2023 | Other: |
| Measures of Compliance: | • Related policies, procedures, written directives, and practices (SEC 8.06 Staffing and Around the Clock Supervision, SEC 8.08 Records, Logs, and Forms).<br>• Training on policies related to monitoring of inmates, direct supervision, and recording of security rounds.<br>• Internal audits documenting to the extent rounds are conducted in conformance with policy and the staffing plan is adhered to by supervisors.<br>• Documentation of security rounds on forms or logs that do not contain preprinted rounding times.<br>• Documentation of corrective action taken for failure to adhere to policy on timely conducting security rounds and recording them. | | | |
| Steps taken by the County to Implement: | MDC has implemented SEC 8.06 and SEC 8.08 which provide for the timing of security rounds, direct supervision, and the recording of security rounds, and provides training on these policies. MDC conducts self-audits. | | | |

| | |
|---|---|
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC, in accordance with generally accepted correctional standards, has adopted an extensive set of security and control-related policies, procedures, and practices and provides training on the security and control-related policies, procedures, and practices. MDC's self-audits and on-site observation by the Monitor demonstrate that adherence to the policies continued to improve during the compliance period. Self-audits that were provided indicate that adherence is between 86-93% with an average of 90% for the 15-minute round of special management inmates who require more intensive supervision for security and safety reasons. This is in line with the average from the last monitoring period when it was an average of 90%. For routine welfare checks, the audit indicates that adherence is between 68-74% with an average of 71% over the compliance period. This is in line with the average percentage of 71% reported in Report #19. While this percentage still does constitute substantial compliance, it does show that MDC has sustained then improvement and expected to improve as staffing increases. It should be noted that the audit uses an all or none approach. If an officer does perform an entire round, the officer does not get credit for it. During on-site visits, the Monitor often saw other staff in the housing units providing supervision who did not conduct a welfare check round in a manner that would allow for credit under the audit, but whose presence did enhance the safety and security of the housing unit. While there are multiple policies involved in meeting the criteria of this provision, adherence to the policies in the area of supervision of inmates is a main focus due to its impact on inmate safety. There was data provided as to the number of assaults and altercations between inmates. During Q1-Q2 2024, there were 77 and 95 inmate on inmate altercations which required a use of force, respectively. For Q3-Q4 2024, there were 105 and 100 inmate on inmate altercations which required a use of force. While the increase is concerning, it may be due to the increased presence of staff who observe altercations and inmates having more time out of cell which provides an opportunity to confront other inmates. MDC has made a tremendous effort to recruit staffing, and the results of those efforts continue to be reflected during this compliance period. Also important is the deployment of security staff from other areas to perform tasks in the housing units including routine wellness checks and time out of cell. Security checks (although there still is room for significant improvement in routine wellness checks) now occur with the frequency required to warrant Partial Compliance. |
| Recommendations: | 1. Continue to implement audit schedules and formats to determine the extent to which the security rounds are being posted accurately.<br>2. Assure that corrective action plans are developed to address the findings in the audits regarding the timely conducting and logging of security rounds including analyzing routine welfare checks that are not made timely to determine cause and possible trends. Particularly address the audits that reveal compliance less than one-third of the time.<br>3. Adequately staff housing units and perform timely security and welfare rounds. |

| Paragraph | 4) Safety and Supervision: F. 4) Whether MDC ensures that security supervisors conduct daily rounds in the inmate housing units and document the results of their inspections. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: 02/25/2025 | Partial Compliance: 06/23/2015; 09/15/2018; 02/04/2020; 11/20/2020; 07/2/2021; 06/08/2022; 05/07/2023; 08/03/2023; 08/15/2024 | Non-Compliance: 06/27/2019; 02/23/2024 | Other: |
| Measures of Compliance: | • Related policies, procedures, written directives and practices (SEC 8.06 Staffing and Around the Clock Supervision, SEC 8.08 Records Logs, and Forms).<br>• Training on policies related to unannounced rounds by security supervisors.<br>• Internal audits documenting to the extent rounds are conducted in conformance with policy as amended.<br>• Documentation of unannounced security rounds by security supervisors and the documentation of the results of their inspections.<br>• Documentation of corrective action taken for failure to adhere to policy on conducting security rounds by supervisors and documenting the results of their inspections. | | | |
| Steps taken by the County to Implement: | MDC has implemented SEC 8.06 and SEC 8.08 which require supervisors to conduct unannounced rounds and recording of the rounds in the housing unit logs. Training is provided that states that supervisors are to conduct two rounds each shift and document them on the housing unit logs. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that SEC 8.06 is deficient in that it does not specify that the security rounds are to be conducted daily as required by the Settlement Agreement or that the results of the inspection are to be documented. However, that is how the policy is implemented. MDC's self-audits demonstrate that adherence to the policy has improved. Self-audits indicate that average adherence ranged 82% to 94% compliance with an average of 89.61%. This area continues to show improvement from the average of 75% for Report #19 and 65% for Report #18. Consistent adherence can be attributed to MDC having enacted a number of corrective actions to address compliance with the daily supervisor rounds. The average would probably be higher if documentation improved, and, in reality, the supervisors are often in the housing units performing the duties of corrections officers. | | | |

| Recommendations: | 1. Amend SEC 8.06 to specify that security rounds are to be conducted at least once per shift and that the security round and the results of the inspection are to be documented. |
| | 2. Continue to implement audit schedules and formats to determine the extent to which the inspections are being conducted at least daily by supervisors and that the results of the inspections are being documented. |
| | 3. Assure that corrective action plans are developed to address the findings in the audits regarding the timely conducting and logging of supervisors conducting inspections at least daily and documenting the results of the inspections including analyzing checks that are not timely made to determine cause and possible trends. |

| Paragraph | 4) Safety and Supervision: F. 5) Whether the number and nature of assaults and altercations indicates that the MDC is providing an environment that is reasonably safe for inmates. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: | Partial Compliance: 06/23/2015; 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 08/15/2024; 02/25/2025 | Non-Compliance: 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024 | Other: |
| Measures of Compliance: | • Related policies, procedures, written directives and practices (SEC 8.00-8.55). <br> • Training in security and control-related policies. <br> • Incident reports related to inmate safety and security. <br> • Internal audits documenting the extent the security and control-related policies are adhered to by staff. <br> • Analysis of incidents in which the safety and security of inmates and staff has been endangered to determine whether the policies, procedures, and practices and training are being adhered to by staff and whether they are effective in providing for a reasonably safe and secure environment for all inmates and staff. | | | |
| Steps taken by the County to Implement: | MDC implemented security and control-related policies and procedures in SEC 8.00- 8.55 and training on pertinent policies. MDC conducted limited self-audits of compliance with some of the provisions of the policies. | | | |
| Monitor's analysis and the factual basis for finding: | During Q1-Q2 2024, there were 77 and 95 inmate on inmate altercations which required a use of force, respectively. For Q3-Q4 2024, there were 105 and 100 inmate on inmate altercations which required a use of force. While the increase is concerning, it may be due to the increased presence of staff who observe altercations and inmates having more time out of cell which provides an opportunity to confront other inmates. No documentation was provided for inmate altercations which did not require the use of force. The staffing level has improved due to hiring efforts and redeployment of security staff from other areas. Based on experience, the Monitor finds that averaging less than one assault or altercation per day in a facility holding over 1500 inmates indicates that MDC has made significant progress towards an | | | |

| | environment that is reasonably safe for inmates. Thus, the rating of this provision continues to be in Partial Compliance. Now that the number of assaults and incidents are clearer, MDC is encouraged to determine what steps could have taken which would have prevent the assault from occurring and develop action plans to reduce the rate of occurrence. |
|---|---|
| Recommendations: | 1. Thoroughly analyze incidents in which assaults and altercations have occurred to determine to determine what steps could have taken which would have prevent the assault and altercations from occurring and develop action plans to reduce the rate of occurrence.<br>2. Provide the raw data of inmate assaults and altercations so that comparison can be made to determine improvement. |

MDC is in Substantial Compliance with one (1) provision and Partial Compliance with four (4) of the Safety and Supervision provisions. The Safety and Supervision subcategory is in Partial Compliance.

**Contraband Control**

| Paragraph | 5) Contraband Control:<br>G. 1) Whether MDC maintains and effectively implements procedures to prevent inmates from possessing or having access to dangerous contraband, including conducting regular inspections of cells and common areas of the housing units to identify and prevent rule violations by inmates. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: 02/25/2025 | Partial Compliance: 03/23/2015; 09/19/2018; 06/27/2019; 02/04/2020; 11/20/2020; 07/2/2021; 08/15/2024 | Non-Compliance: 06/08/2022; 05/07/2023; 08/03/2023 02/23/2024 | Other: |
| Measures of Compliance: | • Related policies, procedures, written directives and practices (SEC 8.13 Exiting and Re-entering the Facility (Inmates), Exiting and Entering All Areas; 8.14 Searches of the Facility, Inmates, Visitors, and Employees; SEC 8.14-1 Searches of the Facility—Authorized/Unauthorized Cell Items and Cell Order; SEC 8.15 Searches—Secured Perimeter Entrances; SEC 8.16 Criminal Possession of Contraband; SEC 8.17 Inmate Searches).<br>• Training on contraband control and cell searches.<br>• Incident reports related to contraband discovered.<br>• Documentation of cell searches including date, length of time to conduct the search, and contraband discovered.<br>• Analysis of contraband discovered, including determining the source of the contraband, to determine whether the policies, procedures, and practices and training are being adhered to by staff and whether they are effective in preventing inmates from possessing or having access to dangerous contraband. | | | |
| Steps taken by the County to | MDC maintains policies and procedures, SEC 8.13, SEC 8.14, SEC 8.12-1, SEC 8.15, SEC 8.16, and SEC 8.17, aimed at preventing inmates from | | | |

| | |
|---|---|
| Implement: | possessing or having access to dangerous contraband which include inspections of cells and common areas of the housing units to identify and prevent rule violations by inmates. No indication that they were partially or substantially implemented or practiced during this monitoring period. |
| Monitor's analysis and the factual basis for finding: | MDC provided documentation for contraband found through strip searches and cell searches for the housing units during the compliance period. Detention Officers are required to search eight cells during their. The documentation for this monitoring period included expanded information as to the source and what type of search resulted in the contraband being discovered. Accepted correctional practice is that each housing unit should be searched, as a whole, once a month. The documentation provided demonstrated that routine searches are now in concert with targeted searches are occurring with sufficient frequency. MDC has begun the necessary analysis of incidents in which contraband has been discovered to determine the source of the contraband and whether the policies and procedures are effective. The improvement warrant the provision being rated in Substantial Compliance. MDC has identified that the source of narcotics is often newly admitted inmates. MDC is working with its contractor to improve its performance in the reading of the body scan of newly admitted inmates. |
| Recommendations: | 1. Amend SEC 8.14 and/or SEC 8.14-1 to specify the frequency at which cell searches/inspections are to be performed and that a report is to be prepared on the results of the cell searches/inspections which include the date, length of time to conduct the search, and contraband discovered. At a minimum, each housing unit should be searched once a month. |
| | 2. Analyze contraband discovered, including determining the source of the contraband, to what extent policies, procedures, and practices, and training should be altered to be effective in preventing inmates from possessing or having access to dangerous contraband. |

| | |
|---|---|
| Paragraph | Contraband Control: <br><br> G. 2) Whether MDC has purchased and uses security equipment that is capable of detecting drugs and other forms of contraband from coming into the facility. <br><br> • Whether MDC ensures that all inmates, staff, and visitors are properly screened through the use of MDC's security equipment before entering the secure area of the facility. <br><br> • Whether MDC has purchased and uses drug scanning security equipment for the mailroom in order to properly screen all incoming mail and packages. <br><br> • Whether MDC maintains in working order sufficient monitoring equipment at the facility, including cameras, alarms, radios (handheld), interior and exterior lighting, x-ray and other screening equipment and walk-though metal protectors. |

| Compliance Status: | Compliance: 11/20/2020; 07/2/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: 03/23/2015; 09/18/2018; 06/27/2019; 02/04/2020 | Non-Compliance: | Other: |
|---|---|---|---|---|
| Measures of Compliance: | <ul><li>Related policies, procedures, written directives and practices (SEC 8.13 Exiting and Re-entering the Facility (Inmates), Exiting and Entering All Areas; 8.14 Searches of the Facility, Inmates, Visitors and Employees; SEC 8.14-1 Searches of the Facility—Authorized/Unauthorized Cell Items and Cell Order; SEC 8.15 Searches—Secured Perimeter Entrances; SEC 8.16 Criminal Possession of Contraband; SEC 8.17 Inmate Searches).</li><li>Training on the use of screening and monitoring equipment.</li><li>Documentation of the purchase and use of drug scanning security equipment for the mailroom to properly screen all incoming mail and packages.</li><li>Documentation of monitoring equipment at the facility and the results of inspections of the equipment and any needed repairs.</li><li>Analysis of contraband discovered, including whether the contraband could or should have been detected by the security equipment to prevent introduction into the facility and whether any change needs to be made to equipment or policy/procedure.</li></ul> | | | |
| Steps taken by the County to Implement: | MDC has implemented policies and procedures related to the use of security equipment (SEC 8.13, SEC 8.14, SEC 8.12-1, SEC 8.15, SEC 8.16, and SEC 8.17) that is capable of detecting drugs and other forms of contraband to prevent entry into the facility. MDC maintains the monitoring equipment. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation and on-site observation demonstrates that MDC has purchased and uses security equipment that is capable of detecting drugs and other forms of contraband to prevent entry into the facility. The drug scanning machine for the mailroom has been previously observed. It allows the mailroom to properly screen all incoming mail and packages. As part of the analysis of contraband recommended in G. 1., included should be whether the contraband could or should have been detected by the security equipment to prevent introduction into the facility and whether any change needs to be made to equipment or policy/procedure. MDC has identified that the source of narcotics is often newly admitted inmates. MDC is working with its contractor to improve its performance in the reading of the body scans of newly admitted inmates. | | | |
| Recommendations: | No recommendations required at this time other than including whether the equipment should have detected the contraband as part of analysis of contraband discovered. | | | |

MDC is now in Substantial Compliance with two (2) of the two (2) Contraband Control provisions. While the documentation of the discovery of contraband and the analysis of contraband discovered to determine the likely source and the necessary changes in equipment, policy/procedure, and/or training to address the findings has improved, there is still improvement to be had. The Contraband Control subcategory is now in Substantial

Compliance.

**Staffing**

| Paragraph | 6.) Staffing: *[Doc. Nos. 1004 at p.2, para. 1(h), 1161, p. 6, para. 2(p)]* K. 1) Whether MDC's correctional officer staffing and supervision levels at the facility are adequate to supervise inmates, protect inmates and staff, and allow for the safe operation of the facility, consistent with generally accepted correctional standards. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: | Partial Compliance: 09/18/2015; 09/18/2018; 06/27/2019 02/04/2020; 11/20/2020; 07/02/2021; 08/15/2024; 02/25/2025 | Non-Compliance: 06/08/2022 05/07/2023; 08/03/2023; 02/23/2024 | Other: |
| Measures of Compliance: | • Staffing analysis performed in 2013 and updated in 2016 and 2023. • Related policies, procedures, and practices. • Analysis of incidents to determine whether correctional officer staffing and supervision levels have been a factor in allowing the incident to occur. This should include incidents where cross-gender supervision appears to have been a factor. • Audit schedules and formats which determine the extent to which the staffing plan is being followed and whether housing units are placed on lockdown due to lack of staffing. | | | |
| Steps taken by the County to Implement: | MDC had a staffing analysis performed in 2013 which was updated in September 2016 and October 2022. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's staffing analysis was performed in 2013, and updated in September 2016 and October 2022. The updated staffing analysis, if followed, provides for correctional officer staffing and supervision levels at the facility that are adequate to supervise inmates, protect inmates and staff and allow for the safe operation of the facility which are consistent with generally accepted correctional standards. MDC has a significant number of vacancies that makes adherence to the staffing plan difficult. MDC had made progress on reducing vacancies, and the lockdowns of units when officers are required to staff three or four units has been significantly reduced over the monitoring period. During the monitoring period, the number of times an officer staffed three or four housing unit varied from a low of 10 times in July 2024 to a high of 111 times in September 2024. The graveyard shift is the shift where it most often occurs. MDC provided a staffing map which indicated how often officers are required to staff multiple units. This provides a visual of the improvement seen over the compliance period. The staffing level during the compliance period demonstrated significant progress towards meeting the substantive terms and requirements of the provision so as to demonstrated Partial Compliance in providing sufficient to supervise inmates, protect inmates and staff, and allow for the safe operation of the facility, consistent with generally accepted correctional standards. | | | |

41

| Recommendations: | 1. Continue to provide rosters and data of current staffing and assignments. |
| | 2. Continue to implement audit schedules and formats which determine the extent to which the staffing plan is being followed and whether housing units are placed on lockdown due to lack of staffing. |
| | 3. Implement, as appropriate, the October 2022 staffing study. |

| Paragraph | 6.) Staffing: *[Doc. Nos. 1004 at p.2, para. 1(h), 1161, p. 6, para. 2(p)]* |
| | K. 2) Whether MDC has prepared a written staffing plan, in consultation with Manuel Romero, which requires correctional officer staffing and supervision levels at the facility that are adequate to supervise inmates, protect inmates and staff, and allow for the safe operation of the facility, consistent with generally accepted correctional standards and the Court's November 5, 1996 Order *[Doc 256]*. |

| Compliance Status: | Compliance: | Partial Compliance: 09/18/2015; 09/18/2018; 06/27/2019 02/04/2020 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Non-Compliance: | Other: |
|---|---|---|---|---|

| Measures of Compliance: | • Staffing plan developed in 2013 and updated in 2016 and 2022. |
| | • Related policies, procedures, and practices. |
| | • Analysis of incidents to determine whether correctional officer staffing and supervision levels have been a factor in allowing the incident to occur. This should include incidents where cross gender supervision appears to have been a factor. |
| | • Audit schedules and formats which determine the extent to which the staffing plan is being followed and whether housing units are placed on lockdown due to lack of staffing. |

| Steps taken by the County to Implement: | In consultation with Manuel Romero, developed a staffing plan based on the staffing analysis performed in 2013 which was updated in September 2016. MDC had a staffing study conducted in October 2022. |

| | |
|---|---|
| Monitor's analysis and the factual basis for finding: | MDC's staffing plan developed in consultation with Manuel Romero is based on the staffing analysis performed in 2013 and updated in September 2016 and October 2022. The staffing plan, if followed, provides for correctional officer staffing and supervision levels at the facility that are adequate to supervise inmates, protect inmates and staff and allow for the safe operation of the facility which are consistent with generally accepted correctional standards. However, MDC has a significant number of vacancies that makes adherence to the staffing plan extremely difficult but made significant progress in hiring during the compliance period. There are often lockdowns of units when officers are required to staff two, three or four units, but the frequency of the occurrence was reduced significantly over the monitoring period. MDC had a staffing study conducted which was completed in October 2022. While this updated staffing plan is helpful, it has not been fully implemented. Also, this provision remains in Partial Compliance due to the plain wording which required the development of the staffing plan with Mr. Romero. The plan is only partially being implemented. |
| Recommendations: | 1. Reconcile the language of the provision which clearly references a staffing plan developed in consultation with Mr. Romero. |

| Paragraph | 6.) Staffing: *[Doc. Nos. 1004 at p.2, para. 1(h), 1161, p. 6, para. 2(p)]* K. 3) Whether MDC effectively implements the written staffing plan with oversight by Manuel Romero. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: | Partial Compliance: 09/18/2015; 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 08/15/2024; 02/25/2025 | Non-Compliance: 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024 | Other: |
| Measures of Compliance: | • Staffing plan developed in 2013 and updated in 2016 and 2022.<br>• Analysis of rosters regarding the extent to which the written staffing plan is effectively implemented.<br>• Plan to address vacancies. | | | |
| Steps taken by the County to Implement: | MDC has implemented the staffing plan which was overseen by Manuel Romero and is now overseen by Margo Frasier. With the addition of staff and overtime, MDC has made significant progress towards meeting the substantive terms and requirements of the provision. While units are sometimes locked down for portions of days in a row, the number has significantly decreased. MDC has developed recruitment and retention plans. | | | |
| Monitor's analysis and the factual basis for finding: | MDC has made significant progress in implementing the staffing plan. Documentation was provided to allow Monitor Frasier to assess how often the staffing plan is not followed, and the staffing plan has now begun to be implemented. MDC has a significant number of vacancies that makes adherence to the staffing plan difficult. MDC had made progress on reducing vacancies, and the lockdowns of units when officers are required to staff three or four units has been significantly reduced over the monitoring period. During the monitoring period, the number of times an officer staffed three or four housing unit varied from a low of 10 times in July 2024 to a high of 111 times in September 2024. The graveyard shift is the shift where it most often occurs. MDC | | | |

|  | provided a staffing map which indicated how often officers are required to staff multiple units. This provides a visual of the improvement seen over the compliance period. The staffing level during the compliance period demonstrated significant progress towards meeting the substantive terms and requirements of the provision so as to demonstrated Partial Compliance in providing sufficient to supervise inmates, protect inmates and staff, and allow for the safe operation of the facility consistent with generally accepted correctional standards. Documentation demonstrates that there was sufficient staff over the compliance period to constitute Partial Compliance. A staffing study was conducted in October 2022 and is being implemented as appropriate. |
|---|---|
| Recommendations: | 1. Continue efforts to implement recruitment and retention plans including making necessary changes to the collective bargaining agreement.<br>2. Reconcile the language to indicate which staffing plan is to be overseen and that it will be overseen by Margo Frasier. |

| Paragraph | 6.) Staffing: *[Doc. Nos. 1004 at p.2, para. 1(h), 1161, p. 6, para. 2(p)]*<br>K. 4) Whether MDC employs adequate number of employees in the areas of inmate discipline, inmate grievance, inmate classification, case managers, and CCP. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: | Partial Compliance:<br>09/18/2015;<br>09/18/2018;<br>06/27/2019;<br>02/04/2020;<br>11/20/2020;<br>07/2/2021;<br>06/08/2022;<br>05/07/2023;<br>08/03/2023;<br>02/23/2024;<br>08/15/2024;<br>02/25/2025 | Non-Compliance: | Other: |
| Measures of Compliance: | • Staffing plan developed in 2013 and updated in 2016 and 2022 for the areas of inmate discipline, inmate grievance, inmate classification, case managers, and CCP.<br>• Related policies, procedures, and practices.<br>• Analysis of whether time limits set forth in policies are being met in the areas of inmate discipline, inmate grievance, inmate classification, case managers, and CCP.<br>• Audit schedules and formats which determine the extent to which the staffing plan is being followed in the areas of inmate discipline, inmate grievance, inmate classification, case managers, and CCP. | | | |
| Steps taken by the County to Implement: | In consultation with Manuel Romero, MDC developed a staffing plan based on the staffing analysis performed in 2013 which was updated in September 2016 and October 2022 which provides for employees in the areas of inmate discipline, inmate grievance, inmate classification, case managers, and CCP, if followed. | | | |

| Monitor's analysis and the factual basis for finding: | MDC's staffing plan based on the staffing analysis performed in 2013 which was updated in September 2016 and October 2022 provides for an adequate number of employees in the areas of inmate discipline, inmate grievance, inmate classification, case managers, and CCP, if followed. Documentation regarding compliance in the areas of inmate grievance, case managers, CCP, and inmate classification indicate there is adequate staffing as duties are being performed in a timely manner. The documentation indicates that there are not sufficient staff in inmate discipline given the number of dismissals for lack of timeliness. |
|---|---|
| Recommendations: | 1. Staff the disciplinary process to significantly reduce the number of dismissals for untimeliness.<br>2. Consider providing staff to augment the investigation of incidents to provide timely notice of disciplinary infractions. |

| Paragraph | 6.) Staffing: *[Doc. Nos. 1004 at p.2, para. 1(h), 1161, p. 6, para. 2(p)]*<br>K. 5) Whether MDC has sufficient correctional officer staffing to provide inmates requiring treatment with adequate access to appropriate medical and mental health care by providing timely movement of inmates to medical units, transport of inmates who have been referred for outside specialty care, and escort, if necessary, to Qualified Medical and Mental Health Staff on housing units. |
|---|---|

| Compliance Status: | Compliance: | Partial Compliance:<br>09/18/2015;<br>09/18/2018;<br>06/27/2019;<br>02/4/2020;<br>11/20/2020;<br>07/02/2021;<br>08/15/2024;<br>02/25/2025 | Non-Compliance:<br>06/08/2022;<br>05/07/2023;<br>08/03/2023;<br>02/23/2024 | Other: |
|---|---|---|---|---|
| Measures of Compliance: | • Staffing plan developed in 2013 and updated in 2016 and 2022 which provided for correctional officer staffing to provide inmates requiring treatment with adequate access to appropriate medical and mental health care by providing timely movement of inmates to medical units, transport of inmates who have been referred for outside specialty care, and escort, if necessary, to Qualified Medical and Mental Health Staff on housing units.<br>• Related policies, procedures, and practices.<br>• Analysis of whether inmates were provided timely movement to medical units and outside specialty care, and escort of Qualified Medical and Mental Health Staff on housing units.<br>• Audit schedules and formats which determine the extent to which the staffing plan is followed as to correctional officer staffing for providing escort to medical units, outside specialty care, and on the housing units. | | | |
| Steps taken by the County to Implement: | In consultation with Manuel Romero, MDC developed a staffing plan based on the staffing analysis performed in 2013 which was updated in September 2016 and October 2022 which provides for correctional | | | |

45

| | |
|---|---|
| | officer staffing to provide inmates requiring treatment with adequate access to appropriate medical and mental health care by providing timely movement of inmates to medical units, transport of inmates who have been referred for outside specialty care, and escort, if necessary, to Qualified Medical and Mental Health Staff on housing units, if followed. |
| Monitor's analysis and the factual basis for finding: | MDC's staffing plan based on the staffing analysis performed in 2013 which was updated in September 2016 and October 2022 provides for sufficient correctional officer staffing to provide inmates requiring treatment with adequate access to appropriate medical and mental health care by providing timely movement of inmates to medical units, transport of inmates who have been referred for outside specialty care, and escort, if necessary, to Qualified Medical and Mental Health Staff on housing units, if followed. The increase in staffing, particularly on the day shift, now allows officers to be assigned as rovers to provide for escort. The reports of the medical and mental health experts note the failure to bring inmates to appointments (both in and out of the facility) causes disruption to medical and mental health care, but notes improvement. The documentation indicates significant progress towards meeting the substantive terms and requirements of the provision so as to warrant Partial Compliance. Documentation more specific to the wording of the provision is warranted. |
| Recommendations: | 1. Analyze whether inmates were not provided timely movement to medical units and outside specialty care, and escort of Qualified Medical and Mental Health Staff on housing units.<br>2. Develop and implement audit schedules and formats which determine the extent to which the staffing plan is followed as to correctional officer staff for providing escort to medical units outside specialty care, and on the housing units. |

MDC is in Partial Compliance with all five (5) Staffing provisions, having made significant progress towards meeting the substantive terms and requirements of that provision. MDC will need to continue its recruiting and retention efforts in order to maintain Partial Compliance. There is still improvement to be made in the staffing of housing units and provision of custody staff for ancillary services. The Staffing subcategory is in Partial Compliance.

**Access to Counsel and Legal Materials**

| Paragraph | 7.) Access to Counsel and Legal Materials:<br>P. 1) Whether MDC provides inmates with adequate opportunities to use telephones during normal business hours so that they may contact attorneys. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance:<br>09/18/2018;<br>06/27/2019;<br>02/04/2020;<br>08/03/2023;<br>02/23/2024; | Partial Compliance:<br>03/23/2015;<br>11/20/2020;<br>07/02/2021;<br>06/08/2022; | Non-Compliance: | Other: |

|  | 08/15/2024<br>02/25/2025 | 05/07/2023 |  |  |
|---|---|---|---|---|
| Measures of Compliance: | <ul><li>Related policies, procedures, written directives and practices (CMV 15.07 Telephone Access, REC 6.11 Inmate Telephone Service Access, Monitoring, and Recording of Calls).</li><li>Grievances related to telephone use to contact attorneys during normal business hours.</li><li>Inmate Handbook.</li></ul> | | | |
| Steps taken by the County to Implement: | MDC has implemented CMV 15.07 which provides that inmates have access to telephones during their non-confinement hours which made be used to contact their attorneys. REC 6.11 provides a process for the calls to not be recorded. Inmates are informed of access to the telephone in the Inmate Handbook. Lockdowns due to lack of staffing have limited the access to telephones due to the restrictions on time out of cell. | | | |
| Monitor's analysis and the factual basis for finding: | MDC has telephones and tablets from which telephone calls can be made. Access to telephones has increased with the additional out of cell time. The documentation presented indicates that over 7500 calls per month were placed to attorneys on landline telephones. The tablets while a suitable substitute in many situations, were not considered by Monitor Frasier due to the Court's ruling that telephone calls placed on the tablets were not to be considered. In addition, inmates had video telephone conferences with attorneys during the compliance period. It should be noted that video telephone conferences appear to be the preferred method of counsel for the Plaintiffs and Plaintiff-Intervenor. The ability to complete approximately 300 telephone calls to attorneys per weekday, given the population of MDC, is, in the opinion of the Monitor, substantial compliance with this provision. | | | |
| Recommendations: | 1.   Seek agreement among counsel that telephone calls made from tablets constitutes access to telephones. | | | |

| Paragraph | 7.) Access to Counsel and Legal Materials:<br>P. 2) Whether MDC ensures that staff members do not interfere with inmates' access to materials pertaining to inmates' legal matters, including but not limited to attorney- client correspondence, discovery, legal research, and pleadings. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance:<br>06/27/2019;<br>02/04/2020;<br>11/20/2020;<br>07/02/2021;<br>06/08/2022;<br>05/07/2023;<br>08/03/2023;<br>02/23/2024;<br>08/15/2024; | Partial Compliance:<br>03/23/2015;<br>09/18/2018 | Non-Compliance: | Other: |

| | 02/25/2025 | | | |
|---|---|---|---|---|
| Measures of Compliance: | • Related policies, procedures, written directives and practices (SEC 8.14 Searches of the Facility, Inmates, Visitors, and Employees, SEC 8.14-1 Searches of the Facility—Authorized/Unauthorized Cell Items and Cell, CMV 15.00 Mail).<br>• Grievances related to attorney-client correspondence, discovery, legal research, and pleadings.<br>• Inmate Handbook.<br>• Analysis of grievances regarding interference with access to legal materials. | | | |
| Steps taken by the County to Implement: | MDC has implemented CMV 15.00 which allows for attorney-client correspondence to be received and only searched in the presence of the inmate. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that staff members do not interfere with inmates' access to attorney-client correspondence. A provision in the policies related to searches of cells (SEC 8.14 and SEC 8.14-1) states that inmates' access to materials pertaining to inmates' legal matters such attorney-client correspondence, discovery, legal research, and pleadings are authorized personal items that inmates are allowed to keep in their cells subject to limitation so as not to constitute a fire hazard. There is no indication that policy is not being followed except on rare occasions. | | | |
| Recommendations: | No recommendations required at this time. | | | |

MDC is in Substantial Compliance with both of the two provisions. Access to Counsel and Legal Materials is in Substantial Compliance.

**Law Library**

| Paragraph | 8.) Law Library:<br>Q. 3) Whether MDC follows its policies and procedures pertaining to the delivery of access to its law library. *[Doc. Nos. 115 at 1-2, 255, 416; see also Doc 106 at 18.]* | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance:<br>07/02/2021;<br>06/08/2022;<br>05/07/2023;<br>08/03/2023;<br>02/23/2024;<br>08/15/2024;<br>02/25/2025 | Partial Compliance:<br>09/18/2015;<br>09/18/2018;<br>06/27/2019;<br>02/04/2020;<br>11/20/2020 | Non-Compliance: | Other: |
| Measures of Compliance: | • Related policies, procedures, written directives, and practices. (PRO 19.09)<br>• Grievances related to access to the law library.<br>• Documentation of inmates given access to the law library.<br>• Analysis of grievances regarding access to the law library. | | | |

| Steps taken by the County to Implement: | MDC has implemented policies and procedures to allow access to the law library. |
|---|---|
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that inmates are given access to its law library by visits to the housing units. It is clear that services are provided to inmates requesting services, including pro se inmates. |
| Recommendations: | No recommendations at this time. |

| Paragraph | 8.) Law Library: | | | |
|---|---|---|---|---|
| | Q. 4) Whether MDC provides inmates with mental or developmental disabilities reasonable accommodations and assistance in order for them to have effective access to the judicial system to challenge the length or conditions of their confinement and in order for them to attack their sentences *[Doc. No. 256, p. 16, para. IV(C)(1)]* | | | |
| Compliance Status: | Compliance: 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: 09/18/2015; 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020 | Non-Compliance: | Other: |
| Measures of Compliance: | <ul><li>Related policies, procedures, written directives, and practices (PRO 19.09).</li><li>Grievances related to access to the judicial system to challenge the length or conditions of their confinement and attack their sentences by inmates with mental or developmental disabilities.</li><li>Documentation of inmates with mental or developmental disabilities being provided reasonable accommodations and assistance in order for them to have effective access to the judicial system to challenge the length or conditions of their confinement and in order for them to attack their sentences.</li><li>Analysis of grievances regarding access to the judicial system to challenge the length or conditions of their confinement and attack their sentences by inmates with mental or developmental disabilities.</li></ul> | | | |
| Steps taken by the County to Implement: | MDC has implemented policies and procedures to allow access to the law library and legal materials which allow for effective access to the judicial system for inmates to challenge the length or conditions of their confinement and in order for them to attack their sentences. | | | |
| Recommendations: | No recommendations at this time. | | | |
| | | | | |

| Paragraph | 8.) Law Library: Q. 5) Whether MDC provides inmates with mental or developmental disabilities reasonable access to the law library in a reasonable amount of time. *[Doc. No. 256, p. 17, para. IV(C)(4)]* | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: 09/18/2015; 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020 | Non-Compliance: | Other: |
| Measures of Compliance: | • Related policies, procedures, written directives, and practices. (PRO 19.09)<br>• Grievances related to reasonable access to the law library in a reasonable amount of time for inmates with mental or developmental disabilities.<br>• Documentation of time between a request and access to law library by inmates with mental or developmental disabilities.<br>• Analysis of grievances regarding timeliness of access to the law library by inmates with mental or developmental disabilities. | | | |
| Steps taken by the County to Implement: | MDC has implemented policies and procedures to allow reasonable access to the law library by inmates with mental or developmental disabilities. | | | |
| Monitor's analysis and the factual basis for finding: | Monitor Frasier reviewed on-site documentation and conducted interviews which demonstrate that MDC provides inmates with mental or developmental disabilities with reasonable accommodations and assistance to allow them to do the same. There is documentation in the grievance section which indicates that the social workers have assisted inmates with legal issues. | | | |
| Recommendations: | No recommendations at this time. | | | |
| | | | | |
| Paragraph | 8.) Law Library: Q. 6) Whether MDC provides inmates with mental or developmental disabilities assistance with the preparation of an initial pleading regarding the length or condition of confinement or regarding the resident's conviction or sentence. *[Doc. No. 256, p. 17, para. IV(C)(4)]* | | | |
| Compliance Status: | Compliance: 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: 09/18/2015; 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020 | Non-Compliance: | Other |

| Measures of Compliance: | • Related policies, procedures, written directives, and practices (PRO 19.09).<br>• Grievances related to the provision of assistance with the preparation of an initial pleading regarding the length or condition of confinement or regarding the inmate's conviction or sentence to inmates with mental or developmental disabilities.<br>• Documentation of provision of assistance with the preparation of an initial pleading regarding the length or condition of confinement or regarding the inmate's conviction or sentence to inmates with mental or developmental disabilities.<br>• Analysis of grievances regarding provision of assistance with the preparation of an initial pleading regarding the length or condition of confinement or regarding the inmate's conviction or sentence to inmates with mental or developmental disabilities. |
|---|---|
| Steps taken by the County to Implement: | MDC has implemented policies and procedures to allow access to the law library which would allow an inmate with mental or developmental disabilities to prepare an initial pleading regarding the length or condition of confinement or regarding the inmate's conviction or sentence. |
| Monitor's analysis and the factual basis for finding: | MDC documentation demonstrates that MDC has implemented policies and procedures to allow access to the law library which would allow inmates with mental or developmental disabilities to prepare an initial pleading regarding the length or condition of confinement or regarding the inmate's conviction or sentence. |
| Recommendations: | No recommendations at this time. |

MDC is in Substantial Compliance with all four (4) remaining Law Library provisions having successfully, generally, met the substantive terms and requirements of those provisions. The Law Library subcategory is in Substantial Compliance.

**Inmate Programming**

| Paragraph | 9.) Inmate Programming (excluding mental health programming):<br>T. 1) Whether MDC's inmate programming (excluding mental health programming) meets the applicable standards stated in the American Correctional Association's Standards for Adult Detention Centers. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance:<br>09/19/2018;<br>06/27/2019;<br>02/04/2020;<br>11/20/2020;<br>07/02/2021;<br>08/15/2024;<br>02/25/2025 | Partial Compliance:<br>03/23/2015;<br>06/08/2022;<br>05/07/2023;<br>08/03/2023;<br>02/23/2024 | Non-Compliance: | Other: |
| Measures of Compliance: | • Standards stated in the American Correctional Association's Standards for Adult Detention Centers related to inmate programming, excluding mental health programming.<br>• Report from the Commission on Accreditation for Correction Standards Compliance Reaccreditation Audit. | | | |
| Steps taken by the County to Implement: | MDC has applied for and received accreditation from the American Correctional Association's Standards for Adult Detention Centers which found MDC met the applicable standards for inmate programming, excluding mental health programming. | | | |

| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC's inmate programming (excluding mental health programming) meets the applicable standards stated in the American Correctional Association's Standards for Adult Detention Centers. Access to inmate programming has now been documented and provided. Thus, resulting in this provision being in Substantial Compliance. |
| --- | --- |
| Recommendations: | 1.    Provide documentation of actual participation in inmate programming that is offered through the tablets to provide a more complete picture of programming offered. |

| Paragraph | 9.) Inmate Programming (excluding mental health programming): |
| --- | --- |
| | T. 2) Whether MDC has adequate policies and procedures that address programming and whether they adequately implement those policies and procedures. |

| Compliance Status: | Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 08/15/2024; 02/25/2025 | Partial Compliance: 03/23/2015; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024 | Non-Compliance: | Other: |
| --- | --- | --- | --- | --- |
| Measures of Compliance: | <ul><li>Related policies, procedures, written directives, and practices (PRO 19.00 Services and Programs/Program Incentives, PRO 19.01 Resources, PRO 19.03 Non-Discrimination, PRO 19.06 Routine Exercise, PRO 19.07 Academic Programs, PRO 19.18 Library: Selection and Acquisition, GBC 21.00 Mission Statement, Funding, and Records Retention).</li><li>List of programs available.</li><li>Documentation of participation by inmates in programming.</li></ul> | | | |
| Steps taken by the County to Implement: | MDC has implemented policies and procedures that address inmate programming. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has adequate policies and procedures that address programming, but MDC provided documentation of inmate participation in programming in the form of sign in sheets. MDC provided documentation of programming that is available and proof of actual participation. MDC is encouraged to continuously evaluate optional ways to provide programming in light of the limitations on out-of-cell time. Programming is of increased importance when inmates are confined to their cells for extended periods of time. | | | |
| Recommendations: | 1. Provide documentation of actual participation in inmate programming that is offered through the tablets to provide a more complete picture of programming offered. | | | |

| Paragraph | 9.) Inmate Programming (excluding mental health programming): |
| --- | --- |
| | T. 3) Whether MDC provides adequate resources and opportunities for recreation, exercise, reading, and other activities. |

| Compliance Status: | Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 02/25/2025 | Partial Compliance: 03/23/2015; 11/20/2020; 07/02/2021; 08/03/2023; 02/23/2024; 08/15/2024 | Non-Compliance: 06/08/2022; 05/07/2023 | Other: |
|---|---|---|---|---|
| Measures of Compliance: | <ul><li>Related policies, procedures, written directives, and practices (PRO 19.00 Services and Programs/Program Incentives, PRO 19.01 Resources, PRO 19.03 Non-Discrimination, PRO 19.06 Routine Exercise, PRO 19.07 Academic Programs, PRO 19.18 Library: Selection and Acquisition, GBC 21.00 Mission Statement, Funding, and Records Retention).</li><li>List of programs available.</li><li>List of volunteers in programs.</li></ul> | | | |
| Steps taken by the County to Implement: | MDC has provided resources and opportunities for recreation exercise, reading, and other activities. Those opportunities have been restricted due a lack of staffing. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has provided adequate resources and opportunities for recreation and exercise given the increase in out-of-cell time. The number of facility wide lockdowns has decreased and the amount of out of cell time has increased. The out-of-cell time reports provided indicate an increase in time out-of-cell and access to recreation; including outside recreation. While six hours a day out of cell time is the generally accepted correctional standard, the Monitor is of the opinion that three hours per day is sufficient to allow inmates to take care of necessities such as showering and making telephone calls while allowing time for recreation and other activities. This is a significant improvement and enough for MDC to demonstrate Substantial Compliance. | | | |
| Recommendations: | 1. Continue to strive for additional out-of-cell time for general population of a minimum of six hours per day with at least one hour for exercise and recreation in addition to adequate time to attend to necessities such as showers and access to other activities Substantial Compliance. | | | |

MDC has provided documentation resulting in all three (3) provisions being in Substantial Compliance. The Inmate Programming subcategory is now in Substantial Compliance. Documentation provided shows an improvement in the amount of out-of-cell time and access to programs.

**Access to Information**

| Paragraph | 10.) Access to Information: |
|---|---|
| | W. 1) Whether MDC ensures that newly admitted inmates receive information, through an inmate handbook or orientation video, regarding the following areas:<br>a. facility rules and regulations;<br>b. how to report misconduct;<br>c. how to report sexual abuse or assault; d. the process for accessing medical and mental health care; e. emergency procedures; f. rules for sending and receiving mail; g. the visitation process; h. facility schedule; i. the disciplinary process; j. how to seek redress of grievances; and k. a description of the |

| | | *McClendon* class action and the methods for contacting counsel for the class and subclass. | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: 12/22/2014 | Non-Compliance: | Other: |
| Measures of Compliance: | • Inmate orientation video.<br>• Inmate Handbook. | | | |
| Steps taken by the County to Implement: | MDC has developed an inmate orientation video and inmate handbook which provides information to newly admitted inmates on the required areas. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has developed an inmate orientation video and inmate handbook which provides information to newly admitted inmates on the required areas and ensures inmates receive the information. MDC is encouraged to make sure at least one paper copy is available in the dayrooms instead of relying solely on the kiosks and tablets. | | | |
| Recommendations: | No recommendations required at this time. | | | |

| Paragraph | 10.) Access to Information: |
|---|---|
| | W. 2) Whether MDC ensures that materials and information on facility rules and services are available for inmates who do not speak English, and inmates who have a mental or developmental disability. |

| Compliance Status: | Compliance: 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: 12/22/2014; 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020 | Non-Compliance: | Other: |
|---|---|---|---|---|
| Measures of Compliance: | <ul><li>Inmate orientation video.</li><li>Inmate Handbook.</li><li>Documentation of materials and information on facility rules and services being available to inmates who do not speak English, and inmates who have a mental or developmental disability.</li></ul> | | | |
| Steps taken by the County to Implement: | MDC has developed an inmate orientation video and inmate handbook which provides information on facility rules and services in English and Spanish. There is signage in Spanish. Social service coordinators provide an oral orientation to inmates flagged in the EJUS as having a disability which requires an accommodation. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has developed an inmate orientation video and inmate handbook which does a very thorough job of outlining the facility rules and services. Both the handbook and video are available in Spanish. The social service coordinators are utilized to provide an oral orientation to inmates who are flagged in the EJUS as having a disability. | | | |
| Recommendations: | No recommendations at this time. | | | |

MDC is in Substantial Compliance with both of the Access to Information provisions having successfully, generally, met the substantive terms and requirements of that provision. The Access to Information subcategory is in Substantial Compliance.

**Supplemental Report Subcategories**

| Paragraph | 11.) Supplemental report subcategories: Y. 1) Whether the conditions of confinement at MDC evidence repeated examples of acts that put inmates at risk of harm. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: | Partial Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Non-Compliance: | Other: |

| Measures of Compliance: | • Incident reports providing examples of acts that put inmates at risk of harm.<br>• Related policies, procedures, written directives, and practices that are designed to reduce the risk of harm to inmates. (These policies are referenced throughout this report.) |
|---|---|
| Steps taken by the County to Implement: | MDC has put in place the policies, procedures, written directives, and practices that are designed to reduce the risk of harm to inmates. |
| Monitor's analysis and the factual basis for finding: | Monitor Frasier considered the documentation provided for other provisions to determine the compliance rating for this provision. MDC has made significant progress towards meeting the substantive terms and requirements of this provision. There are still examples of acts that put inmates at risk of harm due to the conditions of confinement at MDC, including the shortage of staff. |
| Recommendations: | Implementation of the recommendations elsewhere in this report are sufficient to address the steps that need to be taken to bring this provision into substantial compliance. |

| Paragraph | 11.) Supplemental report subcategories:<br>Y. 2) Whether the examples of acts that put inmates at risk of harm disclose a pattern of conduct by MDC security staff that effectively denies inmates an appropriate classification system, appropriate procedural safeguards in the areas of grievances, discipline, classification and segregation, safe conditions of confinement or reasonably sanitary conditions of confinement. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: | Partial Compliance:<br>09/18/2018;<br>06/27/2019;<br>02/04/2020;<br>11/20/2020;<br>07/02/2021;<br>06/08/2022;<br>05/07/2023;<br>08/03/2023;<br>02/23/2024;<br>08/15/2024;<br>02/25/2025 | Non-Compliance: | Other: |
| Measures of Compliance: | • Incident reports that provide examples of acts that put inmates at risk so as to disclose a pattern of conduct by MDC security staff that effectively denies inmates an appropriate classification system, appropriate procedural safeguards in the areas of grievances, discipline, classification and segregation, safe conditions of confinement or reasonable sanitary conditions of confinement.<br>• Related policies, procedures, written directives, and practices that are designed to reduce the risk of harm to inmates through the use of an appropriate classification system, appropriate procedural safeguards in the areas of grievances, discipline, classification and segregation, safe conditions of confinement or reasonably sanitary conditions of confinement. (These policies are referenced throughout this report.) | | | |
| Steps taken by the County to Implement: | MDC has put in place the policies, procedures, written directives, and practices that are designed prohibit a pattern of conduct by MDC security staff that effectively denies inmates an appropriate | | | |

| | |
|---|---|
| | classification system, appropriate procedural safeguards in the areas of grievances, discipline, classification and segregation, safe conditions of confinement or reasonable sanitary conditions of confinement. |
| Monitor's analysis and the factual basis for finding: | Monitor Frasier considered the documentation provided for other provisions to determine the compliance rating for this provision. MDC has made significant progress towards prohibiting a pattern of conduct by MDC security staff that effectively denies inmates an appropriate classification system, appropriate procedural safeguards in the areas of grievances, discipline, classification and segregation, safe conditions of confinement or reasonable sanitary conditions of confinement meeting the substantive terms and requirements of this provision. MDC has met the requirements as to grievances, discipline, classification, segregation, and reasonable sanitary conditions of confinement. There are still examples of acts that put inmates at risk of harm due to shortage of staff as to safe conditions of confinement. Additionally, the number of inmates placed in RHU pre-disciplinary hearing only to have the charges dropped indicate a lack of procedural safeguards in the area of discipline. |
| Recommendations: | Implementation of the recommendations elsewhere in this report are sufficient to address the steps that need to be taken to bring this provision into compliance. |

| Paragraph | 11.) Supplemental report subcategories: Y. 3) Whether there are systematic or gross deficiencies in staffing, facilities, equipment, or procedures. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: | Partial Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Non-Compliance: | Other: |
| Measures of Compliance: | • Incident reports and analysis of incident report to determine whether there are systematic or gross deficiencies in staffing, facilities, equipment, or procedures. <br> • Related policies, procedures, written directives, and practices designed to determine if there are systematic or gross deficiencies in staffing, facilities, equipment, or procedures. (These policies are referenced throughout this report.) | | | |
| Steps taken by the County to Implement: | MDC has put in place the policies, procedures, written directives, and practices that would allow for the determination of whether there are systematic or gross deficiencies in staffing, facilities, equipment, or procedures. | | | |
| Monitor's analysis and the factual basis for finding: | Monitor Frasier considered the documentation provided for other provisions to determine the compliance rating for this provision. MDC is in substantial compliance as to facilities, equipment, and procedures. The shortage of staff results in partial compliance. | | | |

| Recommendations: | Implementation of the recommendations related to staffing elsewhere in this report are sufficient to address the steps that need to be taken to bring this provision into compliance. |
|---|---|

| Paragraph | 11.) Supplemental report subcategories: |
|---|---|
| | Y. 4) Whether the systemic or gross deficiencies effectively deny the inmate population fairness, safe conditions of confinement or reasonably sanitary conditions of confinement. |

| Compliance Status: | Compliance: | Partial Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Non-Compliance: | Other: |
|---|---|---|---|---|
| Measures of Compliance: | • Incident reports and analysis of incident report to determine whether the systematic or gross deficiencies effectively deny the inmate population fairness, safe conditions of confinement or reasonably sanitary conditions of confinement. <br> • Related policies, procedures, written directives, and practices designed to determine if the systematic or gross deficiencies deny the inmate population fairness, safe conditions of confinement or reasonably sanitary conditions of confinement. (These policies are referenced throughout this report.) | | | |
| Steps taken by the County to Implement: | MDC has put in place the policies, procedures, written directives, and practices that would allow for the determination of whether there are systematic or gross deficiencies in staffing, facilities, equipment, or procedures and whether those deficiencies effectively deny the inmate population fairness, safe conditions of confinement or reasonably sanitary conditions of confinement. | | | |
| Monitor's analysis and the factual basis for finding: | Monitor Frasier considered the documentation provided for other provisions to determine the compliance rating for this provision. MDC is in substantial compliance as to reasonably sanitary conditions of confinement. Lack of analysis of incidents and staffing results in partial compliance related to safe conditions of confinement. | | | |
| Recommendations: | Implementation of the recommendations related to analysis of information elsewhere in this report are sufficient to address the steps that need to be taken to bring this provision into compliance. | | | |

| Paragraph | 11.) Supplemental report subcategories: |
|---|---|
| | Z. 1) Whether adequate communication occurs between MDC administration and treating health care professionals regarding an inmate's significant medical needs and mental health needs that must be considered in classification decisions in order to preserve the health and safety of that inmate, other inmates, and staff: |
| | • Whether MDC security staff is sufficiently advised of inmates' special medical needs and mental health needs that may affect housing, work, program assignments, disciplinary measures, and admissions to and transfers from institutions. |
| | • Whether health care and security staff adequately communicate about inmates with special needs conditions. |

| Compliance Status: | Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: | Non-Compliance: | Other: |
|---|---|---|---|---|

| Measures of Compliance: | • Documentation that MDC administration and treating health care professionals adequately communicate regarding an inmate's significant medical needs and mental health needs that must be considered in classification decisions in order to preserve the health and safety of that inmate, other inmates, and staff including inmates special medical needs and mental health needs that may affect housing, work, program assignments, disciplinary measures, and admissions to and transfers from institutions. This recommendation does not require MDC to prove a negative. It does require documentation that MDC and the medical care contractor have in place a process where the input of the treating health care professionals is consistently sought when an inmate with significant medical or mental health needs is being classified. |
|---|---|
| | • Documentation that health care and security staff adequately communicate about inmates with special needs conditions. This recommendation does not require MDC to prove a negative. It does require documentation that MDC and the medical care contractor have in place a process when the input of the treating health care professionals is consistently sought when an inmate has special needs. |

| Steps taken by the County to Implement: | MDC has put in place policies and procedure to allow for adequate communication of the information required in the provision. |
|---|---|

| | |
|---|---|
| Monitor's analysis and the factual basis for finding: | Monitor Frasier considered the documentation provided for other provisions to determine the compliance rating for this provision. There is adequate communication between MDC administration and treating health care professionals regarding the information required in the provisions. There is adequate communication between health care and security staff regarding inmates with special needs conditions. |
| Recommendations: | No recommendations required at this time. |

| Paragraph | 11.) Supplemental report subcategories: |
|---|---|
| | Z. 2) Whether security staff allows inmates the use of medical and dental orthoses, prostheses, and other aids as determined by the responsible physician or dentist. |
| | • Whether patients receive and are permitted to retain prescribed aids to impairment. |
| | • Where the use of specific aids to impairment is contraindicated for security reasons, |
| | • Whether alternatives are considered so the health needs of the inmate are met. |

| Compliance Status: | Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: | Non-Compliance: | Other: |
|---|---|---|---|---|
| Measures of Compliance: | • Documentation that security staff allows inmates the use of medical and dental orthoses, protheses, and other aids as determined by the responsible physician or dentist and the inmates are allowed to receive and permitted to retain prescribed aids to impairments. <br> • Documentation that where the use of specific aids to impairment is contraindicated for security reasons, alternatives are considered so the health needs of the inmate are met. | | | |
| Steps taken by the County to Implement: | MDC has implemented policies and procedures which allow inmates the use of medical and dental orthoses, protheses, and other aids as determined by the responsible physician or dentist in accordance which comply with the requirements of this provision. | | | |
| Monitor's analysis and the factual basis for finding: | Monitor Frasier considered the documentation provided for other provisions to determine the compliance rating for this provision. MDC security staff allows inmates the use of medical and dental orthoses, protheses, and other aids as determined by the responsible physician or dentist and the inmates are allowed to receive and permitted to retain prescribed aids for impairments. MDC considers alternatives where the use of specific aids to impairment is contraindicated for security reasons. | | | |
| Recommendations: | No recommendations required at this time. | | | |

MDC is in Substantial Compliance with two (2) and Partial Compliance with four (4) of the six (6) Supplemental Report subcategories. The provisions are in Partial Compliance due to lack

of documentation to demonstrate MDC has successfully, generally, met the substantive terms and requirements of the provisions. The Supplemental Report subcategory is in Partial Compliance.

Compliance with the Supplement Report subcategories is reliant on the successful and substantial implementation of the recommendations contained elsewhere in the report.

## Domain 5: Population Management

COA #3 Domain 5 consists of eight (8) provisions. Monitor Frasier found MDC to be in Substantial Compliance/Compliance with all eight (8) provisions as of September 18, 2018, and in continued Substantial Compliance/Compliance as of June 27, 2019. On December 11, 2019, Judge Parker granted the Motion for Finding of Initial Compliance and to Set Self-Monitoring Period Regarding Domain #5. The self-monitoring period was through August 31, 2020. During this period of time, Monitor Frasier reviewed the quarterly reports to evaluate whether MDC has remained in compliance with each of the domain's subcategories and submitted a separate report to the Court on March 31, 2021. On February 11, 2022, Judge Browning held a hearing on Bernalillo County's Motions for Sustained Compliance as to Domains 3, 5, and 6, and granted the motion as to Domain #5.

## Domain 6: Housing and Segregation

COA #3 Domain 6 consists of six (6) provisions related to Housing and Segregation. Monitor Frasier found MDC to be in Substantial Compliance/Compliance with five (5) of the six (6) provisions as of September 28, 2018, and of the sixth as of June 27, 2019. Monitor Frasier's review of February 4, 2020, found that Substantial Compliance/Compliance was being sustained. On February 20, 2020, Judge Parker granted the Motion for Finding of Initial Compliance and to Set Self-Monitoring Period Regarding Domain #6. The self-monitoring period was ordered to begin on June 27, 2019, and continue through December 31, 2020. During this period of time, Monitor Frasier reviewed the quarterly reports to evaluate whether MDC has remained in compliance with each of the domain's subcategories. Monitor Frasier reviewed the quarterly reports to evaluate whether MDC has remained in compliance with each of the domain's subcategories and submitted a separate report to the Court on March 31, 2021. The Court found that MDC was not in sustained compliance as to Domain #6 due to Check-Out Audit #3 6(H)(3) as to segregated inmates having one hour per day out of cell time and ordered a new period of self-monitoring from April 1, 2022, to September 30, 2022.

## Domain 7: Sexual Misconduct

COA #3 Domain 7 consists of four (4) provisions related to Sexual Misconduct. Monitor Frasier has found MDC to be in Partial Compliance with four (4) of the four (4) subcategories. MDC remains in Partial Compliance with Domain 7.

The following consists of the status, measures of compliance, steps taken by the County to comply, Monitor Frasier's analysis and factual basis for finding, and Monitor Frasier's recommendations to obtain compliance for Domain 7. It should be noted that Monitor

Frasier requested and received all of the investigations of allegations of sexual abuse, sexual harassment, and sexual misconduct. Monitor Frasier requested and received allegations which were classified by MDC as being non-PREA events. Monitor Frasier, as an experienced investigator and expert in the field of sexual abuse, sexual harassment, and sexual misconduct in the correctional setting does not feel it is necessary to review every report in order to reach a conclusion as to whether MDC is adequately performing. It should be noted that Monitor Frasier reviewed over 85% of the investigations including the investigations noted by Plaintiffs' counsel in their letter responding to the documentation presented by MDC.

Monitor Frasier has continued to meet with PREA staff and MDC leadership to address several concerning trends that Monitor Frasier had seen when reviewing investigations regarding sexual assault. MDC now investigates allegations based on a single incident of sexual harassment. However, the length of time it continues to take to assign cases to investigators which often result in witnesses and video footage no longer being available is still an issue. The failure to timely investigate incidents poses a danger to the safety of inmates and often results in allegation being found to be unsubstantiated when a timely investigation would likely result in a finding of substantiated or unfounded. In reviewing the investigations and allegations regarding sexual assault for Report #20, Monitor Frasier found that allegations of a single incident involving a corrections officer were investigated and a finding was made as to the conduct even if the behavior did not technically meet the PREA definition of sexual harassment. However, the length of time between when the incident was reported and when it was assigned to an investigator is still extremely unacceptable. The failure to timely assign cases and to retain valuable video evidence often hampers the ability of the investigators to thoroughly investigate the allegations. This frequently results in key witnesses, including the complainant, not being available to be interviewed because they have been released from custody and are not able to be located. The investigations, once assigned, were found to be promptly performed. The investigations were found to be thorough but hampered by the evidence not available to the investigators due to the release of witnesses and unavailability of video evidence.

The documentation in the form of incident reports, grievances, investigation, and on-site interviews of inmates and staff revealed that, while there were isolated incidents of sexual misconduct, sexual abuse, sexual touching, and sexual harassment that occur within the MDC facility, MDC has made significant progress towards adequately protecting inmates from sexual abuse, sexual harassment, and sexual touching.

**Sexual Misconduct**

| Paragraph | Sexual Misconduct: |
|---|---|
| | I. 1) Whether MDC has developed and adequately implements policies, protocols, trainings, and audits consistent with the requirements of the Prison Rape Elimination Act of 2003, 42 U.S.C. Section 15601, et seq. |

| Compliance Status: | Compliance: 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022 | Partial Compliance: 06/27/2019; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Non-Compliance: 09/18/2015; 09/18/2018 | Other: |
|---|---|---|---|---|
| Measures of Compliance: | <ul><li>Related policies, procedures, written directives and practices (PER Sexual Misconduct, Sexual Abuse, and Sexual Harassment of Inmates, SEC 8.06 Unannounced Rounds, ICL 17.02 Confinement of Juveniles).</li><li>Job descriptions of PREA Administrator, PREA Compliance Officer.</li><li>Standards of the Prison Rape Elimination Act of 2003.</li><li>Documentation of development and adequate implementation of the policies, protocols, trainings, and audits consistent with the requirement of PREA.</li><li>PREA Report of March 2019.</li><li>Corrective action plan to address the deficiencies noted in the PREA Report of March 2019.</li><li>Final PREA Audit Report of October 2019.</li><li>PREA Audit Report of February 2024.</li></ul> | | | |
| Steps taken by the County to Implement: | MDC has developed multiple policies, protocols, trainings, and audits that are consistent with the requirements of PREA. MDC underwent a PREA audit in July 2023 and received a final report in February 2024 indicating MDC's policies and protocols met the requirements of PREA. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC underwent a PREA audit in July 2023 and the final report issued in February 2024 found MDC policies and protocols to meet the requirements of PREA. While PREA certification is not the sole measure of whether MDC has developed and adequately implemented policies, protocols, trainings, and audits consistent with the requirements of PREA, it is significant. Monitor Frasier is well versed in the PREA standards, having helped to develop the standards. Monitor Frasier's independent review of the materials indicates that MDC has met many of the substantive requirements of this provision, but not all. An important part of the PREA standards deals with investigations. It is unfathomable to Monitor Frasier how the investigation provisions of PREA could have been found to have been met given the length of time it takes to assign the investigation. In very few cases the investigation was completed within 90 days of the report of the incident. This calls into question the reliability of the information provided to the PREA auditors. There were numerous issues found with the investigations from the time the allegation was received and classified. There is a significant delay in making that assessment and then another significant delay in assigning cases. Video evidence began to be preserved at the latter end of the compliance period, but this was not so for the majority of the compliance period. MDC is referred to its own investigations if it wishes to compile a list of example of where the investigator reported that the video was not preserved nor available Interviews of complainants and other witnesses are often not conducted or simply note the person declined to give a statement. The investigations themselves are usually conducted within an appropriate length of time but are hampered by lack of evidence such as video which no longer exists and potential inmate witnesses, including the complainant, having been released from custody. In Report #19 | | | |

|  | Monitor Frasier continued to rate the provision to be in Partial Compliance, but noted that if the rating was based solely on the timeliness of the review and classification of complaints and assignment of investigations, this provision would be in Non-Compliance. Given the definitions of Partial Compliance and Non-Compliance, Monitor Frasier feels obligated to continue with the rating of Partial Compliance, but urges MDC to address the issue of timeliness of assignment of investigations. Monitor Frasier is encouraged by the actions of the new warden as a systemic review of the PREA Unit was performed. Also encouraging is that, after the compliance period, the supervisor of the PREA Unit was replaced with an experienced investigator who possesses the required supervisory skills. |
|---|---|
| Recommendations: | 1. Improve timeliness of review of complaints, assigning investigations, and completing investigations.<br>2. Develop a process for handing emergency grievances alleging a substantial risk of imminent sexual abuse which allows for immediate assignment and investigation.<br>3. While the PREA definitions control whether the allegations and the result of the investigations have to be reported, they do not control whether accepted correctional practice requires an investigation. Develop a process for all allegations of sexual misconduct to be investigated.<br>4. Video should be copied at the time of the report of the incident to ensure it will be available for review.<br>5. Consider placement of cameras in classroom and utility closets. They could be motion sensor cameras triggered by the opening of the door.<br>6. Do not allow for cross-gender supervision (particularly male corrections officers in female units) on the graveyard shift if only one officer is assigned. This should include those providing relief. MDC data found that 79% of the allegations of staff sexual misconduct involved cross-gender supervision. |

| Paragraph | Sexual Misconduct:<br>I. 2) Whether MDC's policies and protocols adequately address the prevention, detection, reporting, and investigation of sexual abuse, sexual harassment, and sexual touching. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: | Partial Compliance:<br>09/18/2018;<br>06/27/2019;<br>02/04/2020;<br>11/20/2020;<br>07/02/2021;<br>06/08/2022;<br>05/07/2023;<br>08/03/2023;<br>02/23/2024;<br>08/15/2024;<br>02/25/2025 | Non-Compliance:<br>09/18/2015 | Other: |

| Measures of Compliance: | • Related policies, procedures, written directives and practices (PER 3.07 Sexual Misconduct, Sexual Abuse, and Sexual Harassment of Inmates, PER 3.11 Background Checks, PER 3.34 Disciplinary Procedure, PER 3.35-1 Supervisory Preliminary Inquiries and Summary Action, SEC 8.06 Staffing and Around the Clock Supervision, SEC 8.17 Inmate Searches, ICL 17.02 Confinement of Juveniles HCS 12.15 Prison Rape Elimination Act Reporting Regulations, HCA 12.16 Response to Sexual Abuse, ICL 17.00 Classification/Screening/Housing Categories/Non-Discrimination, RGT 13.09 Grievance Procedures, RGT 13.13 Inmates with Disabilities, VOL 20.01 Recruitment). <br> • Standards of the Prison Rape Elimination Act of 2003. <br> • PREA Audit Report of February 2024. |
|---|---|
| | • Analysis of incidents involving sexual abuse, sexual harassment, and sexual touching. <br> • Review of sexual misconduct investigations and incidents classified as non-PREA. |
| Steps taken by the County to Implement: | MDC has developed policies and protocols to address the prevention, detection, reporting, and investigation of sexual abuse, sexual harassment, and sexual touching. MDC had a PREA audit in July 2023 and the report issued in February 2024 found its policies and protocols to be compliant with the PREA standards. |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has developed policies and protocols to adequately address the prevention and detection of sexual abuse, sexual harassment, and sexual touching if implemented. MDC's policies and protocols as to the reporting and investigation do not address the issues. While a reportable PREA incident of sexual harassment may require repeated incidents, accepted correctional practice is that a single or isolated incident of sexual harassment is enough to warrant action and investigation. Without the investigation of single or isolated incidents, it is difficult to assess the risk of sexual assault. The investigations are in partial compliance due to a number of factors. The main factors deal with the investigation of sexual misconduct complaints. The first issue is the length of time it takes to do the review of the complaint to decide as to whether it should be referred. The second issue is the accuracy of the review and classification; many involved allegations of sexual misconduct and are closed as not being appropriate for investigation. The third issue which is the primary issue, is the length of time between when the investigation is report and the investigation begun which frequently resulted in the investigator being unable to determine if the complaint was |

| | valid or not due to the failure to interview inmate complainants (often they are out of jail due to the length of time taken to begin the investigation) and the inability to review video which had been recorded over. MDC is commended for attempting to have has at least one female corrections officers in the female segregation units, but it appears that the rover who relieves the unit is often a male officer. Cross gender supervision in other housing areas remains a concern given the configuration of the shower areas and the ability of an officer to be alone with a female inmate in the classroom or closet. Almost all of the cases substantiated involved just that scenario. An opposite gender corrections officer was working in the housing unit alone and had the opportunity to be alone with the inmate of the opposite gender. Most of these cases happened on the graveyard shift when staffing is at its lowest and the behavior was less likely to be detected by other staff. |
|---|---|
| Recommendations: | 1. Timely assign cases to be investigated.<br>2. As part of investigations into sexual misconduct, seek to determine whether there were red flags missed or knowledge of inappropriate behavior, including lack of proper boundaries, by other staff.<br>3. While the PREA definitions control whether the allegations and the result of the investigations have to be reported, they do not control whether accepted correctional practice requires an investigation. Develop a process for all allegations of sexual misconduct to be investigated.<br>4. Video should be copied at the time of the report of the incident to ensure it will be available for review.<br>5. Consider placement of cameras in classroom and utility closets. They could be motion sensor cameras triggered by the opening of the door.<br>6. Do not allow for cross-gender supervision (particularly male corrections officers in female units) on the graveyard shift if only MDC data found that 79% of the allegations of staff sexual misconduct involved cross-gender supervision.one officer is assigned. This should include those providing relief. |

| Paragraph | Sexual Misconduct:<br>I. 3) Whether MDC's policies and protocols adequately address the collection of data regarding sexual abuse (including inmate-on-inmate and staff-on-inmate sexual abuse), sexual harassment, and sexual touching. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: | Partial Compliance:<br>09/19/2018;<br>06/27/2019;<br>02/04/2020;<br>11/20/2020;<br>07/02/2021;<br>06/08/2022;<br>05/07/2023;<br>08/03/2023;<br>02/23/2024;<br>08/15/2024;<br>02/25/2025 | Non-Compliance:<br>09/18/2015 | Other: |

| Measures of Compliance: | • Related policies, procedures, written directives and practices (PER 3.07 Sexual Misconduct, Sexual Abuse, and Sexual Harassment of Inmates) <br> • Documentation of data collected regarding sexual abuse, sexual harassment, and sexual touching. <br> • Final PREA Audit Report of October 2019. <br> • Final PREA Audit Report of February 2024. |
|---|---|
| Steps taken by the County to Implement: | MDC has implemented PER 3.07 which addressed the collection of data regarding sexual abuse, sexual harassment, and sexual touching. MDC revised the collection of data found to be deficient in the PREA Audit Report in March 2019. |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has made significant progress towards the development of policies and protocols regarding the collection of data regarding sexual abuse, sexual harassment, and sexual touching. MDC revised its collection of found deficient as to PREA standards during the PREA Audit report of March 2019. The data collection process continues to improve but the analysis does not meet substantial compliance. There are charts, and limited analysis and recommendations. Collection and analysis of data regarding the timeliness and accuracy of classification of complaints and investigations should be included. |
| Recommendations: | 1. Provide documentation as to collection and analysis of data including the collecting of data regarding how many cases are closed without being investigated, the length of time for review and classification of the complaint, the length of time to assignment of the investigation and the length of time to conduct the investigation. |

| Paragraph | Sexual Misconduct: <br> I. 4) Whether MDC adequately protects inmates from sexual abuse, sexual harassment, and sexual touching. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: | Partial Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Non-Compliance: 09/18/2015 | Other: |

| Measures of Compliance: | • Related policies, procedures, written directives and practices (PER 3.07 Sexual Misconduct, Sexual Abuse, and Sexual Harassment of Inmates)<br>• Documentation of data collected regarding sexual abuse, sexual harassment, and sexual touching.<br>• PREA Audit Report of March 2019.<br>• Corrective action plan to address the deficiencies noted in the PREA Audit Report of March 2019.<br>• Analysis of sample of incidents involving sexual abuse, sexual harassment, and sexual touching.<br>• Analysis of sample of investigations involving sexual abuse, sexual harassment, and sexual touching.<br>• Final PREA Audit Report of October 2019.<br>• Final PREA Audit Report of February 2024. |
|---|---|
| Steps taken by the County to Implement this paragraph: | MDC has developed policies, protocols, and training aimed at protecting inmates from sexual abuse, sexual harassment, and sexual touching. |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has made significant progress towards adequately protects inmates from sexual abuse, sexual harassment, and sexual touching. An extensive review of the incidents and investigations related to sexual misconduct, sexual abuse, sexual harassment, and sexual touching reveals that, while isolated incidents occur, MDC has demonstrated it has made significance progress. The delay in investigations is concerning as it could allow for the opportunity for multiple victims due to the first report not being acted upon quickly. Without the collection and analysis of data required under I. 3., Monitor Frasier is unable to conclude that MDC has met the substantive requirements of the provision. This particularly relates to the issue of cross gender supervision and allegations of sexual harassment of LGBTQI inmates. |
| Recommendations: | 1. Educate transgender inmates that they may request an officer of a different gender to search them. Reemphasize to corrections officers and supervisor that the offer should be made to known transgender inmates.<br>2. Other recommendations in this section. |

MDC is in Partial Compliance with (4) of the four (4) Sexual Misconduct provisions. The Sexual Misconduct subcategory remains in Partial Compliance. Quality of the initial review of the complaint and timeliness are the driving factors.

## Domain 8: Use of Force by Security Staff and Internal Investigations

COA #3 Domain 8 consists of two subcategories, Use of Force by Security Staff and Internal Investigations. Monitor Frasier found MDC is in Substantial Compliance with eight (8) and in Partial-Compliance with six (6) of the remaining fourteen (14) Use of Force provisions. Thus, the entire Use of Force subcategory is in Partial-Compliance. Monitor Frasier found MDC is in Substantial Compliance with six (6) and in Partial Compliance with three (3) of the nine (9) of the Internal Investigations subcategories. Thus, the Internal Investigations subcategory remains in Partial Compliance. MDC is in Partial Compliance with Domain 8.

The following consists of the status, measures of compliance, steps taken by the County to comply, Monitor Frasier's analysis and factual basis for finding, and Monitor Frasier's recommendations to obtain and maintain compliance for Domain 8. It should be noted that Monitor Frasier requested and received an extensive sample of investigations. Monitor Frasier, as an experienced investigator and expert in the field of internal investigations in the correctional setting does not feel it is necessary to review every report in order to reach a conclusion as to whether MDC is adequately performing.

**Use of Force by Security Staff**

| Paragraph | Use of Force by Security Staff and Internal Investigations: |
|---|---|
| | B. 1) Whether MDC has developed and effectively implements comprehensive and contemporary policies regarding the appropriate use of force, including the following area: restraint devices *[Doc. No. 1161, p. 5, para, 2(f) & (g)]*. restraint and control (defensive tactics) *[Doc. No. 1161, p. 5, para, 2(f) & (g)]*. inflammatory and chemical agents *[Doc. No. 1161, p. 5, para, 2(f) & (g)]*. |
| | <ul><li>Whether MDC implements a policy regarding the use of inflammatory</li><li>agents to assist with the forced medication of seriously mentally and medically ill inmates which meets generally accepted correctional standards.</li><li>Taser CEW *[Doc. No. 1161, p. 5, para, 2(f) & (g)]*.</li><li>Whether MDC implements a policy regarding the use of a Taser CEW to assist with the forced medication of seriously mentally and medically ill inmates which meet generally accepted correctional standards.</li><li>less lethal munitions and distraction devices *[Doc. No. 1161, p. 5, para, 2(f) & (g)]*.</li><li>restraint chair *[Doc. No. 1161, p. 5, para, 2(f) & (g)]*.</li><li>Whether MDC only uses the restraint chair in a fashion consistent with the manufacturer's recommendations;</li><li>Whether MDC prohibits the use of metal restraints including handcuffs unless the inmate has broken free of the chair's soft restraints;</li><li>Whether MDC prohibits the placement of inmates in the restraint, hand- cuffed or otherwise, restrained behind the back of the chair;</li><li>Whether MDC requires the prior authorization by a shift supervisor before an inmate is placed in a restraint chair;</li><li>Whether MDC requires the periodic check of a restrained inmate's wrists, preferably every 20 minutes;</li><li>Whether MDC requires written reports regarding use of a restraint chair;</li><li>Whether MDC requires the preparation of a written report every time that security staff places an inmate in a restraint chair; and</li><li>Whether the shift supervisor or his designee must investigate modification to the restraint chair and alternative forms of restraint. *[Doc. No. 256 pp.14-15, para. III(N)(3)]*.</li></ul> |

| Compliance Status: | Compliance: 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: 09/18/2018; 06/27/2019 | Non-Compliance: 09/18/2015 | Other: |
|---|---|---|---|---|
| Measures of Compliance: | <ul><li>Related policies, procedures, written directives and practices (SEC 8.36 Use of Force, SEC 8.36-1 Restraint Devices, SEC 8.36-2 Restraint and Control, SEC 8.36-3 Inflammatory and Chemical Agents, SEC 8.36-4 Taser Conducted Electrical Weapons, SEC 8.36-7 Security Equipment, SEC 8.36-8 Video Recording Devices and Recording Requirements, SEC-9 Use of Force Reporting Requirements and Reviews, and SEC 8.36-10 Early Warning System).</li><li>Use of Force Reports.</li><li>Use of Force Report Statistics.</li><li>Use of Force Review Committee Reports.</li><li>Analysis of incidents involving use of force for trends when there is non-compliance with the related policies and procedures regarding the appropriate use of force.</li></ul> | | | |
| Steps taken by the County to Implement: | MDC has developed multiple policies, protocols, trainings, and reviews regarding the appropriate use of force. MDC has a Use of Force Review Panel which is charged with review of all uses of force for compliance with policies. Significant analysis has been done of the data collected by the Use of Force Review Panel. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has successfully generally, met the substantive requirements of developing and effectively implementing comprehensive and contemporary policies and protocols regarding the appropriate use of force. MDC has done a good job of collecting data on use of force which has allowed for MDC to perform the necessary analysis and Monitor Frasier to make an assessment as to whether incidents found to be inappropriate or not documented were rooted in the policies and procedures. The analysis of uses of force found to be inappropriate or not properly documented has been performed to allow for a determination of whether the policies and procedures are effectively implemented regarding the proper use of force. Monitor Frasier has concluded that MDC has developed and effectively implemented comprehensive and contemporary policies regarding the appropriate use of force as to intermediate devices. Monitor Frasier has reviewed the incidents in which counsel for Plaintiffs and Plaintiff-Intervenors disagree with the finding of the Use of Force Review Panel and, generally, finds their disagreement unwarranted. | | | |
| Recommendations: | No recommendations required at this time. | | | |

| Paragraph | Use of Force by Security Staff and Internal Investigations: B. 2) Whether MDC's use of force policies address the following impermissible uses of force and whether the MDC effectively implements such policies: <ul><li>use of force as a first response to verbal insults or inmate verbal taunts.</li><li>use of force as a first response to verbal insults or inmates' failure to follow instructions where there is no risk of harm to the safety of the institution, inmates, or staff, unless MDC security staff has attempted a hierarchy of nonphysical alternatives that are documented.</li><li>use of force as punishment, discipline, or retaliation.</li><li>use of force against an inmate after the inmate has ceased to offer resistance and is under control.</li><li>use of choke holds on an inmate.</li><li>use of unnecessary or excessive force.</li><li>use of canines (dogs) for use of force purposes against an inmate.</li><li>use of force before using confrontation avoidance techniques and other alternatives to the use of force when the circumstances permit the use of such techniques and alternatives. as a first response to verbal insults or inmate verbal taunts. *[Doc. No. 1161, p. 5, para. 2(f) & (g)].*</li></ul> | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: 09/18/2018; 06/27/2019 | Non-Compliance: 09/18/2015 | Other: |
| Measures of Compliance: | <ul><li>Related policies, procedures, written directives and practices (SEC 8.36 Use of Force, SEC 8.36-1 Restraint Devices, SEC 8.36- 2 Restraint and Control, SEC 8.36- 3 Inflammatory and Chemical Agents, SEC 8.36-4 Taser Conducted Electrical Weapons, SEC 8.36-7 Security Equipment, SEC 8.36-8 Video Recording Devices and Recording Requirements, SEC-9 Use of Force Reporting Requirements and Reviews, and SEC 8.36-10 Early Warning System).</li><li>Use of Force Reports.</li><li>Use of Force Report Statistics.</li><li>Use of Force Review Committee Reports.</li><li>Analysis of incidents involving use of force for trends when there is non- compliance with the related policies and procedures regarding impermissible uses of force.</li></ul> | | | |
| Steps taken by the County to Implement: | MDC has developed multiple policies, protocols, trainings, and reviews regarding impermissible uses of force. MDC has a Use of Force Review Panel which is charged with review of all uses of force for compliance with policies including whether impermissible uses of force occur. | | | |

71

| | |
|---|---|
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has successfully, generally, met the substantive requirement of having policies that address impermissible uses of force and effectively implement those policies. The Use of Force Review Panel screens all use of force reports to determine if an impermissible use of force has occurred. MDC has done a good job of collecting data on impermissible uses of force which has allowed MDC to perform the necessary analysis and Monitor Frasier to make an assessment as to whether the uses of force found to be impermissible were rooted in the policies and procedures. Monitor Frasier has concluded that MDC has appropriate policies regarding the impermissible uses of force and effectively implements them. The review and analysis conducted by the Use of Force Review Panel is a model of best practices. Monitor Frasier has reviewed the incidents in which counsel for Plaintiffs and Plaintiff- Intervenors disagree with the finding of the Use of Force Review Panel and finds their disagreement unwarranted. Monitor Frasier will continue to closely watch the unnecessary and unreasonable uses of force to determine whether the rating of this provision should be changed. |
| Recommendations: | No recommendations required at this time. |

| Paragraph | Use of Force by Security Staff and Internal Investigations: B. 4) Whether MDC has developed and effectively implements a policy to ensure that staff adequately and promptly reports all uses of force, including the use of the restraint chair. *[Doc. No. 1161, p. 5, para, 2h)] & [Doc. No. 256, pp. 13-15, para. III(N)(1) & (3)].* |
|---|---|

| Compliance Status: | Compliance: | Partial Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Non-Compliance: 09/18/2015 | Other: |
|---|---|---|---|---|
| Measures of Compliance: | <td colspan="4"><ul><li>Related policies, procedures, written directives and practices (SEC 8.36 Use of Force, SEC 8.36-1 Restraint Devices, SEC 8.36- Restraint and Control, SEC 8.36- 3 Inflammatory and Chemical Agents, SEC 8.36-4 Taser Conducted Electrical Weapons, SEC 8.36- 7 Security Equipment, SEC 8.36-8 Video Recording Devices and Recording Requirements, SEC-9 Use of Force Reporting Requirements and Reviews, and SEC 8.36-10 Early Warning System).</li><li>Use of Force Reports.</li><li>Use of Force Report Statistics.</li><li>Use of Force Review Committee Reports.</li><li>Analysis of incidents involving use of force for trends when there is non- compliance with the related policies and procedures regarding adequate and prompt reporting of use of force.</li></ul></td> |
| Steps taken by the County to Implement: | <td colspan="4">MDC has developed multiple policies, protocols, trainings, and reviews which require the adequate and prompt reporting of all uses of force. MDC does not currently utilize a restraint chair. MDC has a</td> |

|  | Use of Force Review Panel which is charged with review of all uses of force for compliance with policies including whether there is adequate and prompt reporting of all uses of force. |
| --- | --- |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has made significant progress towards having policies which effectively implement the adequate and prompt reporting of all uses of force. The Use of Force Review Panel has been effective at reviewing all uses of force to determine whether there is adequate and prompt reporting on all uses of force. Adequacy of the report is seldom the issue. Promptness has been identified as an issue. Data has been collected and efforts are being made to address the issue with supervisors. |
| Recommendations: | 1. Continue to enforce policy requirements as timely preparation of use of force reports. Progressive discipline is in order at this point given that training and counseling has not seemed to improve the lateness of reports. |

| Paragraph | Use of Force by Security Staff and Internal Investigations: B. 5) Whether MDC has adopted and effectively implements a policy to ensure that use of force will: <ul><li>be written in specific terms in order to capture the details of the incident;</li><li>state whether staff attempted confrontation avoidance techniques or other alternatives to the use of force before using force and if not, include an explanation of the reasons why staff did not attempt to use such techniques or alternatives;</li><li>contain an accurate, detailed account of the events leading to the use of force incident;</li><li>include a description of the weapon(s) or instrument(s) of restraint, if any, and the manner in which it was used;</li><li>be accompanied with the inmate disciplinary report that prompted the use of force incident, if applicable;</li><li>state the nature and extent of injuries sustained both by the inmate and staff member;</li><li>contain the date and time medical attention was actually provided;</li><li>describe, in factual terms, the type and amount of force used and precise actions taken in a particular incident and avoid use of "boiler plate" descriptions for describing force, such as, "inmate taken to the ground with the force that was necessary"; and</li><li>state whether the planned or controlled use of force was video recorded and, if was not, include an explanation of why it was not.</li></ul> |
| --- | --- |

| Compliance Status: | Compliance: 11/20/2020; 07/2/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: 09/18/2018; 06/27/2019; 02/04/2020 | Non-Compliance: 09/18/2015 | Other: |
| --- | --- | --- | --- | --- |

| Measures of Compliance: | <ul><li>Related policies, procedures, written directives and practices (SEC 8.36 Use of Force, SEC 8.36-1 Restraint Devices, SEC 8.36-2 Restraint and Control, SEC 8.36-3 Inflammatory and Chemical Agents, SEC 8.36-4 Taser Conducted Electrical Weapons, SEC 8.36-7 Security Equipment, SEC 8.36-8 Video Recording Devices and Recording Requirements, SEC-9 Use of Force Reporting Requirements and Reviews, and SEC 8.36-10 Early Warning System).</li><li>Use of Force Reports.</li><li>Use of Force Report Statistics.</li><li>Use of Force Review Committee Reports.</li><li>Analysis of incident reports for whether the required information listed in this subcategory is provided and whether supervisors are properly documenting whether or not policy is followed.</li></ul> |
|---|---|
| Steps taken by the County to Implement: | MDC has developed multiple policies, protocols, trainings, and reviews which require the provision of the information listed in this subcategory. MDC has a Use of Force Review Panel which is charged with review of all uses of force for compliance with policies including the provision of the information listed in this subcategory. |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has successfully, generally, met the substantive requirement of having policies which effectively implement the requirement that the information listed in this subcategory be provided. The Use of Force Review Panel has been effective at reviewing reports to determine if the information listed in this subcategory is provided. The necessary analysis of incidents in which the information listed is not provided has been performed and training has been conducted to address deficiencies. MDC performs a very critical analysis of compliance with the use of force policies. It is not expected that every single criteria would be complied with 90% of the time. What is expected is that the criteria be complied with a significant amount of the time and that deficiencies be ad d r e s s ed. Timeliness of reports is addressed elsewhere. |
| Recommendations: | No recommendations required at this time. |

| Paragraph | Use of Force by Security Staff and Internal Investigations:<br>B. 7) Whether MDC has developed and effectively implements a system to track all incidents of use of force that, at a minimum, includes the following information:<ul><li>a tracking number;</li><li>the inmate(s) name;</li><li>housing assignment;</li><li>date;</li><li>type of incident;</li><li>injuries (if applicable);</li><li>if medical care is provided;</li><li>primary and secondary staff involved;</li><li>reviewing supervisor;</li><li>external reviews and results (if applicable);</li><li>remedy taken (if appropriate); and</li><li>administrative sign-off.</li></ul> | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: 06/27/2019 | Partial Compliance: | Non-Compliance: 09/18/2015 | Other: |

| | | | | |
|---|---|---|---|---|
| | 02/04/2020;<br>11/20/2020;<br>07/02/2021;<br>06/08/2022;<br>05/07/2023;<br>08/03/2023;<br>02/23/2024;<br>08/15/2024;<br>02/25/2025 | 09/18/2018 | | |
| Measures of Compliance: | • Related policies, procedures, written directives and practices (SEC 8.36 Use of Force, SEC 8.36-1 Restraint Devices, SEC 8.36-2 Restraint and Control, SEC 8.36-3 Inflammatory and Chemical Agents, SEC 8.36-4 Taser Conducted Electrical Weapons, SEC 8.36-7 Security Equipment, SEC 8.36-8 Video Recording Devices and Recording Requirements, SEC-9 Use of Force Reporting Requirements and Reviews, and SEC 8.36-10 Early Warning System).<br>• Use of Force Reports.<br>• Use of Force Report Statistics.<br>• Use of Force Review Committee Reports. | | | |
| Steps taken by the County to Implement: | MDC has developed multiple policies and forms which require the information listed in the provision. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has successfully generally, met the substantive terms and requirements of this provision as MDC has implemented a system to track the information listed in the provision and harvest the information in an effective manner to allow for analysis. | | | |
| Recommendations: | No recommendations required at this time. | | | |

| Paragraph | Use of Force by Security Staff and Internal Investigations:<br>B. 8) Whether MDC has adopted and effectively implements policies to ensure that, as part of a use of force incident package, security staff take photographs of any and all reported injuries sustained by inmates.<br>• Whether MDC security staff promptly takes photographs following a use of force incident.<br>• Whether the photographs become evidence and are made part of the use of force package and, if applicable, used for investigatory purposes. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance:<br>02/04/2020;<br>11/20/2020;<br>07/02/2021;<br>06/08/2022;<br>05/07/2023;<br>08/03/2023;<br>02/23/2024;<br>08/15/2024;<br>02/25/2025 | Partial Compliance:<br>09/18/2018;<br>06/27/2019 | Non-Compliance:<br>09/18/2015 | Other: |

| Measures of Compliance: | • Related policies, procedures, written directives and practices (SEC 8.36 Use of Force, SEC 8.36-1 Restraint Devices, SEC 8.36- 2 Restraint and Control, SEC 8.36- 3 Inflammatory and Chemical Agents, SEC 8.36-4 Taser Conducted Electrical Weapons, SEC 8.36-7 Security Equipment, SEC 8.36-8 Video Recording Devices and Recording Requirements, SEC-9 Use of Force Reporting Requirements and Reviews, and SEC 8.36-10 Early Warning System).<br>• Use of Force Reports.<br>• Use of Force Report Statistics.<br>• Use of Force Review Committee Reports.<br>• Analysis of incident reports for whether MDC complies with the policy provisions which requires the taking of photographs of any and all reported injuries sustained by inmates and included in the use of force packet. |
|---|---|
| Steps taken by the County to Implement: | MDC has developed multiple policies and forms which require the prompt taking of photographs of any and all reported injuries sustained by inmates in a use of force incident and requires them to become part of the use of force packet as evidence. MDC has a Use of Force Review Panel which is charged with review of all uses of force for compliance with policies including the taking of photographs of any and all reported injuries sustained by inmates and inclusion in the use of force packet as evidence. Compliance with taking photographs was a problem in the past but has been addressed by replacement of cameras. |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC successfully, generally met the substantive requirement of the prompt taking of photographs of any and all reported injuries sustained by inmates in a use of force incident and including them in use of force packet as evidence. The Use of Force Review Panel has been effective as reviewing all uses for force to determine whether photographs of injuries sustained by inmates in a use of force have been taken promptly and including in the use of force packets as evidence. Documentation of the analysis of use of force incidents to determine whether photographs were taken promptly and made part of the use of force packet in accordance with MDC policies was provided to demonstrate that MDC provided photographs in excess of 90% of the cases in which it was required by policy. |
| Recommendations: | No recommendations required at this time. |

| Paragraph | Use of Force by Security Staff and Internal Investigations:<br>B 9) Whether MDC has adopted and effectively implements policies to ensure that management reviews use of force reports and inmate grievances alleging excessive or inappropriate uses of force. |
|---|---|

| Compliance Status: | Compliance: | Partial Compliance: 09/18/2018; 06/27/2019 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Non-Compliance: 09/18/2015 | Other: |
|---|---|---|---|---|
| Measures of Compliance: | • Related policies, procedures, written directives and practices (SEC 8.36 Use of Force, SEC 8.36-1 Restraint Devices, SEC 8.36- 2 Restraint and Control, SEC 8.36- 3 Inflammatory and Chemical Agents, SEC 8.36-4 Taser Conducted Electrical Weapons, SEC 8.36-7 Security Equipment, SEC 8.36-8 Video Recording Devices and Recording Requirements, SEC-9 Use of Force Reporting Requirements and Reviews, and SEC 8.36-10 Early Warning System). <br> • Use of Force Reports. <br> • Use of Force Report Statistics. <br> • Use of Force Review Committee Reports. <br> • Review of for incidents and inmate grievances alleging excessive or inappropriate uses of force. | | | |
| Steps taken by the County to Implement: | MDC has developed multiple policies, protocols, and processes to ensure that management reviews use of force reports and inmate grievances alleging excessive or inappropriate uses of force. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has made significant progress towards ensuring that management reviews use of force reports and inmate grievances alleging excessive or inappropriate uses of force. MDC has developed and refined a Use of Force Review Panel. The UOFRP does a good job reviewing if the statements and/or inmate allege staff misconduct and making the appropriate referral. However lacking is the demonstration that management is reviewing inmate grievances alleging excessive or inappropriate use of force. In fact deficiencies were noted in the grievance provision requiring the same and referral continue. | | | |
| Recommendations: | 1. Provide documentation that management is properly reviewing inmates grievances alleging excessive or inappropriate uses of force. Management should review inmate grievance for allegations and referral without deciding whether they are valid. | | | |

| Paragraph | Use of Force by Security Staff and Internal Investigations: <br> B. 10) Whether MDC has adopted and effectively implements policies to ensure prompt administrative reviews of use of force reports. <br> • Whether such reviews include a case-by-case review of individual incidents of use of force as well as a more systemic review in order to identify patterns of incidents. <br> • Whether MDC incorporates such information into quality management practices and takes necessary corrective action. |
|---|---|

| Compliance Status: | Compliance: 06/27/2019 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024 | Partial Compliance: 09/18/2018; 08/15/2024; 02/25/2025 | Non-Compliance: 09/18/2015 | Other: |
|---|---|---|---|---|
| Measures of Compliance: | • Related policies, procedures, written directives and practices (SEC 8.36 Use of Force, SEC 8.36-1 Restraint Devices, SEC 8.36- 2 Restraint and Control, SEC 8.36- 3 Inflammatory and Chemical Agents, SEC 8.36-4 Taser Conducted Electrical Weapons, SEC 8.36-7 Security Equipment, SEC 8.36-8 Video Recording Devices and Recording Requirements, SEC-9 Use of Force Reporting Requirements and Reviews, and SEC 8.36-10 Early Warning System). <br> • Use of Force Reports. <br> • Use of Force Report Statistics. <br> • Use of Force Review Committee Reports. <br> • Reviews of Use of Force Review Panel reports and documentation that information is being incorporated into quality management practices and necessary corrective action. | | | |
| Steps taken by the County to Implement: | MDC has developed multiple policies, protocols, and processes to ensure administrative reviews use of force reports and inmate grievances alleging excessive or inappropriate uses of force. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation failed to demonstrate that MDC has successfully generally, met the substantive terms and requirements of ensuring prompt administrative reviews of use of force reports which includes both individual incidents of use of force as well as systemic review to identify patterns. MDC has developed a Use of Force Review Panel whose task is to perform a case-by-case review of use of force incidents as well as a systematic review to identify patterns of incidents. What was missing for this monitoring period was the reports of the Use of Force Review Panel being reviewed by the MEAC, and the information being incorporated into quality management practices with necessary corrective action being taken. | | | |
| Recommendations: | 1. Have the MEAC review the findings of the Use of Force Review Panel. | | | |
| | | | | |

| Paragraph | Use of Force by Security Staff and Internal Investigations: <br> B. 11) Whether MDC has established and effectively implements a system for referring for investigation certain use of force incidents, including but not limited to those involving: <br> • injuries that are extensive or serious; <br> • injuries involving fractures or head trauma; <br> • injuries of suspicious nature (including black eyes, broken teeth, injuries to the genitals, etc.); <br> • injuries that require treatment at out hospitals; and <br> • reports of events by staff and inmates which are inconsistent. |
|---|---|

| Compliance Status: | Compliance: 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: 09/18/2018 | Non-Compliance: 09/18/2015 | Other: |
|---|---|---|---|---|
| Measures of Compliance: | • Related policies, procedures, written directives and practices (SEC 8.36 Use of Force, SEC 8.36-1 Restraint Devices, SEC 8.36- 2 Restraint and Control, SEC 8.36-3 Inflammatory and Chemical Agents, SEC 8.36-4 Taser Conducted Electrical Weapons, SEC 8.36-7 Security Equipment, SEC 8.36-8 Video Recording Devices and Recording Requirements, SEC-9 Use of Force Reporting Requirements and Reviews, and SEC 8.36-10 Early Warning System). <br>• Use of Force Reports. <br>• Use of Force Report Statistics. <br>• Use of Force Review Committee Reports. <br>• Documentation of referrals for investigation of use of force incidents which meet the criteria listed in the provision. <br>• Analysis of uses of force reports and referrals to determine whether use of force incidents which meet the criteria listed in the provision are referred for investigation. | | | |
| Steps taken by the County to Implement: | MDC has developed multiple policies, protocols, trainings, and reviews which require the referral of uses of force for investigation that meet the listed criteria. MDC has a Use of Force Review Panel which is charged with review of all uses of force and referring for investigation the cases that meet the listed criteria. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has successfully generally, met the substantive terms and requirements of the referral for investigation of use of force incidents that meet the listed criteria. The Use of Force Review Panel effectively reviews all use of force incident reports for the listed criteria and refers them for investigation. While Monitor Frasier finds MDC in Substantial Compliance with the provision, there is room for improvement in direct referrals by supervisors. | | | |
| Recommendations: | No recommendations at this time. | | | |

| Paragraph | Use of Force by Security Staff and Internal Investigations: <br> B. 12) Whether MDC has adopted and effectively implements policies to ensure that inmates may report allegations of the use of excessive force verbally to any MDC staff member, who will reduce such reports to writing. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: 007/02/2021; 6/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; | Partial Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020 | Non-Compliance: 09/18/2015 | Other: |

|  | 02/25/2025 |  |  |  |
|---|---|---|---|---|
| Measures of Compliance: | • Related policies, procedures, written directives and practices (SEC 8.36 Use of Force, SEC 8.36-1 Restraint Devices, SEC 8.36-2 Restraint and Control, SEC 8.36-3 Inflammatory and Chemical Agents, SEC 8.36-4 Taser Conducted Electrical Weapons, SEC 8.36-7 Security Equipment, SEC 8.36-8 Video Recording Devices and Recording Requirements, SEC-9 Use of Force Reporting Requirements and Reviews, and SEC 8.36-10 Early Warning System).<br>• Use of Force Reports.<br>• Use of Force Report Statistics.<br>• Use of Force Review Committee Reports.<br>• Documentation of reports reduced to writing based on an inmate's verbal report of an allegation of excessive use offorce.<br>• Analysis of grievances alleging use of excessive force to determine whether the inmate claims a verbal report was made to a MDC staff member and whether it was reduced to writing or not. |  |  |  |
| Steps taken by the County to Implement: | MDC has developed multiple policies, protocols, trainings, and reviews which allow for an inmate to verbally report an allegation of the use of excessive use of force to any MDC staff member and for it to be reduced to writing. |  |  |  |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has successfully generally met the substantive terms and requirements of allowing an inmate to verbally report an allegation of the use of the excessive force to any MDC staff member and the MDC staff member reducing it to writing. MDC now conducts the necessary analysis of incidents. |  |  |  |
| Recommendations: | No recommendations at this time. |  |  |  |

| Paragraph | Use of Force by Security Staff and Internal Investigations:<br>B. 13) Where there is evidence of staff misconduct related to inappropriate or unnecessary force against inmates, whether MDC initiates appropriate personnel actions and systemic remedies, as appropriate. Whether MDC appropriately disciplines any correctional officer found to have:<br>• engaged in the use of unnecessary or excessive force;<br>• failed to report or report accurately the use of force;<br>• retaliated against an inmate or other staff member for reporting the use of excessive force; or<br>• interfered or failed to cooperate with an internal investigation regarding use of force. |  |  |  |
|---|---|---|---|---|
| Compliance Status: | Compliance: | Partial Compliance:<br>09/18/2018;<br>06/27/2019;<br>02/04/2020;<br>11/20/2020;<br>07/02/2021;<br>06/08/2022;<br>05/07/2023;<br>08/03/2023;<br>02/23/2024;<br>08/15/2024;<br>02/25/2025 | Non-Compliance:<br>09/18/2015 | Other: |

| Measures of Compliance: | • Use of force investigation reports.<br>• Documentation of personnel action initiated when inappropriate or unnecessary force, failed to time or accurately report the use of force, retaliated against an inmate or other staff member for reporting the use of excessive force, or interfered or failed to cooperate with an internal investigation regarding the use of force is substantiated.<br>• Documentation of systemic remedies initiated when allegations are substantiated.<br>• Documentation of length of time taken at various states of the investigation and disciplinary process. |
|---|---|
| Steps taken by the County to Implement this paragraph: | MDC has implemented a disciplinary plan which provides for personnel action and systemic remedies when inappropriate or unnecessary force against inmates is substantiated. MDC uses the IA Pro tracking system to document investigations and discipline. |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has made significant progress towards the implementation of a system where, when there is evidence of staff misconduct related to inappropriate or unnecessary force against inmates, MDC initiates appropriate personnel actions and systemic remedies, as appropriate, but documentation of systemic remedies is lacking as to two of the categories. MDC is now using IA Pro to track investigations and discipline. The prolonged period between the incident and when the final disposition takes place continues to be concerning as does the level of discipline for serious infractions. |
| Recommendations: | 1. Analyze the length of time taken at various states of the disciplinary process to determine where delays can be reduced. There appear to be significant delays from the time the incident occurs and it is reviewed by UOFP and referred to OPS and then again in the assignment of the case at OPS.<br>2. In addition to reporting discipline on a spreadsheet, prepare a report which indicates the personnel action and systemic remedies initiated when a correctional officer is found to have engaged in any of the listed violations by category. |

| Paragraph | Use of Force by Security Staff and Internal Investigations:<br>  B. (15) Use of Force Training: *[Doc. No. 1161, p. 5, para 2(f)]*<br>  • Whether MDC developed and employs an effective and comprehensive training program in the appropriate use of force.<br>  • Whether MDC ensures that correctional officers receive adequate training in MDC's use of force policies.<br>  • Whether MDC ensures that correctional officers receive adequate training in the following areas:<br>    1. use of force;<br>    2. confrontation avoid techniques;<br>    3. use of restraint;<br>    4. restraint and control techniques (defensive tactics); inflammatory and chemical agents;<br>    5. electronic control devices (Taser);<br>    6. less-lethal munitions (if applicable); |
|---|---|

|  | 7. distraction devices (if applicable); 8. firearms (if applicable); 9. documenting and reporting the use of force; and 10. the MDC's policy regarding discipline for violations of policies related to the use of force. • Whether MDC ensures that correctional officers receive pre-service and in-service training on reporting use of force and completing use of force reports. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: 09/18/2018; 06/27/2019 | Non-Compliance: 09/18/2015 | Other: |
| Measures of Compliance: | • Use of force training curriculum (40 hours). • Documentation indicating status of training for correctional officers. • Use of force reports. • Use of force investigations. • Use of Force Review Panel reports. | | | |
| Steps taken by the County to Implement: | MDC has developed a training program which includes the listed criteria, and all current employees have attended. The curriculum is now taught as part of the pre- service academy. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has successfully generally met the requirement of the development and employment of an effective and comprehensive training program which includes meets all of the listed criteria. All current staff have been trained and all new staff receive training in the pre-service academy. The Use of Force Review Panel and the MEAC routinely recommend changes as a result of analysis of incidents involving the use of force which have been incorporated into the training. | | | |
| Recommendations: | No recommendations required at this time. | | | |

| Paragraph | Use of Force by Security Staff and Internal Investigations: B. 16) Whether MDC ensures that incident reports, use of force reports, and inmate grievances are screened for allegations of staff misconduct and, if the incident or allegation meets established criteria, that is referred for investigation. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: | Partial Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Non-Compliance: 09/18/2015 | Other: |

| Measures of Compliance: | • Related policies, procedures, written directives and practices (SEC 8.36 Use of Force, RGT 13.09 Grievance Procedures).<br>• Use of Force Reports.<br>• Incident reports.<br>• Inmate grievances.<br>• Use of Force Review Committee Reports.<br>• Documentation of referrals for investigation of staff misconduct incidents which meet the criteria listed in the provision.<br>• Analysis of incidents reports, uses of force reports, inmate grievances, and referrals to determine whether allegations of staff misconduct are referred for investigation |
|---|---|
| Steps taken by the County to Implement: | MDC has developed multiple policies, protocols, trainings, and reviews which provide for the screening of incident reports, use of force reports, and inmate grievances and referral to investigation of staff misconduct that meet the listed criteria. |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has made significant progress towards the screening of incident reports, use of force reports, and inmate grievances for allegations of staff misconduct and referral to investigation is it meets the listed criteria. The Use of Force Review Panel effectively reviews all use of force incident reports for the listed criteria and refers them for investigation. However, the responsibility to refer does not rest solely with the Use of Force Review Panel, it is also the responsibility of security supervisors and the grievance coordinators, especially for non-use of force incidents. Lacking is the documentation that all incidents reports (including use of force reports) and grievances are being screened for allegations of staff misconduct and referred for investigation. In fact, deficiencies were noted in the grievance provision requiring the same and referral. |
| Recommendations: | 1. Formalize the process for the review and screening of incident reports and inmate grievances for allegations of staff misconduct which requires an affirmative notation that the incident report and/or grievance has been screened.<br>2. Document origin of investigation when it is the result of a referral due to the screening of incident reports, use of force reports, and inmate grievance and provide in a report format. |

| Paragraph | Use of Force by Security Staff and Internal Investigations: |
|---|---|
| | B. 17) Whether MDC established and effectively implements an "Early Warning System (EWS)" that will document and track correctional officers who regularly employ force on inmates and any complaints related to the excessive use of force. |

<table>
<tr><td>Paragraph</td><td colspan="4">Use of Force by Security Staff and Internal Investigations:<br>B. 17) Whether MDC established and effectively implements an "Early Warning System (EWS)" that will document and track correctional officers who regularly employ force on inmates and any complaints related to the excessive use of force.<br><ul><li>Whether MDC's EWS protocol includes the following components: data storage, data retrieval, reporting, data analysis, pattern identification, supervisory assessment, supervisory intervention, documentation, and audit.</li><li>Whether MDC effectively uses the EWS as a tool for correcting inappropriate staff behavior before it escalates to more serious conduct.</li><li>Whether the EWS alerts MDC administration to any potential need for retraining, problematic policies, or supervision lapses.</li><li>Whether all appropriate MDC leadership, supervisors, and investigative staff have access to EWS information and are able to monitor the occurrences.</li><li>Whether MDC's EWS allows MDC administration sufficient information to improve quality management practices, identify patterns and trends, and take appropriate corrective action both on an individual and systemic level</li></ul></td></tr>
<tr><td>Compliance Status:</td><td>Compliance:<br>11/20/20;<br>07/02/2021;<br>06/08/2022</td><td>Partial Compliance:<br>06/27/2019;<br>02/04/2020;<br>05/07/2023;<br>08/03/2023;<br>02/23/2024;<br>08/15/2024;<br>02/25/2025</td><td>Non-Compliance:<br>09/18/2015;<br>09/18/2018</td><td>Other:</td></tr>
<tr><td>Measures of Compliance:</td><td colspan="4"><ul><li>Documentation and demonstration of an Early Warning System (EWS) which meets the listed criteria in the provision.</li><li>Review of Use of Force investigations including whether the individual was involved in previous uses of force and whether the EWS was triggered and followed.</li></ul></td></tr>
<tr><td>Steps taken by the County to Implement:</td><td colspan="4">MDC has developed an EWS that meets the listed criteria. The Deputy Chief is charged with reviewing the EWS alerts which is automatically generated. The policy is in draft form.</td></tr>
<tr><td>Monitor's analysis and the factual basis for finding:</td><td colspan="4">MDC has established and implemented an EWS which meets the listed criteria. The documentation does not clearly show that EWS alerts are being timely reviewed nor that MDC administration utilized the information listed in the provision.</td></tr>
<tr><td>Recommendations:</td><td colspan="4">1. Establish a method for reporting the results of the EWS.<br>2. Timely review EWS alerts.</td></tr>
</table>

MDC is in Substantial Compliance with eight (8) and in Partial-Compliance with six (6) of the remaining fourteen (14) Use of Force provisions. Thus, the entire Use of Force subcategory is in Partial- Compliance.

## Internal Investigations

| Paragraph | Use of Force by Security Staff and Internal Investigations: *[Doc. No. 256 p. 16, para. IV (B)]* | | | |
|---|---|---|---|---|
| | J. 1) Whether MDC maintains and adequately implements comprehensive policies, procedures, and practices for the timely and thorough investigation of alleged staff misconduct, in accordance with generally accepted correctional standards. | | | |
| Compliance Status: | Compliance: 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022 | Partial Compliance: 09/15/2018; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Non-Compliance: 09/18/2015 | Other: |
| Measures of Compliance: | • Related policies, procedures, written directives and practices 3.35 Investigations Into Complaints of Employee Misconduct, 3.35-1 Supervisory Preliminary Inquiries and Summary Action, 3.35-2 Office of Professional Standards Investigations).<br>• Review of investigations into alleged staff misconduct.<br>• Training records of investigators and supervisors. | | | |
| Steps taken by the County to Implement: | MDC has developed multiple policies, procedures, and practices to provide for investigation into alleged staff misconduct. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has successfully generally, met the substantive terms and requirements of the provision that MDC maintains and adequate implements comprehensive policies, procedures, and practices for the timely and through investigation of staff misconduct in accordance with generally accepted correctional standards. Investigations are not being timely conducted and the delay between the referral to OPSO and assigned is unacceptably long. This also is occurring in PREA investigations. There are also issues with the timely administration of the discipline. | | | |
| Recommendations: | 1. Address the issue of timeliness for referral of investigations and assignment of cases within OPS.<br>2. Address the issue of timeliness for review of complaints of sexual misconduct and the referral of investigations with the PREA Unit. | | | |

| Paragraph | Use of Force by Security Staff and Internal Investigations: [Doc. No. 256, p. 16, para. IV (B)] | | | |
|---|---|---|---|---|
| | J. 2) Whether internal investigations are conducted by persons who were not involved in any way in the incident under investigation and who do not have supervisory responsibility for the staff member(s) being investigated. | | | |

| Compliance Status: | Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: | Non-Compliance: 09/18/2015 | Other: |
|---|---|---|---|---|
| Measures of Compliance: | • Related policies, procedures, written directives and practices 3.35 Investigations Into Complaints of Employee Misconduct, 3.35-1 Supervisory Preliminary Inquiries and Summary Action, 3.35-2 Office of Professional Standards Investigations). <br> • Review of internal investigations. | | | |
| Steps taken by the County to Implement: | MDC has developed multiple policies, procedures, and practices which provide for internal investigations to be conducted by persons who are not involved in any way in the incident and/or who have supervisory responsibility for the staff member being investigated. | | | |
| Monitor's analysis and the factual basis for finding(s) | MDC documentation demonstrates that policies, procedures, and practices have been put in place that prohibit the investigation from being conducted by a person who is anyway involved in the incident under investigation or by a person who has supervisory responsibility for the staff member being investigated. | | | |
| Recommendations: | No recommendations at this time. | | | |

| Paragraph | Use of Force by Security Staff and Internal Investigations: *[Doc. No. 256, p. 16, para. IV (B)]* <br> J. 3) Whether MDC ensures that all internal investigations include timely, thorough, and documented interviews of all relevant staff and inmates who were involved in, or witnessed, the incident in question. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022 | Partial Compliance: 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Non-Compliance: 09/18/2015 | Other: |
| Measures of Compliance: | • Related policies, procedures, written directives and practices 3.35 Investigations Into Complaints of Employee Misconduct, 3.35-1 Supervisory Preliminary Inquiries and Summary Action, 3.35-2 Office of Professional Standards Investigations). <br> • Review of internal investigations. | | | |
| Steps taken by the County to Implement: | MDC has developed multiple policies, procedures, and practices which requires interviews of all relevant staff and inmates who were involved in, or witnessed, the incident in question for them to be timely, thorough, and documented. | | | |

86

| | |
|---|---|
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that the interviews of all relevant staff and inmates who were involved in, or witnessed, the incident in question, while thorough, and documented, are not timely conducted. Due to the delay in assigning cases with OPS and PREA, interviews of inmate witnesses are frequently not being conducted as the inmates have been released from jail before they can be interviewed. |
| Recommendations: | 1. Address the issue of timeliness for referral of investigations and assignment of cases within OPS and the PREA Unit. |

| | |
|---|---|
| Paragraph | Use of Force by Security Staff and Internal Investigations: *[Doc. No. 256, p. 16, para. IV (B)]*<br><br>J. 4) Whether MDC ensures that internal investigation reports include all supporting evidence, such as witness and participant statements, policies and procedures relevant to the |

| | | | | |
|---|---|---|---|---|
| | incident, physical evidence, video or audio recordings, and relevant logs. | | | |
| Compliance Status: | Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: | Non-Compliance: 09/18/2015 | Other: |
| Measures of Compliance: | • Related policies, procedures, written directives and practices 3.35 Investigations Into Complaints of Employee Misconduct, 3.35-1 Supervisory Preliminary Inquiries and Summary Action, 3.35-2 Office of Professional Standards Investigations).<br>• Review of internal investigations. | | | |
| Steps taken by the County to Implement: | MDC has developed multiple policies, procedures, and practices which requires internal investigation reports to include all supporting evidence such as the listed criteria. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that the internal investigation reports include all supporting evidence. Note the issues with interviewing of inmate complainants in the investigation of PREA matters. | | | |
| Recommendations: | No recommendations required at this time other than those contained in Domain 7. | | | |

| | |
|---|---|
| Paragraph | Use of Force by Security Staff and Internal Investigations: [Doc. No. 256, p. 16, para. IV (B)]<br><br>J. 6) Whether MDC provides all investigators who will be assigned to conduct investigations of use of force and sexual misconduct incidents with specialized training in investigating use of force and sexual misconduct incidents and allegations. |

| Compliance Status: | Compliance: 09/18/2018; 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: | Non-Compliance: 09/18/2015 | Other: |
|---|---|---|---|---|
| Measures of Compliance: | • Related policies, procedures, written directives and practices 3.35 Investigations Into Complaints of Employee Misconduct, 3.35-1 Supervisory Preliminary Inquiries and Summary Action, 3.35-2 Office of Professional Standards Investigations). <br>• Review of internal investigations. <br>• Training records of investigators. | | | |
| Steps taken by the County to Implement: | MDC has developed multiple policies, procedures, and practices which requires investigatory staff who are assigned to conduct investigations of use of force and sexual misconduct incidents with specialized training in investigating use of force and sexual misconduct incidents and allegations. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that all investigatory staff who are assigned to conduct investigations of uses of force and sexual misconduct investigations have received specialized training in investigating use of force and sexual misconduct incidents and allegations. | | | |
| Recommendations: | No recommendations required at this time. | | | |

| Paragraph | Use of Force by Security Staff and Internal Investigations: *[Doc. No. 256, p. 16, para. IV (B)]* <br> J. 7) Whether MDC ensures that the results of each internal investigation are documented in an investigation report. | | | |
|---|---|---|---|---|
| Compliance Status: | 0Compliance: 9/18/2018; 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: | Non-Compliance: | Other: |
| Measures of Compliance: | • Related policies, procedures, written directives and practices 3.35 Investigations Into Complaints of Employee Misconduct, 3.35-1 Supervisory Preliminary Inquiries and Summary Action, 3.35-2 Office of Professional Standards Investigations). <br>• Review of internal investigations. | | | |
| Steps taken by the County to Implement: | MDC has developed multiple policies, procedures, and practices which requires the result of each internal investigation to be documented in the investigation report. | | | |

| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that the result of each internal investigation is documented in the investigation report. | | | |
|---|---|---|---|---|
| Recommendations: | 1. While referrals to captains for counseling and retraining are appropriate, MDC should not refer incidents to captains that have supervisory responsibility for the individual involved. If a referral is made to a captain without supervisory responsibility of the person, the results should be documented in an investigation report. | | | |

| Paragraph | Use of Force by Security Staff and Internal Investigations: *[Doc. No. 256, p. 16, para. IV (B)]* | | | |
|---|---|---|---|---|
| | J. 8) Whether MDC administration reviews the investigation reports, along with the underlying documentation, and takes corrective action, including disciplinary action and training, as appropriate. | | | |
| Compliance Status: | Compliance: 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: 09/18/2018 | Non-Compliance: 09/18/2015 | Other: |

89

| Measures of Compliance: | • Documentation of review of investigation reports and underlying documentation by MDC administration and corrective action taken.<br>• Related policies, procedures, written directives and practices including 3.35-2 Office of Professional Standards Investigations. |
|---|---|
| Steps taken by the County to Implement: | MDC has implemented a practice where MDC administration reviews investigation reports along with the underlying documentation and takes corrective action, including disciplinary action and training, as appropriate. |
| Monitor's analysis and the factual basis for finding(s) | MDC's documentation demonstrates that MDC administration reviews investigation reports along with the underlying documentation and takes corrective action, including disciplinary action and training as appropriate. MDC has now codified the review by the Chief of Corrections in policy and set out a timeline for review. The fact that Monitor Frasier or counsel for inmates may disagree with the level of discipline administered does not result in downgrading of the rating of this provision. |
| Recommendations: | No recommendations required at this time. |

| Paragraph | Use of Force by Security Staff and Internal Investigations: *[Doc. No. 256, p. 16, para. IV (B)]*<br>J. 9) Whether MDC adequately implements appropriate remedies based upon the results of internal investigations. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance:<br>02/04/2020;<br>11/20/2020;<br>07/02/2021;<br>06/08/2022;<br>05/07/2023; | Partial Compliance:<br>09/18/2018;<br>06/27/2019;<br>08/03/2023;<br>02/23/2024;<br>08/15/2024;<br>02/25/2025 | Non-Compliance: 09/18/2015 | Other: |
| Measures of Compliance: | • Investigation reports.<br>• Documentation of personnel action initiated when staff misconduct is substantiated.<br>• Documentation of systemic remedies based on the results of internal investigations.<br>• Related policies, procedures, written directives and practices. | | | |
| Steps taken by the County to Implement: | MDC has not shown a practice of utilizing the results of internal investigation to implement remedies to problems identified. MDC not timely administer appropriate discipline. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has not successfully, generally, adequately implemented appropriate remedies based on the result of and review of internal investigations. While the fact that Monitor Frasier or counsel for inmates may disagree with the level of discipline administered is not determinative of the rating of this provision, the failure to consistently and timely implement appropriate remedies and implement appropriate disciplinary warrants the rating of this provision as Partial Compliance. | | | |
| Recommendations: | 1. Timely complete investigations and implement appropriate remedies including discipline. | | | |

| Paragraph | Use of Force by Security Staff and Internal Investigations: *[Doc. No. 256, p. 16, para. IV (B)]* J. 10) Whether MDC has a tracking system for all internal investigations. | | | |
|---|---|---|---|---|
| Compliance Status: | Compliance: 06/27/2019; 02/04/2020; 11/20/2020; 07/02/2021; 06/08/2022; 05/07/2023; 08/03/2023; 02/23/2024; 08/15/2024; 02/25/2025 | Partial Compliance: 09/18/2018 | Non-Compliance: 09/18/2015 | Other: |
| Measures of Compliance: | • Documentation and demonstration of tracking system for all internal investigations. <br> • Contract with vendor for provision of tracking system for all internal investigations. | | | |
| Steps taken by the County to Implement: | MDC has contracted with and implemented IA Pro which provides for an automated system of tracking internal investigations. | | | |
| Monitor's analysis and the factual basis for finding: | MDC's documentation demonstrates that MDC has contracted with and implemented IA Pro which provides an automated system. | | | |
| Recommendations: | No recommendations required at this time. | | | |

MDC is in Substantial Compliance with six (6) and Partial Compliance with three (3) of the remaining nine (9) Internal Investigations provisions. While two-thirds are in Substantial Compliance, the three (3) that are not in Substantial Compliance, relate to serious issues with timeliness of referral of investigation and the discipline administered result in the Internal Investigation subcategory continuing to be in Partial Compliance.

**Conclusion**

MDC has shown improvement since the last compliance tour and report. While not relieving MDC of its responsibility to comply, the shortage of staff is the main cause. The increase in staffing has allowed MDC to staff the units at a level to bring all provisions to at least the level of Partial Compliance. MDC is in Substantial Compliance with forty-nine (49) of the provisions, approximately 59% of the provisions. Thirty-four (34) of the provisions are in Partial Compliance, approximately 41% of the provisions. It is important to note that none of the provisions were found to be in Non-Compliance.

Domain #3: Group A of Jail Operations is in a new self-monitoring phase.

Domain #4: Group B of Jail Operations is in Partial-Compliance. Staff shortages must be addressed to enable MDC to meet the requirements of this domain and operate a safe corrections facility.

Domain #5: Population Management has been found in Substantial Compliance by the Court.

Domain #6: Housing and Segregation is in a new self-monitoring phase.

Domain #7: Sexual Misconduct is in Partial Compliance.

Domain #8: Use of Force by Security Staff and Internal Investigations is in Partial Compliance. The work done by the Use of Force Review Panel is impressive. The quality of the Internal Investigations continues to be good, but the delay in assigning investigations have resulted in MDC being in Partial Compliance as to Internal Investigations. What needs to be done is perform the proper analysis and implement corrective action plans. The length of time between the incident occurring and the administering of discipline needs to be further addressed.

The culture within MDC continues to evolve into a correctional system where professionalism and appropriate behavior is the norm. The frequent change at the very top of the organization has resulted in a slowing of progress.

MDC and Bernalillo County are working very hard to address the staffing shortage through recruitment and improving pay and providing incentives. It is believed that the results of those efforts will continue to be reflected in the report for the next monitoring period.