IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JIMMY (BILLY) McCLENDON, et al.,

    Plaintiffs,

vs.                                                                                                                        CIV 95-24 JB/KBM

CITY OF ALBUQUERQUE, et al.,

    Defendants,

vs.

E.M., R.L., W.A., D.J., P.S., and
N.W. on behalf of themselves and
all other similarly situated,

    Plaintiff-Intervenors.

### DEFENDANT BERNALILLO COUNTY BOARD OF COMMISSIONERS' REPLY IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR FINDING OF SUSTAINED COMPLIANCE AND FOR DISENGAGEMENT OF DOMAIN #3

Defendant, the Bernalillo County Board of County Commissioners ("the County"), through its attorneys, Robles, Rael & Anaya, P.C. (Marcus J. Rael, Jr. and Kelsea E. Sona) hereby states the following for its Reply in Support of Defendants' Renewed Motion for Finding of Sustained Substantial Compliance and to Disengage Domain #3:

### INTRODUCTION

The County is entitled to disengagement of Domain #3: Group A of Jail Operations, set forth in Check-Out Audit No. 3 **(Doc. No. 1222-4)**, in accordance with the negotiated Settlement Agreement **(Doc. No. 1222-1)** due to the County's substantial sustained compliance with the

provisions of Domain #3. As such, the County requests the Court grant its Motion.

## FACTUAL BACKGROUND

There is no genuine dispute of fact in this matter to preclude the Court from granting the County's Motion. Plaintiffs did not respond to the County's Motion in an orderly fashion, hereby injecting significant and unnecessary confusion to the briefing. Instead, Plaintiffs present a narrative, unlettered recitation of purported disputes and additional facts that does not correspond to the County's statement of facts. This format prevents the Court and the County from readily identifying which facts are actually disputed and which are just duplicative or merely asserted as additional background. Compounding this problem, numerous factual assertions appear only within Plaintiffs' argument section rather than in a properly supported statement of additional material facts. "[A] district court should not have to guess which of the movant's material facts are actually disputed by the non-movant" and which statements are additional facts. Nahno-Lopez v. Houser, 625 F.3d 1279, 1284 (10th Cir. 2010). Since Plaintiffs have failed to clearly identify evidence that controverts the County's properly supported statements of material fact, they have not carried their burden to demonstrate a genuine dispute sufficient to defeat disengagement.

1-18.   Plaintiffs do not dispute facts nos. 1 to 18 stated by the County in its Motion.

19.   Plaintiffs do not dispute the County provided the quarterly data. Instead, they argue the County did not provide quarterly reports, merely "batches" of documents and data that were not sufficiently explanatory; the self-monitoring protocols were not sufficiently implemented; the production was not timely; and the information therein was not recent. The Court should reject Plaintiffs' attempt to transform a reporting vehicle – *i.e.*, the required quarterly submission of sufficient compliance data – into an extra-contractual requirement that the County provide

narrative explanation or analysis.  No provision in the Settlement Agreement requires the County to demonstrate implementation of the self-monitoring protocols as a standalone prerequisite to disengagement during the self-monitoring period; the Settlement Agreement tests protocol effectiveness indirectly through the compliance data gather for expert review and the enforcement mechanism is corrective-action recommendations by the expert.  The Settlement Agreement does not impose a production deadline or provide that a report is invalid if not submitted by a particular date.  Evaluation of recent information is an irrelevant point because nothing in the Settlement Agreement or Court order requires evaluation of data outside the self-monitoring period; Plaintiffs cannot *sua sponte* extend the self-monitoring period.

20. Plaintiffs do not dispute that at the conclusion of the extended self-monitoring period the County requested Ms. Frasier conduct a check-out audit pursuant to Paragraph 6 of the Settlement Agreement.

21. Plaintiffs do not dispute that Ms. Frasier conducted a check-out audit; instead, they contest the sufficiency of and support for her findings that all provisions except Paragraphs 6(M)(2) and 6(N)(2) **(Doc. No. 1222-4)** remained in sustained compliance during the self-monitoring period ending Quarter 1 of 2024.  However, per agreement of the parties and order of the Court, compliance in this case is assessed systemically by the Court-appointed experts; the Court experts do not utilize a methodology of individual, anecdotal reports but rather base their monitoring and findings upon audits and other cumulative data.  Plaintiffs supplement their evidentiary objections with numerous inmate declarations and grievances (many deemed unfounded and unsubstantiated), which fail to demonstrate anything other than sporadic, isolated or  unintentional examples that are sometimes the result of actions by the inmates.

3

      a.      Plaintiffs do not dispute that the County accurately quoted what Paragraph 6(M)(2) directs Ms. Frasier to consider.

      b.      Plaintiffs do not dispute the fact of Ms. Fraiser's finding of partial compliance for Paragraph 6(M)(2).

      c.      Plaintiffs do not dispute that the County accurately quoted what Paragraph 6(N)(2) directs Ms. Frasier to consider.

      d.      Plaintiffs do not dispute the fact of Ms. Fraiser's finding of partial compliance for Paragraph 6(N)(2).

22.      Plaintiffs do not dispute that the County provided materials to Ms. Frasier on September 4, 2025, intended to cure the deficiencies; instead, Plaintiffs claim this production was untimely and lacked recent information. The Settlement Agreement grants the County 90 days to cure deficiencies, id., ¶ 7 at p. 8; it does not require them to prove that cure within the same period on pain of forfeiting disengagement. Additionally, evaluation of recent information is an irrelevant point because noting in the Settlement Agreement or Court order requires evaluation of data outside the self-monitoring period; Plaintiffs cannot *sua sponte* extend the self-monitoring period.

23.      Plaintiffs do not dispute the fact of Ms. Fraiser's findings of compliance with Paragraphs 6(M)(2) and 6(N)(2) in the self-monitoring period ending Quarter 1 of 2024; instead they contest the sufficiency of and support for her findings, as well as that Ms. Fraiser did not re-evaluate compliance with all of Domain #3 when she evaluated compliance with the paragraphs requiring a cure. Plaintiffs' positions are unavailing to the Court's determination here because the Settlement Agreement evaluates compliance over a defined period of self-monitoring to determine whether a durable remedy is in place. The concept of sustained substantial compliance necessarily

presumes a stable benchmark against which performance during that period can be assessed – the County cannot be expected to change policies and processes in the middle of a self-monitoring period to match a new standard. Moreover, nothing in the Settlement Agreement requires the County to prove compliance with evidence on an individualized, inmate-specific outcome level. Plaintiffs are improperly reframing the cure mechanism to impose a heightened evidentiary standard untethered to the Settlement Agreement.

## LEGAL ARGUMENT

Under the Settlement Agreement, the County is required to provide court-appointed experts with sufficient information to make a decision. Once again, Plaintiffs' arguments regarding sufficiency of data, documentation and reports repeatedly ignore the information and documents provided by the County. Contrary to Plaintiffs' argument, the information submitted by the County allowed Ms. Frasier to make an informed decision in determining that the County was substantially compliant. The process worked as negotiated: in the course of self-monitoring, Ms. Frasier determined the County maintained substantial compliance with Domain #3 with the exception of two requirements, which she found the County successfully cured. The Settlement Agreement reflects a negotiated resolution process designed to preserve improvements at MDC while creating a durable remedy and an enforcement structure that is objective, administrable, and tied to measurable standards; there is no basis to deviate from this process.

I.  **THE QUARTERLY/SELF-MONITORING REPORTS SUBMITTED BY THE COUNTY MEET THE REQUIREMENTS UNDER THE SETTLEMENT AGREEMENT.**

Plaintiffs oppose disengagement of Domain #3 because, in their view, the format of the data submitted by the County is burdensome to review. What Plaintiffs seek – denial of

5

disengagement based on semantics – is inconsistent with the Settlement Agreement's objective measurement framework and with the expert-centered compliance structure the parties negotiated.

The Settlement Agreement, paragraph 8, states that the Court-appointed expert's findings and the County's self-monitoring reports – the same quarterly reports provided for in paragraph 5(C) – are the basis upon which the Court evaluates whether disengagement is warranted. Plaintiffs argue that a report means analysis. However, Plaintiffs improperly conflate the self-monitoring protocol requirements in paragraph 5(B)(2) for a preliminary analysis[1] with the quarterly reporting requirement in paragraph 5(C). The quarterly reporting deliverable is defined by sufficiency of "data" to allow expert determinations. *Settlement Agreement*, ¶ 5(C) at p. 6. The County's submission was satisfactory for the Court-appointed expert, who was able to analyze it and come to her substantial compliance conclusions. Plaintiffs do not produce any evidence indicating Ms. Frasier lacks qualifications or expertise to "take into account the extent to which exceptions to compliance" are minor deviations rather than indicative non-compliance. See *Settlement Agreement*, ¶ 5(C) at p. 6.

Similarly, Plaintiffs suggest that the County's quarterly/self-monitoring reports were not "timely" and produced as a "batch." However, nothing in the Settlement Agreement imposes a production deadline such as a specific number of days after the close of each quarter nor does anything stipulate that a report is invalidated if it is not submitted by a particular date. The Court's prior discussion about the Couty previously providing five versus six quarterly reports does not lend insight or support here. Memorandum Opinion and Order **(Doc. 1580)** (entered Sept. 6, 2022).

---

[1] Notably, the Settlement Agreement does not provide Plaintiffs with a role in developing self-monitoring protocols.

Nothing prohibits providing multiple quarters of reporting at once; or states that quarterly reports become invalid if not submitted immediately at quarter close. The relevant inquiry under paragraphs 5(C) and 8 is whether the County provided quarterly/self-monitoring data for the self-monitoring period such that the expert and the Court can evaluate sustained compliance on a complete record. The Couty has complied with this requirement.

II.     **THE EVIDENCE SUPPORTS A FINDING OF SUBSTANTIAL COMPLIANCE WITH DOMAIN #3 AND DISENGAGEMENT.**

The County's compliance with the Settlement Agreement has been sustained, as defined within the contract itself. The Settlement Agreement acknowledges that the time period for substantial compliance may vary and simply must effectively demonstrate that a durable remedy is in place. In accordance with self-monitoring data and Ms. Frasier's report, the County has met this standard.

Here, Plaintiffs do not dispute that Ms. Frasier conducted the check-out audit or that she ultimately found compliance with all Domain #3 provisions following the County's corrective efforts for two provisions. Instead, Plaintiffs challenge the 1) durability of the remedy; and 2) the sufficiency of the documentation she relied upon, arguing that receipts, schedules, temperature logs, staffing reviews, inspection reports, and similar operational records are inadequate because they do not demonstrate inmate-by-inmate implementation of policies or ensure the absence of individual lapses.

Plaintiffs' reliance on subsequent policy or process changes (such as adjustments to MDC's mail system) does not defeat a finding of sustained substantial compliance or demonstrate that the underlying remedy is not durable. The disengagement framework set forth in the Settlement Agreement evaluates whether the County has implemented systems capable of maintaining

7

constitutionally adequate conditions of confinement, not whether operational practices remain static in perpetuity. Institutional reforms are expected to evolve over time as facilities refine procedures, adopt new technologies, or improve administrative workflows. Such changes do not constitute non-compliance unless they result in a departure from the substantive requirements assessed through the check-out audit process. Where the deficiencies identified by the Settlement Agreement have been remedied through durable systems, subsequent modifications to policy or process do not reopen the violation. If Plaintiffs believe that later operational changes have resulted in renewed deficiencies, the Settlement Agreement preserves a mechanism for re-engagement upon a showing by a preponderance of the evidence of backsliding with respect to the applicable requirements. *Settlement Agreement*, ¶¶ 11-12 at p. 10. The possibility of future oversight in the event of demonstrated regression confirms that disengagement here would reflect durable compliance, not a loss of accountability.

Additionally, the Settlement Agreement does not require proof of compliance at an individualized, inmate-specific outcome level. See Johnson v. City of Tulsa, Okla., 489 F.3d 1089, 1110 (10th Cir. 2007) (counsel's duty to monitor "proper functioning" of decree systems "does not mean 'perfect' functioning. No system works perfectly. Mistakes are inevitable and, inevitably, some individual cases of mistreatment will not be adequately redressed. Occasional errors do not necessarily establish systemic failure or deprive the class of the fruits of the decree."). To the contrary, the check-out audit process evaluates whether the County has implemented operational systems required under Domain #3. System-level implementation evidence, such as intake issuance receipts, sanitation plans, inspection reports, laundry schedules, temperature logs, staffing documentation, inventory purchases, and grievance tracking, is precisely the type of operational

data contemplated by the Agreement's self-monitoring protocols.

Plaintiffs' reliance on class member complaints and grievances to establish noncompliance disregards the expert-centered structure of the disengagement process. The parties bargained for expert-based compliance determinations through self-monitoring protocols and check-out audits. Plaintiffs' ad hoc individualized allegations are not evidence upon which this Court may rely as a basis to not grant disengagement or to impose further self-monitoring: "*Based upon the Defendants' self-monitoring reports as well as the experts' proposed findings at the Check-Out Audits*, the Court will determine whether the record supports a finding of sustained substantial compliance as to each domain." *Settlement Agreement*, ¶ 8 at p. 8 (emphases added).

Furthermore, the parties did not agree that compliance would be measured through Plaintiffs' counsel-driven monitoring of individual events. To the contrary, the County's stated consideration for entering into the Settlement Agreement was "knowing exactly what must be done to achieve substantial compliance, understanding *what elements of their obligations will be audited and how those audits will be conducted*, and having [the County's] obligations described specifically and clearly enough to have their compliance accurately and *objectively measured*." *Settlement Agreement*, ¶ 1(B) at p. 2 (emphases added). Under the negotiated structure, Plaintiffs' individualized evidence is not the compliance mechanism the parties negotiated and cannot be treated as reliable evidence of lack of compliance.[2]

---

[2] Indeed, the Settlement Agreement itself limits Plaintiffs' monitoring role during self-monitoring. During self-monitoring, Plaintiffs' counsel are compensated for monitoring only to: (1) review the County's self-monitoring reports and provide compliance-related feedback; (2) participate in agreed expert site visits and review/comment on check-out audit reports; and (3) receive and relay complaints from individual class or subclass members that allege a risk of irreparable harm "to Defendants' counsel." *Settlement Agreement*, ¶ 5(D) at pp. 6-7. This

Plaintiffs' individualized evidence is not tied to the negotiated and Court-ordered definition of "substantial compliance" describing proof of compliance:

> The determination of substantial compliance will take into account the extent to which exceptions to compliance are sporadic or isolated in nature, are unintentional, are the temporary result of actions by MDC inmates and are promptly and properly addressed by corrective action and, where appropriate, disciplinary action against staff members responsible for the exception to compliance.

*Settlement Agreement*, ¶ 2(C) at p. 3. Ad hoc incident collection does not: measure the rate of exceptions across the system; distinguish isolated from systemic deviations; evaluate whether corrective action occurred; or map incidents to the requirements of Domain #3. Plaintiffs' disagreement with the County's data and the expert's evaluation of operational documentation does not create a genuine dispute of material fact sufficient to defeat disengagement.

If Plaintiffs can defeat disengagement based on ad hoc monitoring rather than the Settlement Agreement's expert and data framework, then the expert compliance process becomes optional, substantial compliance becomes perpetually contestable, and oversight becomes effectively indefinite. That result directly undermines the County's bargained-for assurances that compliance obligations would be "accurately and objectively measured" through clear auditing standards. *Settlement Agreement*, ¶ 1(B) at p. 2. Disputes not tethered to the negotiated standards of review should not be afforded controlling weight.

Accordingly, the relevant inquiry is not whether Plaintiffs believe the County has provided documentation sufficient to establish perfect or inmate-specific implementation of each Domain #3 provision, but whether the record – including the quarterly self-monitoring data and the expert's

---

negotiated limitation confirms that compliance determinations flow through data-driven self-monitoring and expert review, not anecdotal monitoring to defeat the disengagement process.

findings – supports a determination that the County implemented and operated systems that achieved sustained substantial compliance during the monitoring period.

## CONCLUSION

Ms. Frasier determined the County sustained substantial compliance with Domain #3 based upon the information submitted by the County, as well as the information provided by counsel for Plaintiffs. A finding of substantial compliance does not require that there be no imperfections in the County's compliance history. Plaintiffs' interpretation of the process and evidence required renders incremental vacation illusory and perpetuates this case despite the record demonstrating compliance has been achieved. The County has complied with the Settlement Agreement and sustained substantial compliance with Domian #3. Thus, in accordance with the negotiated process, the County is entitled to disengagement.

**WHEREFORE**, the County respectfully requests that the Court grant its Renewed Motion for Finding of Sustained Compliance and to Disengage Domain #3.

    Respectfully submitted,

    ROBLES, RAEL & ANAYA, P.C.

By:   /s/ Kelsea E. Sona
    Kelsea E. Sona
    Marcus J. Rael, Jr.
    Attorney for County Defendant
    500 Marquette Ave. NW, Suite 700
    Albuquerque, New Mexico 87102
    (505) 242-2228
    (505) 242-1106 (facsimile)

I hereby certify that on this 17th day of February 2026, the foregoing was electronically served through the CM/ECF system to all counsel of record.

By:   /s/ Kelsea E. Sona
       Kelsea E. Sona