**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JIMMY (BILLY) McCLENDON, et al.,

Plaintiffs,

and,
E.M., R.L., W.A., D.J., P.S., and
N.W. on behalf of themselves and
all other similarly situated,

Plaintiff-Intervenors.

v. No. 6:95-cv-00024-SMD-SCY

CITY OF ALBUQUERQUE, et al.,

Defendants.

**ORDER LIFTING TEMPORARY STAY AND**
**PERMITTING EXISTING EX PARTE COMMUCATIONS**

**THIS MATTER** comes before the Court on the briefing submitted by Defendant Bernalillo County Board of Commissioner (the "County"), and Plaintiffs and Plaintiff-Intervenors (collectively, "Plaintiffs") regarding ex parte communication between the Court-appointed experts and counsel for the parties. Docs. 1942 ("Pls.' Br."), 1943 ("Def.'s Br."). The Court has reviewed the parties' submissions, the record, and the relevant law, and for the reasons below, the Court declines to impose new protocols restricting ex parte communications and will permit necessary ex parte communications between the Court-appointed experts and counsel for the parties.

**BACKGROUND**

During the August 17, 2026 status conference, counsel for the County raised concerns about ex parte communication between the Court-appointed experts and counsel for Plaintiffs. According to the County, Plaintiffs have a longstanding practice of communicating with the Court-appointed experts ex parte, sometimes on a daily basis. August 17, 2026 Status Conference, at

34:43. Counsel alleged that Plaintiffs' counsel frequently contact and follow the experts, offering comments and their own narratives in an effort to influence the experts' conclusions. *Id.*, at 36:16–44:25.

After the County raised the issue during the August 17, 2026 status conference, the Court ordered the County and Plaintiffs to submit briefs addressing counsel's ex parte communications with the Court-appointed experts. Doc. 1927. The Court further directed that "[a]ll ex parte communications must stop until the Court issues a ruling." *Id.*

## I. The County's Briefing

The County maintains that the Court should establish a communications protocol that eliminates or at minimum restricts ex parte communications between the Court-appointed experts and counsel for the parties. Specifically, the County proposes four measures. Def.'s Br. at 14–20.

First, the County maintains that the Court should develop a written protocol prohibiting substantive ex parte communications between counsel and the Court-appointed experts concerning disputed facts, legal interpretation, compliance findings, methodology, reports, recommendations, sanctions, settlement, and litigation strategy. *Id.* at 13–14. Second, the Court should either invalidate or amend its July 16, 2026 Order clarifying Dr. Michael DeBernardi's role as a Court-appointed expert and permitting necessary ex parte communications with him, which the Court entered at the parties' request. The County contends that if the Court restricts ex parte communications, those same restrictions must apply equally to Dr. DeBernardi. *Id.* at 21. Third, nonsubstantive ex parte communications between experts and counsel, including communications concerning scheduling, logistics, and document transmission, should remain permissible to the extent authorized by this Court. *Id.* at 20. Fourth, the protocol should preserve the experts' direct

access to the Metropolitan Detention Center (the "MDC") staff and medical personnel regarding facility operations and clinical practices. *Id.* at 17.

**II. Plaintiffs' Briefing**

Plaintiffs object to the adoption of new protocols restricting or prohibiting ex parte communications between the experts and counsel for the parties. First, Plaintiffs dispute the County's characterization at the August 17, 2026 status conference that Plaintiffs' counsel engage in systemic ex parte communications with the experts. *See* Pls.' Br. at 3. Plaintiffs point out that the County's counsel themselves meet and confer with the experts ex parte on a regular basis. *Id.* at 3–5. Specifically, Plaintiffs assert that the County's counsel periodically communicate ex parte with Dr. Kumar to address staffing concerns and until recently met weekly with Dr. Kumar regarding the implementation of the August 2025 medical corrective action plan. *Id.* at 4.

Plaintiffs further contend that, if the Court prohibits ex parte communications between the experts and counsel, it should likewise bar communications with County and MDC officials who have decision-making authority. *Id.* at 15–16. These officials and agents include county commissioners, county managers, warden, deputy warden, captains, medical directors, directors of nursing, quality assurance managers, compliance managers, and those generally who have decision-making capacity on behalf of the County or those who provide medical and mental health care at the jail. *Id.* at 1. Plaintiffs clarify, however, that the experts should retain unrestricted access to line staff. *Id.* at 12.

## DISCUSSION

No existing order or document in this case expressly authorizes or prohibits ex parte communications between the parties' counsel and the Court-appointed experts. A stipulated order entered on July 20, 2026, authorizes ex parte communication between the Court's experts and the

Court but does not address communications between the experts and counsel for the parties. *See* Doc. 1230.

Federal Rule of Evidence 706, controlling precedents, and the existing orders and documents in this case do not prohibit the Court from permitting necessary ex parte communications between counsel for the parties and the Court-appointed experts under appropriate safeguards. Indeed, the County concedes that the Court has not previously addressed ex parte communication between the experts and the parties or their counsel. Def.'s Br. at 7.

While some district courts in other circuits have generally disfavored ex parte communications between court-appointed experts and counsel for the parties, those decisions are inapposite here. *See G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*, 671 F. Supp. 2d 1203, 1225 (D. Nev. 2009) ("Ex parte communications between the judge and the expert, or between a party and the expert are discouraged."); *Crawford v. Greater Cleveland Reg'l Transit Auth.*, No. C86-2490, 1991 WL 328037, at *1 (N.D. Ohio July 26, 1991) (prohibiting *ex parte* communications between court appointed expert and parties' counsel).

Cases disfavoring ex parte communications typically arise in the trial context and involve court-appointed experts discussing specific findings or pending motions, or judges communicating ex parte with experts. *See United States v. Green*, 544 F.2d 138, 146 (3rd Cir. 1976) (disapproving of ex parte judicial communication with the expert witness); *Pro Ag Mgmt., Inc. v. AgriSompo N. Am., Inc.*, No. 26-2066-JWB-BGS, 2026 WL 1073918, at *2 (D. Kan. Apr. 21, 2026) (prohibiting ex parte communications based on the parties' explicit stipulation that the expert "shall be prohibited from engaging in ex parte communications"); *G.K. Las Vegas Ltd. P'ship*, 671 F. Supp. 2d at 1215 (prohibiting ex parte communications where a party treated a court-appointed expert "as their own personal expert, without giving due respect to [the court]'s directions"). This case,

by contrast, involves a consent decree authorizing Court-appointed experts to make recommendations to the parties to facilitate compliance. The experts here are not retained to resolve discrete questions for a motion or trial. Rather, they serve on a multi-year basis to monitor conditions at the MDC, a role that inherently requires them to work and interact closely with the parties.

Moreover, in its brief, the County does not identify specific instances or circumstances of objectionable ex parte communications. Instead, the County generally asserts that Plaintiffs' counsel "may affect an expert's analysis by emphasizing favorable facts, describing disputed evidence as undisputed, proposing an interpretation of a Court order, challenging the significance of unfavorable information, or suggesting what the expert should investigate." Def.'s Br. at 11–12. Without identifying any specific time, place, or instance, or whether any such communications actually occurred, the County argues that these interactions could make it difficult for the Court to determine whether the experts' subsequent work reflects independent analysis or information supplied by an advocate, thereby posing a risk to judicial integrity. *Id.* at 12.

At the August 17, 2026 status conference, however, the County raised more specific objections to Plaintiffs' alleged ex parte communications with the experts. For example, the County cited counsel for Plaintiffs' invitation to Dr. Kumar to dinner, and instances in which Plaintiffs' counsel purportedly contacted the experts "whenever they feel like it." August 17 Status Conference, at 34:59–35:20. The County further asserted that Plaintiffs' counsel would call and follow the experts, offering their own comments and narratives to influence the experts' conclusions. *Id.*, at 36:16–44:25. Despite raising these concerns at the status conference, the County did not address any of these specific instances of objectionable ex parte communications in its briefing.

During the October 13, 2026 status conference, the Court asked whether the parties objected to the Court contacting the experts to discuss their methodology and determine what would help them perform their work most effectively, and whether the parties consented to receiving this information when the Court issues its order. Neither party objected. October 13, 2026 Status Conference, at 1:19:40–1:22:15.

The Court subsequently contacted Dr. Ray, Dr. Kumar, and Dr. Metzner. None recalled any instances of improper ex parte communications by counsel for either party. The experts also explained the safeguards they each use to maintain their impartiality. Specifically, they evaluate facts and information from a systemic perspective rather than through the lens of individual grievances. The experts further explained that nothing prevents them from contacting the opposing party when they receive information from one party alone. Furthermore, each of the experts stated that in all of their previous consent-decree cases, they had unrestricted ex parte communications with the parties involved. They each informed the Court that the way they have historically communicated with the parties in this case has assisted them in performing their duties, and no one could identify a single instance where ex parte communication by any party in this case hindered or impeded their work. Ultimately, each expert found ex parte communications necessary to complete their assigned tasks.

For these reasons, several considerations weigh against departing from the existing practice and imposing new restrictions on communications between counsel and the Court-appointed experts. First, the County identifies no specific past instances of improper ex parte communications in its briefing, nor does it identify particular circumstances or types of communications that are objectionable. Second, the experts did not corroborate the County's allegations of improper communications. Third, the County offers no examples of how ex parte

communications have compromised the experts' findings or opinions. Instead, the County relies on generalized concerns about hypothetical ways in which counsel might influence the experts' opinions and threaten judicial integrity. Without more concrete examples or evidence supporting these concerns, the Court finds insufficient justification to restrict the parties' existing communications with the experts.

The May 26, 2016 settlement agreement and other governing documents also establish safeguards to preserve the experts' neutrality and judicial integrity. For example, the May 26, 2016 settlement agreement provides that, after the experts make their proposed findings at the check-out audits for each domain, the Court will determine "whether the record supports a finding of sustained substantial compliance as to each domain." Doc. 1222-1 ¶ 8. In other words, when making this final determination, the Court must conduct an independent analysis of the record and the experts' findings of fact rather than deferring entirely to the experts' judgment. The experts' findings are accorded due weight but are not dispositive. In its prior order, the Court held that relying solely on the expert's conclusions without conducting an independent assessment of the record would cause the Court to "abdicate its role under the Settlement Agreement." *See* Doc. 1580 at 65.

Imposing restrictions that permit certain communications while prohibiting others would be impractical in the context of this litigation. The County distinguishes between "substantive" and "nonsubstantive" communications between counsel and the experts and proposes allowing the experts to continue communicating with MDC and medical staff. Plaintiffs, however, object on fairness grounds, arguing that if ex parte communications with counsel are prohibited, the experts should likewise be barred from communicating with MDC officials and medical decisionmakers. In practice, it is difficult to draw a line between substantive expert communications regarding

compliance and purely logistical ones, and it is even harder to supervise and compartmentalize these topics when the parties and experts confer in person. Imposing such restrictions would invite further disputes, require the Court's intervention, and delay the disengagement process even further.

Because the experts are physicians, they typically treat patients in private settings governed by confidentiality rules. They are accustomed to operating under these standards and understand professional boundaries and prohibitions from their daily medical practice. Allowing them to continue communicating ex parte with the parties does not establish a new precedent; rather, it allows the experts to work most efficiently in a manner they know best.

The Court therefore declines to establish detailed written protocols delineating permissible and prohibited communications, which would further constrain the parties and impede communications in this already protracted litigation. The experts unanimously agree that flexible communication is the most efficient means of performing their duties. They are experienced professionals in their respective fields and have substantial experience serving as experts in consent-decree litigations. They also expressed confidence in their ability to maintain neutrality while communicating with the parties. The Court likewise is confident in the experts' abilities to receive information from various sources and independently analyze everything they each review to make impartial assessments and recommendations in their respective reports.

**CONCLUSION**

The County fails to identify or substantiate any specific instances of improper ex parte communications between counsel for the parties and the Court-appointed experts. Nor has the County provided examples of how such communications have compromised the experts' findings. The Court concludes that allowing the experts to continue communicating with counsel without

additional restrictions or written protocols will best facilitate their work. Accordingly, the Court lifts the temporary prohibition on ex parte communications imposed in its August 18, 2026 Order (Doc. 1927). The Court-appointed experts may resume their work and communications with counsel under the practices previously in place. The experts shall continue to have unrestricted access to MDC staff and medical personnel.

**IT IS SO ORDERED**.

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**